UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD COUNTY DIVISION
www.flsb.uscourts.gov

In re:

INTERTRADE HOLDINGS INC.                    Case No.: 26-15399-PDR
                                            Chapter 11

    Debtor.

_____/

### *EXPEDITED* MOTION FOR AUTHORITY TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND FOR FINAL HEARING

**\*\* Expedited Hearing Requested Pursuant to Local Rules 9013-1(F) and (G)\*\***

**The Debtor will suffer immediate and irreparable harm if it is not authorized to use cash collateral to operate its business.**

**The Debtor respectfully requests that this motion be set for interim hearing on or before May 8, 2026.**

Intertrade Holdings Inc., (the "Debtor"), pursuant to 11 U.S.C. § 363(c), respectfully requests that the Court authorize it to use cash collateral as set forth *infra*. In support of this request the Debtor states:

### BACKGROUND

On April 28, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the U.S. Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Founded in 2019, the Debtor is a food broker and food wholesaler. The Debtor operates its business from 2114 N. Flamingo Road, Suite 142, Pembroke Pines, FL 33028.

1.    The Debtor filed this case after its significant creditor, Truist Bank, ("Truist"), filed an action against the Debtor in Circuit Court in Broward County, Florida.

2.    The Debtor operates as a food broker, where the Debtor represents

companies, and receives commissions for sales it provides. The Debtor also is a wholesaler, where it purchases products and sells them with a markup. The Debtor believes that the value of its inventory is approximately $49,000.00, and present accounts receivable is not much more than $2,177,299.40- of which approximately 50% of the accounts receivable may be uncollectible. The Debtor has approximately $69,548.89 in its bank account.

3. The Debtor believes that there is one creditor with a perfected UCC filing with regard to cash collateral: Truist. The SBA is owed approximately $3,500,000.00 as of the Petition Date. Based upon the value of the Debtor's assets on the petition date, the Debtor believes that Truist is undersecured.

4. The Debtor reserves the right to challenge the validity, priority, and extent of all alleged liens, including Truist's lien, as this case progresses.

5. The Debtor's proposed income and expenses through and including September, 2026 are set forth in the monthly budget attached hereto as **EXHIBIT A** (the "Budget").

6. The Debtor requires the use of cash collateral to fund necessary operating expenses of its business. As set forth below, the Debtor requests that the Court approve its use of cash collateral pursuant to the terms of the Budget, and further authorize the Debtor to (a) exceed any line item on the Budget by an amount equal to ten (10%) percent of each such line item; or (b) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget.

## ARGUMENT

7. The Debtor's use of property of its estate is governed by section 363 of the Bankruptcy Code, which provides in pertinent part:

If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor]

may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

8.    11 U.S.C. § 363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with § 363. *See* 11 U.S.C. §1184.   When a chapter 11 debtor in possession is authorized to operate its business, it may use property of estate in the ordinary course of business but is prohibited from using cash collateral absent consent of the secured creditor or court authorization. 11 U.S.C. § 363©. The Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . ." 11 U.S.C. § 363(a).

9.    It is appropriate for the Court to authorize the Debtor to use cash collateral because the Debtor's secured creditor is being adequately protected and such use will preserve the going concern value of the estate.

10.   Truist is Adequately Protected.

11.   The Bankruptcy Code does not define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in its collateral. *See* 11 U.S.C. § 361; *see In re Potvin Lumber Company, Inc.*, 24 B.R. 54 (Bankr. D. Vt. 1982) (ordering that the debtor could use cash collateral, and finding that the bank was adequately protected because the total value of the debtor's personal property exceeded the bank's indebtedness).

12.   Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978). For example,

*O'Connor* states that "[i]n order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." 808 F.2d at 1396. (citations omitted).

13. Adequate protection is meant to ensure that a secured creditor receives the value for which it originally bargained pre-bankruptcy. *Swedeland Dev. Group., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citation omitted). The essence of adequate protection is to ensure the maintenance and continued responsibility of lien values during the interim between filing and confirmation in a case. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982).

14. The adequate protection provided from the Debtor to Truist consists of replacement liens against the property of the Debtor for the use of any of Truist's cash collateral, with such liens having the same seniority and entitled to the same level of priority as the priority of Truist's respective lien against the Debtor's property that existed prior to the petition date.

15. The Debtor's requested use of cash collateral and the protections afforded to Truist herein are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the secured creditors alleged collateral.

**B. Cash Collateral Use Will Preserve the Debtor's Going Concern Value.**

16. The continued operation of the Debtor's business will preserve its going concern value, enable the Debtor to capitalize on that value through a reorganization strategy, and ultimately facilitate the Debtor's ability to confirm a chapter 11 plan. However, if the Debtor is not allowed to use cash collateral, it will be unable to operate.

17. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern.

18. A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its efforts to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated. In re *George Ruggiere Chrysler-Plymouth, Inc.,* 727 F.2d 1017, 1019 (11th Cir. 1984); *see In re Stein,* 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (debtor permitted to use cash collateral when creditor was undersecured because such use was necessary to its continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business).

19. If the Debtor cannot use cash collateral, it will be forced to cease operations. By contrast, permitting cash collateral use will allow the Debtor to maintain operations and preserve the going concern value of its business which will inure to the benefit of all creditors.

WHEREFORE, the Debtor requests that this Court enter an order substantially in the form of the proposed order attached as **EXHIBIT B**: (1) granting this motion; (2) authorizing the Debtor's use of cash collateral in accordance with the Budget and the terms set forth herein; (3) granting the replacement liens set forth above in connection with the Debtor's use of cash collateral; (4) scheduling a final hearing; and (5) granting the Debtor such other and further relief as is just and proper.

## ATTORNEY CERTIFICATION

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **May 1, 2026,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and is being served this day on

all counsel of record and those on attached list, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

BEHAR, GUTT & GLAZER, P.A.
Attorneys for Debtor
DCOTA, Suite A-350
1855 Griffin Road
Fort Lauderdale, Florida 33004
Telephone:  (954) 266-3710
Email: bsb@bgglaw.com
Secondary: jgarcia@bgglaw.com

By:_____ /s/ *Brian S. Behar*_____
BRIAN S. BEHAR, ESQ.
FBN:  727131

# EXHIBIT A

Intertrade Holdings Budget Projections

**REVENUE IN**

| | 4-May | 11-May | 18-May | 25-May | May | June | July | August | Sept |
|---|---|---|---|---|---|---|---|---|---|
| COMMISSIONS RECEIVED | | | | | | | | | |
| Tracy | | | | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Cubanita | | | $4,000.00 | | $4,000.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| Bakemark | | | | | $0.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| WWF | | | | $3,300.00 | $3,300.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 |
| D&E | | | | $400.00 | $400.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Traditional | | | | | $0.00 | $0.00 | $10,000.00 | $10,000.00 | $10,000.00 |
| US Dairy | | $200.00 | | | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| Rey Pan | | | $50.00 | | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 |
| | | | | | $0.00 | | | | |

| margin | Sales/mo | Customer | CGS |
|---|---|---|---|
| 0.1 | 14000 | USF | 12600 |
| 0.05 | 8000 | Passions | 7600 |
| 0.08 | 9000 | Sysco | 8280 |
| 0.1 | 73000 | IP Trading | 65700 |
| 0.05 | 233333.3 | CBI | 221666.7 |
| 0.03 | 20000 | Unipak | 19400 |

**SALES**

| | 4-May | 11-May | 18-May | 25-May | May | June | July | August | Sept |
|---|---|---|---|---|---|---|---|---|---|
| Sales | $89,333.33 | $89,333.33 | $89,333.33 | $89,333.33 | $357,333.33 | $357,333.33 | $124,000.00 | $357,333.33 | $357,333.33 |

**REVENUE OUT**

**COGS**

| | 4-May | 11-May | 18-May | 25-May | May |
|---|---|---|---|---|---|
| Traditional | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $220,000.00 |
| Alesie | | $33,000.00 | | $33,000.00 | $66,000.00 |
| Samiya | | | $28,957.00 | | $28,957.00 |
| ABC Global | | | | $6,000.00 | $6,000.00 |
| Miranda Deliciosa | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $7,200.00 |

| | May | June | July | August | Sept |
|---|---|---|---|---|---|
| TOTAL PURCHASES | $328,157.00 | $335,246.67 | $113,580.00 | $113,580.00 | $113,580.00 |

**GENERAL EXPENSES**

| | 4-May | 11-May | 18-May | 25-May | May | June | July | August | Sept | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Salaries | | | | | | | | | | | |
| Perry | | $5,000.00 | | $5,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | | |
| Alan | | $2,600.00 | | $2,600.00 | $5,200.00 | $5,200.00 | $5,200.00 | $5,200.00 | $5,200.00 | | |
| Diana | | $695.00 | | $695.00 | $1,390.00 | $1,390.00 | $1,390.00 | $1,390.00 | $1,390.00 | | |
| | | | | | $0.00 | | | | | | |
| | | | | | $0.00 | | | | | | |
| Office | | | | | $0.00 | | | | | | |
| General | | | | $900.00 | $900.00 | $900.00 | $900.00 | $900.00 | $900.00 | internet, phone, EDI, Drop box, Cloud,emails | Paid on CC, will move to debit card |
| Office | | | | $915.00 | $915.00 | $910.00 | $925.00 | $950.00 | $980.00 | software, supplies, FedEx, samples | Paid on CC, will move to debit card |
| Travel | $50.00 | | $500.00 | $100.00 | $650.00 | $400.00 | $700.00 | $500.00 | $400.00 | Trips and Gas | |
| Prof | | | $1,500.00 | | $1,500.00 | | | | | bookkeeping | |
| Ins | | | | | $0.00 | | | | | Already paid for the year | |
| Lic | | | | | $0.00 | $1,000.00 | | | | PACA needs to be paid for | |
| Food Show | | | | | $0.00 | $2,000.00 | | | | Cheney Bros Food Show | |
| Bank/Int | | | $300.00 | | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | | |

| | May | June | July | August | Sept |
|---|---|---|---|---|---|
| Profit/Loss | $16,771.33 | $9,136.67 | $10,155.00 | $243,663.33 | $243,733.33 |

# EXHIBIT B

PROPOSED

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### BROWARD COUNTY DIVISION
www.flsb.uscourts.gov

In re:

INTERTRADE HOLDINGS INC.                    Case No.: 26-15399-PDR
                                            Chapter 11

    Debtor.

_____/

### INTERIM ORDER GRANTING *EXPEDITED* MOTION FOR AUTHORITY TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND SETTING FINAL HEARING

**THIS MATTER** came before the Court on the _____ day of _____, 2026 pursuant to Intertrade Holdings Inc., (the "Debtor") *Expedited Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and for Final Hearing* (the "Motion") **[ECF No.   ]**. Having considered the Motion, the argument of counsel, and for the reasons stated on the record and being otherwise advised in the premises, the Court **ORDERS and ADJUDGES** as follows:

1.    The Motion is GRANTED on an interim basis subject to a final hearing.

2.      Use of Cash Collateral. The Debtor shall be entitled to use cash collateral to pay all ordinary and necessary expenses in the ordinary course of its business for the purposes contained in the budget attached to the Motion as **Exhibit A** (the "Budget") for a period of five (5) weeks from the entry of this Order. The Debtor is also authorized: (a) to exceed any line item on the Budget by an amount equal to ten (10%) percent of each such line item; or (b) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget.

3.      Replacement Liens. Notwithstanding the provisions of § 552(a) of the Bankruptcy Code, and in addition to the security interests preserved by § 552(b) of the Bankruptcy Code, the Debtor grants in favor of Truist Bank, ("Truist"), as security for all indebtedness that is owed by the Debtor to Truist, under the secured documentation, but only to the extent that Truist's  cash collateral is used by the Debtor, a post-petition security interest and lien in, to and against certain of the Debtor's accounts receivables, to the same extent and priority that Truist held a properly perfected pre-petition security interest in such accounts receivables; provided that, however, under no circumstances shall Truist have a lien on any causes of action arising under 11 U.S.C. § 542 *et seq.*, 547, 548, 549, 550, 551, or any of the Debtor's assets that it did not have a right to pre-petition.

4.      Duration. The use of cash collateral provisions in this Order shall remain in effect through and including _____, 2026, or until otherwise ordered by the Court.

5.      Final Hearing. A final hearing on this matter shall be held on _____, 2026 at _____ a.m./p.m.

6.      The hearing will be conducted at the United States Bankruptcy Court, 299 E. Broward Blvd., #301, Ft. Lauderdale, FL 33301.

7.      Information on requirements and procedures for remote attendance at the hearing may be found on the presiding judge's webpage on the Court's website: www.flsb.uscourts.gov. The audio recording maintained by the Court will be the sole basis for creation of a transcript that constitutes the official record of the hearing.

8.      Unless otherwise ordered, the following procedures apply to permitted remote appearance at hearings:

A.      Registration Required in Advance. To participate in a hearing remotely via Zoom, you must register in advance no later than 3:00 p.m., one business day before the date of the hearing, except for hearings set on an emergency basis, in which case participants must register at least one hour before the hearing. Upon registration, Zoom will provide a password-protected link for the Zoom conference. All participants must conduct a pre-hearing test of Zoom using the same equipment that they intend to use during the hearing.

B.      Registration Process.  To register for a remote appearance via Zoom, click here, or manually enter the following web address into a browser:

https://www.zoomgov.com/meeting/register/vJItcOqurD4qHUbwAimENeAkZ7QUKGhcZ7k

Fill out all required information on the registration page. If you have more than one matter set for hearing on the same date and time, you only need to register once for that date, but you must provide all relevant case numbers, case names and client names in the registration process.

###

Submitted By:
Brian S. Behar, Esq.
Behar, Gutt & Glazer, P.A.
DCOTA Bldg, Suite A-350
Dania Beach, FL 33004
Telephone: 954-266-3710
bsb@bgglaw.com

*(Attorney Behar is directed to mail a copy of this Order to all interested parties and to file a certificate of service).*

Label Matrix for local noticing
113C-0
Case 26-15399
Southern District of Florida
Fort Lauderdale
Tue Apr 28 16:32:47 EDT 2026

Intertrade Holdings Inc.
2114 N. Flamingo Road, Suite 142
Pembroke Pines, FL 33028-3501

American Express
P.O. Box 6031
Carol Stream, IL 60197-6031

Crowley
10205 NW 108th Avenue
Miami, FL 33178-6554

La Latina
3509 NE 2nd Ave.
Miami, FL 33137-3808

National Food
7970 NW 60th St
Miami, FL 33166-3411

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Traditional Snack
5220 NW 72nd Street
Miami, FL 33166-4860

Truist Bank
110 E. Broward Blvd, 21st Floor
Fort Lauderdale, FL 33301-3563

Truist Bank
c/o Shumaker, Loop & Kendrick LLP
101 E. Kennedy Blvd, Ste 2800
Tampa, FL 33602-5150

Brian S Behar Esq
1855 Griffin Road, Suite A-350
Ft. Lauderdale, FL 33004-2210

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Alesie
7631 BB- Ootmarsum
The Neatherlands

End of Label Matrix
Mailable recipients    10
Bypassed recipients     1
Total                  11