UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

                                       Case No. 26-15399-PDR

INTERTRADE HOLDINGS INC.,

                                        Chapter 11

       Debtor.

_____/

### *MOTION FOR RELIEF FROM AUTOMATIC STAY AND TO PROHIBIT USE OF CASH COLLATERAL* (*By Truist Bank*)

Comes now Creditor, TRUIST BANK (*"Truist"*), pursuant to 11 U.S.C. Secs. 362(d)(1) and Sec. 363(c)(2) and (e), and Fed. R. Bankr. P. 4001, and respectfully moves this Court for an order (i) granting relief from the automatic stay, and (ii) prohibiting use of cash collateral by Debtor, INTERTRADE HOLDINGS INC. (*"Intertrade"*), and in support thereof, Truist states as follows:

### *General Allegations*

1.       Intertrade filed the Voluntary Petition in the above styled case on April 28, 2026 (*"the Petition Date"*).

2.       The relief sought by this Motion is the authority to enforce the lien of security interest described herein, and to prohibit Intertrade from using cash collateral.

3.       Truist has retained the undersigned law firm to represent Truist in this matter, and has agreed to pay said firm a reasonable fee for its services, which fee is secured by the lien of the security interest described herein.

### *The Line of Credit*

#### *2019 Origination*

4.       On or about December 4, 2019, Truist extended a line of credit for up to $800,000.00 to Intertrade (*"the LOC"*).

1

5.       On or about December 4, 2019, and in connection with the LOC, Intertrade executed and delivered to Truist that certain Promissory Note *("the 2019 Note")*, a copy of which is attached hereto as ***Exhibit "A"***.

6.       On or about December 4, 2019, in further connection with the LOC, and to secure payment of the LOC and the Note, Intertrade executed and delivered to Truist that certain Commercial Security Agreement *("the 2019 Security Agreement")*, a copy of which is attached hereto as ***Exhibit "B"***, granting Truist a security interest in the personal property described therein *("the Collateral")*, generally described as:

> *All of Intertrade's inventory, equipment, accounts, chattel paper, instruments, letter of credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, general intangibles, and related assets, now existing or hereafter arising, now owned or hereafter acquired, and wherever located, including proceeds and products of same.*

7.       Truist's security interest in the Collateral was duly perfected by virtue of the filing of that certain UCC-1 financing statement *("the UCC")*, a copy of which is attached hereto as ***Exhibit "C"***.

### 2020 Renewal and Increase

8.       On or about November 3, 2020, at the request of Intertrade, Truist renewed and increased the line of credit to up to $1,200,000.00 *("the 2020 LOC Renewal")*.

9.       On or about November 3, 2020, and in connection with the 2020 LOC Renewal, Intertrade executed and delivered to Truist that certain Promissory Note *("the 2020 Note")*, a copy of which is attached hereto as ***Exhibit "D"***.

10.      On or about November 3, 2020, in further connection with the 2020 LOC Renewal, and to reaffirm the collateralization of the LOC, Intertrade executed and delivered to Truist that certain Commercial Security Agreement *("the 2020 Security Agreement")*, a copy of which is

attached hereto as *Exhibit "E"*, reaffirming the granting to Truist of a security interest in the Collateral.

### *2021 Renewal and Increase*

11.     On or about May 5, 2021, at the request of Intertrade, Truist renewed and increased the line of credit to up to $3,500,000.00 *("the 2021 LOC Renewal")*.

12.     On or about May 5, 2021, and in connection with the 2021 LOC Renewal, Intertrade executed and delivered to Truist that certain Promissory Note *("the 2021 Note")*, a copy of which is attached hereto as *Exhibit "F".*

13.     On or about May 5, 2021, in further connection with the 2021 LOC Renewal, and to reaffirm the collateralization of the LOC, Intertrade executed and delivered to Truist that certain Commercial Security Agreement *("the 2021 Security Agreement")*, a copy of which is attached hereto as *Exhibit "G"*, reaffirming the granting to Truist of a security interest in the Collateral.

### *2022 Renewal*

14.     On or about April 8, 2022, at the request of Intertrade, Truist renewed the line of credit for up to $3,500,000.00 *("the 2022 LOC Renewal")*.

15.     On or about April 8, 2022, and in connection with the 2022 LOC Renewal, Intertrade executed and delivered to Truist that certain Promissory Note *("the 2022 Note")*, a copy of which is attached hereto as *Exhibit "H".*[1]

16.     On or about April 8, 2022, in further connection with the 2022 LOC Renewal, and to reaffirm the collateralization of the LOC, Intertrade executed and delivered to Truist that certain

---

[1] Hereinafter, the 2019 Note, the 2020 Note, the 2021 Note and the 2022 Note may collectively be referred to as *"the Notes"*.

Commercial Security Agreement *("the 2022 Security Agreement")*, a copy of which is attached hereto as *Exhibit "I"*,[2] reaffirming the granting to Truist of a security interest in the Collateral.

<u>*Additional Extensions and Modifications*</u>

17.    The maturity date of the 2022 Note and/or other terms of the LOC were modified by virtue of:

A.    The issuance by Truist, and the acceptance by Intertrade, of that certain April 12, 2023 Temporary Extension of Maturity Date, a copy of which is attached hereto as *Exhibit "J"*.

B.    That execution and delivery by Intertrade to Truist of that certain Change of Terms Agreement dated June 29, 2023, a copy of which is attached hereto as *Exhibit "K"*.

C.    The issuance by Truist, and the acceptance by Intertrade, of that certain July 3, 2024 Temporary Extension of Maturity Date, a copy of which is attached hereto as *Exhibit "L"*.

D.    The issuance by Truist, and the acceptance by Intertrade, of that certain October 2, 2024 Temporary Extension of Maturity Date, a copy of which is attached hereto as *Exhibit "M"*.

E.    The issuance by Truist, and the acceptance by Intertrade, of that certain December 26, 2024 Temporary Extension of Maturity Date, a copy of which is attached hereto as *Exhibit "N"*.

F.    That execution and delivery by Intertrade to Truist of that certain Change of Terms Agreement dated April 18, 2025, a copy of which is attached hereto as *Exhibit "O"*.

---

[2] Hereinafter, the 2019 Security Agreement, the 2020 Security Agreement, the 2021 Security Agreement and the 2022 Security Agreement may collectively be referred to as *"the Security Agreements"*.

G.    That execution and delivery by Intertrade to Truist of that certain Change of Terms Agreement dated August 27, 2025, a copy of which is attached hereto as **Exhibit "P"**.

H.    The issuance by Truist, and the acceptance by Intertrade, of that certain November 12, 2025 Temporary Extension of Maturity Date, a copy of which is attached hereto as **Exhibit "Q"**, whereby the maturity date of the LOC was extended until February 4, 2026.

18.    Truist owns and holds the Notes, the Security Agreements and the UCCs, hereinafter collectively referred to as **"the LOC Documents"**, and is entitled to all sums, rights and remedies therein provided or as otherwise provided by law.

<u>Default and Demand</u>

19.    Intertrade defaulted under the terms of the LOC Documents by failing to pay the Note at its maturity date, as extended.

20.    By letter dated February 11, 2026, a copy of which is attached hereto as **Exhibit "R"**, Truist demanded payment of the Note and the LOC balance.

**<u>Indebtedness as of the Petition Date</u>**

21.    The indebtedness owed by Intertrade to Truist as of the Petition Date was as follows:

| | | |
|---|---|---:|
| Principal | $ | 3,500,000.00 |
| Interest | | 131,953.44 |
| Late charges | | 2,340.40 |
| Returned payment fees | | 60.00 |
| Pre-petition attorneys' fees and expenses | | 3,295.65 |
| **TOTAL** | **$** | **3,637,649.49** |

22.    Truist's Indebtedness Worksheet is attached hereto as **Exhibit "S"**.

23.    Truist's Affidavit in Support of this Motion is attached hereto as **Exhibit "T"**.

### *Estimated Market Value*

24.    Truist cannot estimate the fair market value of the Collateral, primarily because Intertrade has refused to permit Truist to inspect and evaluate the Collateral.

### *Cause for Stay Relief under Sec. 362(d)(1)*

25.    Cause exists to grant Truist relief from the automatic stay, including lack of adequate protection of Truist's interest in the Collateral, as reflected by, among other things:

A.    Intertrade's refusal to permit Truist to inspect and evaluate the Collateral.

B.    Intertrade's uncertainty as to whether the tangible Collateral is insured in accordance with the LOC Documents.

C.    Intertrade's presumed ongoing use of Truist's cash collateral without Truist's consent or Order of this Court, contrary to 11 U.S.C. Sec. 363(c)(2).

D.    Intertrade's lack of payment in accordance with the Loan Documents.

WHEREFORE, Truist respectfully moves the Court for its Order:

A.    Modifying the automatic stay so as to permit Truist to enforce the lien of the Security Agreements against the Collateral; and/or

B.    Compelling Intertrade to provide adequate protection, as a condition to maintaining the stay in effect;

C.    Prohibiting Intertrade's ongoing use of Truist's cash collateral without providing adequate protection.

D.    Granting such other relief as the Court deems appropriate.

6

Dated: May 4, 2026

**SHUMAKER, LOOP & KENDRICK, LLP**

/s/ *Jay B. Verona*
Jay B. Verona, Esq.
Florida Bar No. 352616
Primary e-mail:  jverona@shumaker.com
Secondary e-mail:  mhartz@shumaker.com
101 E. Kennedy Blvd., Suite 2800
Tampa, Florida 33602
Phone (813) 229-7600
Fax (813) 229-1660
*Counsel for Truist*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of May, 2026, a copy of the foregoing Motion for Relief from Automatic Stay and to Prohibit Use of Cash Collateral, including Exhibits A through T, was served (i)  electronically through the Court's CM/ECF system, and (ii) by First Class U.S. Mail, postage prepaid upon:

Intertrade Holdings Inc., Debtor
2114 N. Flamingo Rd., #142
Pembroke Pines, FL 33028

/s/ *Jay B. Verona*
Attorney

7

# EXHIBIT A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $800,000.00 | 12-04-2019 | 12-04-2020 | 00001 | | | 20655 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** INTERTRADE HOLDINGS INC.
HISPANIC CERTIFIED FOODS INC.
1741 NW 33RD ST
POMPANO BEACH, FL 33064-1327

**Lender:** BRANCH BANKING AND TRUST COMPANY
Broward - Commercial Loans
110 E Broward Blvd Ste 2100
Fort Lauderdale, FL 33301-3564

---

**Principal Amount: $800,000.00**                                   **Date of Note: December 4, 2019**

**PROMISE TO PAY.** INTERTRADE HOLDINGS INC. and HISPANIC CERTIFIED FOODS INC. ("Borrower") jointly and severally promise to pay to BRANCH BANKING AND TRUST COMPANY ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Thousand & 00/100 Dollars ($800,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on December 4, 2020. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 4, 2020, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to any unpaid collection costs, late and other charges and fees, accrued unpaid interest, and principal in such order as Lender may determine in its sole and absolute discretion. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the U.S. Prime Rate as published in The Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. If the Index is at any time determined to be less than zero percent (0%), then the Index shall be deemed to be zero percent (0%). Borrower understands that Lender may make loans based on other rates as well. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.750 percentage points over the Index. NOTICE: Under no circumstances will the effective rate of interest on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**REAMORTIZATION.** In addition to other rights herein, Lender reserves the right in its sole discretion, from time to time, to (a) adjust any periodic fixed payment in such amounts and at such times to repay principal at the amortization period originally agreed upon and accruals of interest as the same becomes due, and (b) increase Borrower's payments to pay all accruals of interest for the period and accruals of unpaid interest from previous periods.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BRANCH BANKING AND TRUST COMPANY, Broward - Commercial Loans, 110 E Broward Blvd Ste 2100, Fort Lauderdale, FL 33301-3564.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 15.000%. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default In Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.

## PROMISSORY NOTE
**(Continued)**

Loan No: 00001                                                                                                Page 2

This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**LENDER'S REMEDIES.** Upon an Event of Default, in addition to Lender's rights set forth above, Lender may, at its option and without notice to Borrower (i) cease making advances or disbursements; (ii) advance funds necessary to remedy any default or pay any lien filed against any of the Collateral; (iii) take possession of the Collateral or any part thereof; (iv) foreclose Lender's security interest and/or lien on any Collateral in accordance with applicable law; (v) make demand upon any or all Guarantors; and (vi) exercise any other right or remedy which Lender has under the Note or any related documents or which is otherwise available at law or in equity. Upon an Event of Default, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the Indebtedness has been paid in full or until the default has been satisfactorily cured which may be allowed at the sole discretion of the Lender, and such rate shall apply after judgment. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to make expenditures or to take action to perform an obligation of Borrower, or of any Grantor, shall not affect Lender's right to declare a default and exercise its rights and remedies.

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender because of nonpayment due to nonsufficient funds.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Commercial Security Agreement dated December 4, 2019 made and executed between INTERTRADE HOLDINGS INC. and Lender on collateral described as: inventory, chattel paper, accounts, equipment and general intangibles.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**REQUIRED INFORMATION FOR A NEW LOAN.** To help the government fight the funding of terrorism and money laundering activities, federal law requires Lender to obtain, verify and record information that identifies each person or entity obtaining a loan including the Borrower's legal

## PROMISSORY NOTE
**(Continued)**

Loan No: 00001                                                                                                Page 3

name, address, tax identification number, date of birth, driver's license, organizational documents or other identifying documents. Failure to provide the required information will result in a violation of the U.S. Patriot Act and will constitute a default under this instrument or agreement. In addition, none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website.

**BUSINESS PURPOSE.** This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family or household purposes.

**USURY SAVINGS CLAUSE.** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect; and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note; and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower. All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal. Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only. The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph.

**PRIOR NOTE.** This Note constitutes a renewal and increase of Note #9662109409/ 90002 in the original amount of $ 350,000.00. Documentary stamp tax in the amount of $1,225.00 was paid to the Florida Department of Revenue, and additional documentary stamp tax in the amount of $1225.00 has been or will be paid to the Florida Department of Revenue. Certificate of Registration No. 56-1074313-19-001.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**CHOICE OF VENUE.** Any legal action with respect to the Indebtedness evidenced by this instrument or agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Borrower hereby accepts and unconditionally submits to the jurisdiction of such courts. Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH BORROWER AND LENDER, IF A PARTY HERETO, HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**NOTICES.** Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Note. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Note to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Note. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Note shall not affect the legality, validity of enforceability of any other provision of this Note.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Note.

**INTERPRETATION.** In all cases where there is more than one Borrower, then all words used in this Note in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Note or when this Note is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them. The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them. Wherever possible, the provisions of this Note shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Note.

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any

## PROMISSORY NOTE
## (Continued)

**Loan No: 00001**                                                    **Page 4**

non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**INTERTRADE HOLDINGS INC.**

By: _____
    PERRY BURK, CFO of INTERTRADE HOLDINGS INC.

By: _____
    ANTHONY FEESE, PRESIDENT of INTERTRADE HOLDINGS INC.

**HISPANIC CERTIFIED FOODS INC.**

By: _____
    PERRY BURK, PRESIDENT of HISPANIC CERTIFIED FOODS INC.

ATTEST: Witness

_____
Secretary or Assistant Secretary.

By: _____
    GASPARE BONGIORNO, CEO of INTERTRADE HOLDINGS INC.

( Corporate Seal )

---

### Florida Documentary Stamp Tax

This Note constitutes a renewal and increase of Note ▮▮▮▮▮▮ 90002 in the original amount of $ 350,000.00. Documentary stamp tax in the amount of $1,225.00 was paid to the Florida Department of Revenue, and additional documentary stamp tax in the amount of $1225.00 has been or will be paid to the Florida Department of Revenue. Certificate of Registration No. 56-1074313-19-001.

LaserPro, Ver. 19.1.10.016  Copr. Finastra USA Corporation 1997, 2019.  All Rights Reserved.  - FL  C:\LPL-PROD\CFI\LPL\D20 FC  TR-122591  PR-118

OFFICIAL SEAL
AVAIS BAJWA
NOTARY PUBLIC - NEW JERSEY
Comm. # 50100099
My Comm. Expires March 1, 2024

# EXHIBIT B

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $800,000.00 | 12-04-2019 | 12-04-2020 | 00001 | | | 20655 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** INTERTRADE HOLDINGS INC.
HISPANIC CERTIFIED FOODS INC.
1741 NW 33RD ST
POMPANO BEACH, FL 33064-1327

**Lender:** BRANCH BANKING AND TRUST COMPANY
Broward - Commercial Loans
110 E Broward Blvd Ste 2100
Fort Lauderdale, FL 33301-3564

**Grantor:** INTERTRADE HOLDINGS INC.
1741 NW 33RD ST
POMPANO BEACH, FL 33064-1327

THIS COMMERCIAL SECURITY AGREEMENT dated December 4, 2019, is made and executed among INTERTRADE HOLDINGS INC. ("Grantor"); INTERTRADE HOLDINGS INC. and HISPANIC CERTIFIED FOODS INC. ("Borrower"); and BRANCH BANKING AND TRUST COMPANY ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); together with, all insurance policies and refunds, all good will, all records and data and embedded software, all equipment, inventory and software to utilize, create, maintain and process any records and data on electronic media, and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired and wherever located; and all accessions, additions, substitutions, replacements, products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Borrower regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower

## COMMERCIAL SECURITY AGREEMENT
**Loan No: 00001**                                      **(Continued)**                                              **Page 2**

or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Organization.** Grantor is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Wyoming. Grantor is duly authorized to transact business in all other states in which Grantor is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Grantor is doing business. Specifically, Grantor is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Grantor has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Grantor maintains an office at 1741 NW 33RD ST, POMPANO BEACH, FL 33064-1327. Unless Grantor has designated otherwise in writing, the principal office is the office at which Grantor keeps its books and records including its records concerning the Collateral. Grantor will notify Lender prior to any change in the location of Grantor's state of organization or any change in Grantor's name. Grantor shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Grantor and Grantor's business activities.

**Authorization.** Grantor's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Grantor, do not require the consent or approval of any other person, regulatory authority, or governmental body, and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Grantor's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Grantor or (2) any law, governmental regulation, court decree, or order applicable to Grantor or to Grantor's properties. Grantor has the power and authority to enter into the Note and the Related Documents and to grant collateral as security for the Indebtedness. Grantor has the further power and authority to own and to hold all of Grantor's assets and properties, and to carry on Grantor's business as presently conducted.

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice. Grantor represents and warrants to Lender that Grantor has provided Lender with Grantor's correct Employer Identification Number. Grantor promptly shall notify Lender should Grantor apply for or obtain a new Employer Identification Number.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located. Collateral consisting of inventory and other goods is not currently located and, as long as this Agreement remains in effect, will not be kept in a field or public warehouse or with a bailee, and shall be kept only at locations approved by Lender. Grantor will not permit any of the Collateral to be incorporated in or placed upon any real (immovable) property in such a way that it becomes immobilized under applicable Wyoming law. Upon Lender's request, Grantor shall cause any owners or mortgagees of the real property upon which any of of the Collateral may be located to furnish to Lender waivers with respect to any rights in or to the Collateral.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Wyoming, without Lender's prior written consent. If Grantor moves from Grantor's address shown above to another location within the same state, Grantor may move the Collateral to Grantor's new address, but only if Grantor gives Lender the new address in writing prior to Grantor's moving. In any event, Grantor agrees to keep Lender informed at all times of Grantor's current address. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

## COMMERCIAL SECURITY AGREEMENT
**Loan No: 00001**                          (Continued)                                    **Page 3**

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Collateral Schedules and Locations.** As often as Lender shall require, and insofar as the Collateral consists of accounts and general intangibles, Grantor shall deliver to Lender schedules of such Collateral, including such information as Lender may require, including without limitation names and addresses of account debtors and agings of accounts and general intangibles. Insofar as the Collateral consists of inventory and equipment, Grantor shall deliver to Lender, as often as Lender shall require, such lists, descriptions, and designations of such Collateral as Lender may require to identify the nature, extent, and location of such Collateral. Such information shall be submitted for Grantor and each of its subsidiaries or related companies.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Repairs and Maintenance.** Grantor shall keep and maintain and shall cause others to keep and maintain the Collateral in good order, repair and merchantable condition. Grantor shall further make and/or cause all necessary repairs to be made to the Collateral, including the repair and restoration of any portion of the Collateral that may be damaged, lost or destroyed. In addition, Grantor shall not, without the prior written consent of Lender, make or permit to be made any alterations to any of the Collateral that may reduce or impair the Collateral's use, value or marketability. Furthermore, Grantor shall not, nor shall Grantor permit others to abandon, commit waste, or destroy the Collateral or any part or parts thereof. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Required Insurance.** So long as this Agreement remains in effect, Grantor shall, at its sole cost, keep and/or cause others, at their expense,

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

to keep the Collateral constantly insured against loss by fire, by hazards included within the term "extended coverage," and by such other hazards (including flood insurance where applicable) as may be required by Lender.

**Insurance Proceeds.** Lender shall have the right to directly receive the proceeds of all insurance protecting the Collateral. In the event that Grantor should receive any such insurance proceeds, Grantor agrees to immediately turn over and to pay such proceeds directly to Lender. All insurance proceeds may be applied, at its sole option and discretion, and in such a manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or fees necessarily paid or incurred by Lender in this connection), for the purpose of: (1) repairing or restoring the lost, damaged or destroyed Collateral; or (2) reducing the then outstanding balance of Grantor's Indebtedness.

Lender's receipt of such insurance proceeds and the application of such proceeds as provided herein shall not, however, affect the lien of this Agreement. Nothing under this section shall be deemed to excuse Grantor from its obligations promptly to repair, replace or restore any lost or damaged Collateral, whether or not the same may be covered by insurance, and whether or not such proceeds of insurance are available, and whether such proceeds are sufficient in amount to complete such repair, replacement or restoration to the satisfaction of Lender. Furthermore, unless otherwise confirmed by Lender in writing, the application or release of any insurance proceeds by Lender shall not be deemed to cure or waive any Event of Default under this Agreement. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Prior Encumbrances.** To the extent applicable, Grantor shall fully and timely perform any and all of Grantor's obligations under any prior Encumbrances affecting the Collateral. Without limiting the foregoing, Grantor shall not commit or permit to exist any breach of or default under any such prior Encumbrances. Grantor shall further promptly notify Lender in writing upon the occurrence of any event or circumstances that would, or that might, result in a breach of or default under any such prior Encumbrance. Grantor shall further not modify or extend any of the terms of any prior Encumbrance or any indebtedness secured thereby, or request or obtain any additional loans or other extensions of credit from any third party creditor or creditors whenever such additional loan advances or other extensions of credit may be directly or indirectly secured, whether by cross-collateralization or otherwise, by the Collateral, or any part or parts thereof, with possible preference and priority over Lender's security interest. Grantor additionally agrees to obtain, upon Lender's request, and in form and substance as may then be satisfactory to Lender, appropriate waivers and subordinations of any lessor's liens or privileges, vendor's liens or privileges, purchase money security interests, and any other Encumbrances that may affect the Collateral at any time.

**Future Encumbrances.** Grantor shall not, without the prior written consent of Lender, grant any Encumbrance that may affect the Collateral, or any part or parts thereof, nor shall Grantor permit or consent to any Encumbrance attaching to or being filed against any of the Collateral in favor of anyone other than Lender. Grantor shall further promptly pay when due all statements and charges of mechanics, materialmen, laborers and others incurred in connection with the alteration, improvement, repair and maintenance of the Collateral, or otherwise furnish appropriate security or bond, so that no future Encumbrance may ever attach to or be filed against any Collateral. In the event that the Collateral or any part or parts thereof is and/or may be located in and/or on leased premises, Grantor shall promptly pay the full amount of such rental or lease payments whenever the same shall be due so that no lessor's lien or privilege may ever attach to or affect any of the Collateral with possible preference and priority over the lien of this Agreement. In the event that any of the Collateral is purchased or otherwise acquired by Grantor on a credit or deferred payment sales basis, Grantor shall promptly pay the full amount of the purchase or acquisition price of such Collateral so that no vendor's lien or privilege, or purchase money security interest, may ever attach to or be asserted against any of the Collateral with possible preference and priority over the lien of this Agreement. Grantor additionally agrees to obtain, upon request by Lender, and in form and substance as may then be satisfactory to Lender, appropriate waivers and/or subordinations of any lessor's liens or privileges, vendor's liens or privileges, purchase money security interests, and any other Encumbrances that may affect the Collateral at any time.

As long as this Agreement remains in effect, Grantor will not permit any levy, attachment or restraint to be made affecting any of the Collateral, or permit any notice of lien to be filed with respect to the Collateral or any part or parts thereof, or permit any receiver, trustee, custodian or assignee for the benefit of creditors to be appointed to take possession of any of the Collateral. Notwithstanding the foregoing, Grantor may, at its sole expense, contest in good faith by appropriate proceedings the validity or amount of any levy, attachment, restraint or lien filed against or affecting the Collateral, or any part or parts thereof; provided that (1) Grantor notifies Lender in advance of Grantor's intent to contest such a levy, attachment, restraint or lien, and (2) Grantor provides additional security to Lender, in form and amount satisfactory to Lender.

**Notice of Encumbrances.** Grantor shall immediately notify Lender in writing upon the filing of any attachment, lien, judicial process, claim, or other Encumbrance. Grantor additionally agrees to notify Lender immediately in writing upon the occurrence of any default, or event that with the passage of time, failure to cure, or giving of notice, might result in a default under any of Grantor's obligations that may be secured by any presently existing or future Encumbrance, or that might result in an Encumbrance affecting the Collateral, or should any of the Collateral be seized or attached or levied upon, or threatened by seizure or attachment or levy, by any person other than Lender.

**Books and Records.** Grantor will keep proper books and records with regard to Grantor's business activities and the Collateral in which a security interest is granted hereunder, in accordance with GAAP, applied on a consistent basis throughout, which books and records shall at all reasonable times be open to inspection and copying by Lender or Lender's designated agents. Lender shall also have the right to inspect Grantor's books and records, and to discuss Grantor's affairs and finances with Grantor's officers and representatives, at such reasonable times as Lender may designate.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect,

## COMMERCIAL SECURITY AGREEMENT
**Loan No: 00001**                    **(Continued)**                    **Page 5**

protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**Grantor's Name.** The Grantor's exact legal name is as set forth in the first paragraph of this Agreement.

**CONSIDERATION.** Grantor represents to Lender that the granting of the loan or other financial accommodations from Lender to Borrower will benefit, directly or indirectly, Grantor. Grantor acknowledges that Lender is relying upon this representation in extending the loan or other financial accommodations to Borrower.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**ADDITIONAL COVENANTS.** Grantor additionally agrees:

**No Settlement or Compromise.** Grantor will not, without the prior written consent of Lender, compromise, settle, adjust or extend payment under any of the Collateral.

**Books and Records.** Grantor will keep proper books and records with regard to Grantor's business activities and the Collateral, which books and records shall at all times be open to inspection and copying by Lender or its designated agent. Lender shall also have the right to inspect Grantor's books and records, and to discuss Grantor's affairs and finances with Grantor at such reasonable times as Lender may designate.

**Aging of Accounts.** Grantor will periodically, at such intervals requested by Lender, furnish Lender with an aging of that part of the Collateral consisting of accounts, together with a certificate executed by an officer of Grantor, in such form and containing such representations and warranties regarding the accounts as Lender may reasonably require.

**Lock Box.** Grantor agrees that Lender may at any time require Grantor to institute procedures whereby the proceeds and/or payments of any accounts subject to this Agreement shall be paid by the debtors thereof under a lock box arrangement to Lender, or to Lender's agent, or to one or more financial institutions designated by Lender. Grantor further agrees that, if no Event of Default exists under this Agreement, any and all of such funds received under such a lock box arrangement shall, at Lender's sole election and discretion, either be: (a) paid and/or turned over to Grantor; (b) deposited into one or more accounts for the benefit of Grantor (which deposit accounts shall be subject to collateral assignment and pledge in favor of Lender as provided under this Agreement); (c) deposited into one or more accounts for the joint benefit of Grantor and Lender (which deposit accounts shall likewise be subject to assignment and pledge in favor of Lender as provided under this Agreement); (d) paid and/or turned over to Lender to be applied to the Indebtedness in such order and priority as Lender may determine within its sole discretion; or (e) any combination of the foregoing as Lender shall determine from time to time. Grantor further agrees that, should one or more Events of Default exist under this Agreement, any and all funds received under such a lock box arrangement shall be paid and/or turned over to Lender to be applied to principal, accrued interest, costs, expenses, attorneys' fees and other fees and charges under the Indebtedness, again in such order and priority as Lender may determine within its sole discretion.

**Notice to Obligors.** Upon request by Lender, Grantor immediately will notify individual obligors with regard to the Collateral, advising such obligors of the fact that Lender has been granted a security interest in their obligations. In the event that Grantor should fail to provide such notices for any reason upon Lender's request, Grantor agrees that Lender may forward appropriate notices to such obligors and debtors either in Lender's name or in Grantor's name.

**Additional Documents.** Grantor shall at any time, from time to time, one or more times, upon Lender's written request, execute and deliver such further documents and do any and all such further acts and things as Lender may reasonably request, within Lender's sole discretion, to effect the purposes of this Agreement.

**Verifications.** Grantor additionally agrees that Lender or Lender's agents may periodically contact individual debtors whose notes, instruments and chattel paper have been assigned and pledged under this Agreement in order to verify the amounts then owing under such obligations, to determine whether such debtors have any offsets or counterclaims against Grantor, and with respect to such other matters about which Lender may inquire.

**Notification of Lender.** Grantor will promptly deliver to Lender all written notices, and will promptly give Lender written notice of any other notices received by Grantor with respect to the Collateral and Rights, and Lender will promptly give like notice to Grantor of any such notices received by Lender or its nominee.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this

## COMMERCIAL SECURITY AGREEMENT
**(Continued)**

    

Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Borrower, any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's, any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Agreement or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower or Grantor and the failure by Borrower or Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Wyoming Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail

## COMMERCIAL SECURITY AGREEMENT
**(Continued)**

addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**NO MARSHALLING.** Grantor hereby waives the right to (i) require Lender to marshal the Collateral or any other assets or Property of Grantor or (ii) require that Lender resort to any particular Property or any part thereof.

**CHOICE OF VENUE.** Any legal action with respect to the Indebtedness evidenced by this instrument or agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Grantor hereby accepts and unconditionally submits to the jurisdiction of such courts. Grantor hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**ADDITIONAL INDEBTEDNESS SECURED.** This Agreement shall secure the Indebtedness and any other amounts as set forth herein which Grantor or Borrower may owe to Lender, whether direct or indirect, now existing or hereafter arising, contingent or otherwise, and whether arising under this security instrument or otherwise, including without limitation (i) any advances made by Lender to pay drawings on any irrevocable standby or commercial letter of credit issued on the account of Grantor or Borrower pursuant to an application therefor, (ii) any obligation under a Hedge Agreement. "Hedge Agreement" means an agreement between Borrower and Lender, now existing or hereafter entered into, which provides for an interest rate, credit, commodity, equity swap, cap floor, collar, spot or forward foreign exchange transaction, currency swap, cross-currency rate swap, currency option or any similar transaction or any combination of, or option with respect to, these or similar transactions, for the purpose of hedging Grantor's or Borrower's exposure to fluctuations in interest or exchange rates, loan, credit, exchange, security or currency valuations or currency prices pursuant to any ISDA Master agreement executed by Grantor or Borrower and all Schedules and Confirmations entered into in connection therewith or otherwise, (iii) all amounts expended to preserve or protect the Property, and (iv) all Lender's Expenditures as set forth herein, all of which shall be included in the Indebtedness, as defined herein.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Wyoming. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Florida.**

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**Non-Liability of Lender.** The relationship between Borrower and Grantor and Lender created by this Agreement is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Borrower and Grantor. Borrower and Grantor are exercising Borrower's and Grantor's own judgment with respect to Borrower's and Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Borrower and Grantor of any matter with respect to Borrower's and Grantor's business. Lender and Borrower and Grantor intend that Lender may reasonably rely on all information supplied by Borrower and Grantor to Lender, together with all representations and warranties given by Borrower and Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Notice of Lender's Breach.** Grantor must notify Lender in writing of any breach of this Agreement or the Related Documents by Lender and any other claim, cause of action or offset against Lender within thirty (30) days after the occurrence of such breach or after the accrual of such claim, cause of action or offset. Grantor waives any claim, cause of action or offset for which notice is not given in accordance with this paragraph. Lender is entitled to rely on any failure to give such notice.

**Indemnification of Lender.** Grantor agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits,

## COMMERCIAL SECURITY AGREEMENT

obligations, damages, losses, costs and expenses (including, without limitation, Lender's attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this, as well as by: (1) the ownership, use, operation, construction, renovation, demolition, preservation, management, repair, condition, or maintenance of any part of the Collateral; (2) the exercise of any of Grantor's rights collaterally assigned and pledged to Lender hereunder; (3) any failure of Grantor to perform any of its obligations hereunder; and/or (4) any failure of Grantor to comply with the environmental and ERISA obligations, representations and warranties set forth herein. The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder. Grantor's indemnity obligations under this section shall not in any way be affected by the presence or absence of covering insurance, or by the amount of such insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under any insurance policy or policies affecting the Collateral and/or Grantor's business activities. Should any claim, action or proceeding be made or brought against Lender by reason of any event as to which Grantor's indemnification obligations apply, then, upon Lender's demand, Grantor, at its sole cost and expense, shall defend such claim, action or proceeding in Grantor's name, if necessary, by the attorneys for Grantor's insurance carrier (if such claim, action or proceeding is covered by insurance), or otherwise by such attorneys as Lender shall approve. Lender may also engage its own attorneys at its reasonable discretion to defend Grantor and to assist in its defense and Grantor agrees to pay the fees and disbursements of such attorneys.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Agreement, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH GRANTOR AND LENDER, IF A PARTY HERETO, HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY GRANTOR AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH GRANTOR HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means INTERTRADE HOLDINGS INC. and HISPANIC CERTIFIED FOODS INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Loan No: 00001**

**Page 9**

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Encumbrance.** The word "Encumbrance" means any and all presently existing or future mortgages, liens, privileges and other contractual and statutory security interests and rights, of every nature and kind, whether in admiralty, at law, or in equity, that now and/or in the future may affect the Collateral or any part or parts thereof.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means INTERTRADE HOLDINGS INC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, Grantor's successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means BRANCH BANKING AND TRUST COMPANY, its successors and assigns.

**Note.** The word "Note" means the Note dated December 4, 2019 and executed by INTERTRADE HOLDINGS INC. and HISPANIC CERTIFIED FOODS INC. in the principal amount of $800,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rights.** The word "Rights" means individually, collectively and interchangeably any and all of Grantor's additional rights granted and pledged to Lender as provided under this Agreement.

**BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED DECEMBER 4, 2019.**

**GRANTOR:**

INTERTRADE HOLDINGS INC.

By: _____
PERRY BURK, CFO of INTERTRADE HOLDINGS INC.

By: _____
ANTHONY FEESE, PRESIDENT of INTERTRADE HOLDINGS INC.

By: _____
GASPARE BONGIORNO, CEO of INTERTRADE HOLDINGS INC.

OFFICIAL SEAL
AVAIS BAJWA
NOTARY PUBLIC - NEW JERSEY
Comm. # 50100099
My Comm. Expires March 1, 2024

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Loan No: 00001**                                                                                        **Page 10**

BORROWER:

INTERTRADE HOLDINGS INC.

By: _____
    PERRY BURK, CFO of INTERTRADE HOLDINGS INC.

By: _____
    ANTHONY FEESE, PRESIDENT of INTERTRADE
    HOLDINGS INC.

By: _____
    GASPARE BONGIORNO, CEO of INTERTRADE
    HOLDINGS INC.

HISPANIC CERTIFIED FOODS INC.

By: _____
    PERRY BURK, PRESIDENT of HISPANIC CERTIFIED
    FOODS INC.

LaserPro, Ver. 19.1.10.016 Copr. Finastra USA Corporation 1997, 2019 All Rights Reserved. - WY/FL C:\LPL-PROD\CFI\LPL\E40.FC TR-122591 PR-118

OFFICIAL SEAL
AVAIS BAJWA
NOTARY PUBLIC - NEW JERSEY
Comm. # 50100099
My Comm. Expires March 1, 2024

# EXHIBIT C

(Page 2 of 2)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**Lien Solutions**
Representation of filing

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141 |

**This filing is Completed**
File Number : 2019-15109321
File Date : 09-Dec-2019

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| uccfilingreturn@wolterskluwer.com |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) | 9418 - BB & T - MASTER |
|---|---|

Lien Solutions

72874616

P.O. Box 29071
Glendale, CA 91209-9071

**WYOM**

File with: Secretary of State, WY

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| INTERTRADE HOLDINGS INC. | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1741 NW 33RD ST | POMPANO BEACH | FL | 33064 | USA |

2. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Truist Bank | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P O Box 1626 | Wilson | NC | 27894-9961 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); together with, all insurance policies and refunds, all good will, all records and data and embedded software, all equipment, inventory and software to utilize, create, maintain and process any records and data on electronic media, and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired and wherever located; and all accessions, additions, substitutions, replacements, products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing.

| 5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative | | |
|---|---|---|
| 6a. Check <u>only</u> if applicable and check <u>only</u> one box: | | 6b. Check <u>only</u> if applicable and check <u>only</u> one box: |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | | |
| 8. OPTIONAL FILER REFERENCE DATA: 72874616          8540670 | Commercial | |

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# EXHIBIT D

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $1,200,000.00 | 11-03-2020 | 12-03-2021 | 00004 | | | 72324 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** INTERTRADE HOLDINGS INC.
2001 NW 109TH AVE
PEMBROKE PINES, FL  33026-2246

**Lender:** TRUIST BANK
Broward -Bus Bnk BBT
110 E Broward Blvd Ste 2100
Fort Lauderdale, FL  33301-3564

---

**Principal Amount: $1,200,000.00**                     **Date of Note:  November 3, 2020**

**PROMISE TO PAY.** INTERTRADE HOLDINGS INC. ("Borrower") promises to pay to TRUIST BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Two Hundred Thousand & 00/100 Dollars ($1,200,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on December 3, 2021. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning December 4, 2020, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to any unpaid collection costs, late and other charges and fees, accrued unpaid interest, and principal in such order as Lender may determine in its sole and absolute discretion. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the rate announced by Lender from time to time as the Lender's Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.550 percentage points over the Index (the "Margin"). If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this Note, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the effective rate of interest on this Note be less than 4.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**REAMORTIZATION.** In addition to other rights herein, Lender reserves the right in its sole discretion, from time to time, to (a) adjust any periodic fixed payment in such amounts and at such times to repay principal at the amortization period originally agreed upon and accruals of interest as the same becomes due, and (b) increase Borrower's payments to pay all accruals of interest for the period and accruals of unpaid interest from previous periods.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: TRUIST BANK, Broward -Bus Bnk BBT, 110 E Broward Blvd Ste 2100, Fort Lauderdale, FL  33301-3564.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 15.000%. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

## PROMISSORY NOTE
### (Continued)

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**LENDER'S REMEDIES.** Upon an Event of Default, in addition to Lender's rights set forth above, Lender may, at its option and without notice to Borrower (i) cease making advances or disbursements; (ii) advance funds necessary to remedy any default or pay any lien filed against any of the Collateral; (iii) take possession of the Collateral or any part thereof; (iv) foreclose Lender's security interest and/or lien on any Collateral in accordance with applicable law; (v) make demand upon any or all Guarantors; and (vi) exercise any other right or remedy which Lender has under the Note or any related documents or which is otherwise available at law or in equity. Upon an Event of Default, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the Indebtedness has been paid in full or until the default has been satisfactorily cured which may be allowed at the sole discretion of the Lender, and such rate shall apply after judgment. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to make expenditures or to take action to perform an obligation of Borrower, or of any Grantor, shall not affect Lender's right to declare a default and exercise its rights and remedies.

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender because of nonpayment due to nonsufficient funds.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Commercial Security Agreement dated November 3, 2020 made and executed between INTERTRADE HOLDINGS INC. and Lender on collateral described as: inventory, accounts, equipment and general intangibles.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

## PROMISSORY NOTE
### (Continued)

Loan No: 00004                                                                                            Page 3

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**REQUIRED INFORMATION FOR A NEW LOAN.** To help the government fight the funding of terrorism and money laundering activities, federal law requires Lender to obtain, verify and record information that identifies each person or entity obtaining a loan including the Borrower's legal name, address, tax identification number, date of birth, driver's license, organizational documents or other identifying documents. Failure to provide the required information will result in a violation of the U.S. Patriot Act and will constitute a Default under this instrument or agreement. In addition, none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website.

**BUSINESS PURPOSE.** This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family or household purposes.

**USURY SAVINGS CLAUSE.** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect; and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note; and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower. All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal. Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only. The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**CHOICE OF VENUE.** Any legal action with respect to the Indebtedness evidenced by this instrument or agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Borrower hereby accepts and unconditionally submits to the jurisdiction of such courts. Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH BORROWER AND LENDER, IF A PARTY HERETO, HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**NOTICES.** Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Note. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Note to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Note. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Note shall not affect the legality, validity of enforceability of any other provision of this Note.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Note.

**INTERPRETATION.** In all cases where there is more than one Borrower, then all words used in this Note in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Note or when this Note is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them. The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them. Wherever possible, the provisions of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Note.

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's

**PROMISSORY NOTE**
**(Continued)**

Loan No: 00004                                                                                                          Page 4

security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

INTERTRADE HOLDINGS INC.

By: _____
   PERRY BURK, CFO of INTERTRADE HOLDINGS INC.

By: _____
   GASPARE BONGIORNO, GEO of INTERTRADE
   HOLDINGS INC.

X _____
   Witness

**Florida Documentary Stamp Tax**

This Note constitutes a renewal and increase of Note ▋▋▋▋▋▋ 00004 in the original amount of $800,000.00 . Documentary stamp tax in the amount of $2450.00 was paid to the Florida Department of Revenue, and additional documentary stamp tax in the amount of $0.00 has been or will be paid to the Florida Department of Revenue. Certificate of Registration No. 56-1074313-19-001.

LaserPro, Ver. 20.2.20.003  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - FL  C:\LPL-PRODCFI\LPL\D20 FC  TR-185341  PR-118

# EXHIBIT E

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,200,000.00 | 11-03-2020 | 12-03-2021 | 00004 | | ████████ | 72324 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** INTERTRADE HOLDINGS INC.
2001 NW 109TH AVE
PEMBROKE PINES, FL 33026-2246

**Lender:** TRUIST BANK
Broward -Bus Bnk BBT
110 E Broward Blvd Ste 2100
Fort Lauderdale, FL 33301-3564

---

THIS COMMERCIAL SECURITY AGREEMENT dated November 3, 2020, is made and executed between INTERTRADE HOLDINGS INC. ("Grantor") and TRUIST BANK ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**All Inventory, Accounts, Equipment and General Intangibles**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

Organization. Grantor is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Wyoming. Grantor is duly authorized to transact business in the State of Florida and all other states in which Grantor is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Grantor is doing business. Specifically, Grantor is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Grantor has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Grantor maintains an office at 2001 NW 109TH AVE, PEMBROKE PINES, FL 33026-2246. Unless Grantor has designated otherwise in writing, the principal office is the office at which Grantor keeps its books and records including its records concerning the Collateral. Grantor will notify Lender prior to any change in the location of Grantor's state of organization or any change in Grantor's name. Grantor shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Grantor and Grantor's business activities.

Authorization. Grantor's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized

**Loan No: 00004** ......................................................................................................................... **Page 2**

by all necessary action by Grantor, do not require the consent or approval of any other person, regulatory authority, or governmental body, and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Grantor's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Grantor or (2) any law, governmental regulation, court decree, or order applicable to Grantor or to Grantor's properties. Grantor has the power and authority to enter into the Note and the Related Documents and to grant collateral as security for the Indebtedness. Grantor has the further power and authority to own and to hold all of Grantor's assets and properties, and to carry on Grantor's business as presently conducted.

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice. Grantor represents and warrants to Lender that Grantor has provided Lender with Grantor's correct Employer Identification Number. Grantor promptly shall notify Lender should Grantor apply for or obtain a new Employer Identification Number.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located. Collateral consisting of inventory and other goods is not currently located and, as long as this Agreement remains in effect, will not be kept in a field or public warehouse or with a bailee, and shall be kept only at locations approved by Lender. Grantor will not permit any of the Collateral to be incorporated in or placed upon any real (immovable) property in such a way that it becomes immobilized under applicable Wyoming law. Upon Lender's request, Grantor shall cause any owners or mortgagees of the real property upon which any of of the Collateral may be located to furnish to Lender waivers with respect to any rights in or to the Collateral.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Wyoming, without Lender's prior written consent. If Grantor moves from Grantor's address shown above to another location within the same state, Grantor may move the Collateral to Grantor's new address, but only if Grantor gives Lender the new address in writing prior to Grantor's moving. In any event, Grantor agrees to keep Lender informed at all times of Grantor's current address. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Collateral Schedules and Locations.** As often as Lender shall require, and insofar as the Collateral consists of accounts and general intangibles, Grantor shall deliver to Lender schedules of such Collateral, including such information as Lender may require, including without limitation names and addresses of account debtors and agings of accounts and general intangibles. Insofar as the Collateral consists of inventory and equipment, Grantor shall deliver to Lender, as often as Lender shall require, such lists, descriptions, and designations of such Collateral as Lender may require to identify the nature, extent, and location of such Collateral. Such information shall be submitted for Grantor and each of its subsidiaries or related companies.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: 00004                                                                            Page 3

may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion.  If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral.  In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Repairs and Maintenance.**  Grantor shall keep and maintain and shall cause others to keep and maintain the Collateral in good order, repair and merchantable condition.  Grantor shall further make and/or cause all necessary repairs to be made to the Collateral, including the repair and restoration of any portion of the Collateral that may be damaged, lost or destroyed.  In addition, Grantor shall not, without the prior written consent of Lender, make or permit to be made any alterations to any of the Collateral that may reduce or impair the Collateral's use, value or marketability.  Furthermore, Grantor shall not, nor shall Grantor permit others to abandon, commit waste, or destroy the Collateral or any part or parts thereof.  Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner.  Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.**  Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity.  Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.**  Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances.  Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement.  This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.**  Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender.  Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person.  In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require.  If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral.  If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration.  If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor.  Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Required Insurance.**  So long as this Agreement remains in effect, Grantor shall, at its sole cost, keep and/or cause others, at their expense, to keep the Collateral constantly insured against loss by fire, by hazards included within the term "extended coverage," and by such other hazards (including flood insurance where applicable) as may be required by Lender.

**Insurance Proceeds.**  Lender shall have the right to directly receive the proceeds of all insurance protecting the Collateral.  In the event that Grantor should receive any such insurance proceeds, Grantor agrees to immediately turn over and to pay such proceeds directly to Lender.  All insurance proceeds may be applied, at its sole option and discretion, and in such a manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or fees necessarily paid or incurred by Lender in this connection), for the purpose of:  (1)  repairing or restoring the lost, damaged or destroyed Collateral; or  (2)  reducing the then outstanding balance of Grantor's Indebtedness.

Lender's receipt of such insurance proceeds and the application of such proceeds as provided herein shall not, however, affect the lien of this Agreement.  Nothing under this section shall be deemed to excuse Grantor from its obligations promptly to repair, replace or restore any lost or damaged Collateral, whether or not the same may be covered by insurance, and whether or not such proceeds of insurance are available, and whether such proceeds are sufficient in amount to complete such repair, replacement or restoration to the satisfaction of Lender.  Furthermore, unless otherwise confirmed by Lender in writing, the application or release of any insurance proceeds by Lender shall not be deemed to cure or waive any Event of Default under this Agreement.  Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.**  Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid.  If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender.  The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due.  Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor.  The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 00004                                                                                   Page 4

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Prior Encumbrances.** To the extent applicable, Grantor shall fully and timely perform any and all of Grantor's obligations under any prior Encumbrances affecting the Collateral. Without limiting the foregoing, Grantor shall not commit or permit to exist any breach of or default under any such prior Encumbrances. Grantor shall further promptly notify Lender in writing upon the occurrence of any event or circumstances that would, or that might, result in a breach of or default under any such prior Encumbrance. Grantor shall further not modify or extend any of the terms of any prior Encumbrance or any indebtedness secured thereby, or request or obtain any additional loans or other extensions of credit from any third party creditor or creditors whenever such additional loan advances or other extensions of credit may be directly or indirectly secured, whether by cross-collateralization or otherwise, by the Collateral, or any part or parts thereof, with possible preference and priority over Lender's security interest. Grantor additionally agrees to obtain, upon Lender's request, and in form and substance as may then be satisfactory to Lender, appropriate waivers and subordinations of any lessor's liens or privileges, vendor's liens or privileges, purchase money security interests, and any other Encumbrances that may affect the Collateral at any time.

**Future Encumbrances.** Grantor shall not, without the prior written consent of Lender, grant any Encumbrance that may affect the Collateral, or any part or parts thereof, nor shall Grantor permit or consent to any Encumbrance attaching to or being filed against any of the Collateral in favor of anyone other than Lender. Grantor shall further promptly pay when due all statements and charges of mechanics, materialmen, laborers and others incurred in connection with the alteration, improvement, repair and maintenance of the Collateral, or otherwise furnish appropriate security or bond, so that no future Encumbrance may ever attach to or be filed against any Collateral. In the event that the Collateral or any part or parts thereof is and/or may be located in and/or on leased premises, Grantor shall promptly pay the full amount of such rental or lease payments whenever the same shall be due so that no lessor's lien or privilege may ever attach to or affect any of the Collateral with possible preference and priority over the lien of this Agreement. In the event that any of the Collateral is purchased or otherwise acquired by Grantor on a credit or deferred payment sales basis, Grantor shall promptly pay the full amount of the purchase or acquisition price of such Collateral so that no vendor's lien or privilege, or purchase money security interest, may ever attach to or be asserted against any of the Collateral with possible preference and priority over the lien of this Agreement. Grantor additionally agrees to obtain, upon request by Lender, and in form and substance as may then be satisfactory to Lender, appropriate waivers and/or subordinations of any lessor's liens or privileges, vendor's liens or privileges, purchase money security interests, and any other Encumbrances that may affect the Collateral at any time.

As long as this Agreement remains in effect, Grantor will not permit any levy, attachment or restraint to be made affecting any of the Collateral, or permit any notice of lien to be filed with respect to the Collateral or any part or parts thereof, or permit any receiver, trustee, custodian or assignee for the benefit of creditors to be appointed to take possession of any of the Collateral. Notwithstanding the foregoing, Grantor may, at its sole expense, contest in good faith by appropriate proceedings the validity or amount of any levy, attachment, restraint or lien filed against or affecting the Collateral, or any part or parts thereof; provided that (1) Grantor notifies Lender in advance of Grantor's intent to contest such a levy, attachment, restraint or lien, and (2) Grantor provides additional security to Lender, in form and amount satisfactory to Lender.

**Notice of Encumbrances.** Grantor shall immediately notify Lender in writing upon the filing of any attachment, lien, judicial process, claim, or other Encumbrance. Grantor additionally agrees to notify Lender immediately in writing upon the occurrence of any default, or event that with the passage of time, failure to cure, or giving of notice, might result in a default under any of Grantor's obligations that may be secured by any presently existing or future Encumbrance, or that might result in an Encumbrance affecting the Collateral, or should any of the Collateral be seized or attached or levied upon, or threatened by seizure or attachment or levy, by any person other than Lender.

**Books and Records.** Grantor will keep proper books and records with regard to Grantor's business activities and the Collateral in which a security interest is granted hereunder, in accordance with GAAP, applied on a consistent basis throughout, which books and records shall at all reasonable times be open to inspection and copying by Lender or Lender's designated agents. Lender shall also have the right to inspect Grantor's books and records, and to discuss Grantor's affairs and finances with Grantor's officers and representatives, at such reasonable times as Lender may designate.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**Grantor's Name.** The Grantor's exact legal name is as set forth in the first paragraph of this Agreement.

**CONSIDERATION.** Grantor represents to Lender that the granting of the loan or other financial accommodations from Lender to Borrower will benefit, directly or indirectly, Grantor. Grantor acknowledges that Lender is relying upon this representation in extending the loan or other financial accommodations to Borrower.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**ADDITIONAL COVENANTS.** Grantor additionally agrees:

**No Settlement or Compromise.** Grantor will not, without the prior written consent of Lender, compromise, settle, adjust or extend payment under any of the Collateral.

**Books and Records.** Grantor will keep proper books and records with regard to Grantor's business activities and the Collateral, which

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

books and records shall at all times be open to inspection and copying by Lender or its designated agent. Lender shall also have the right to inspect Grantor's books and records, and to discuss Grantor's affairs and finances with Grantor at such reasonable times as Lender may designate.

**Aging of Accounts.** Grantor will periodically, at such intervals requested by Lender, furnish Lender with an aging of that part of the Collateral consisting of accounts, together with a certificate executed by an officer of Grantor, in such form and containing such representations and warranties regarding the accounts as Lender may reasonably require.

**Lock Box.** Grantor agrees that Lender may at any time require Grantor to institute procedures whereby the proceeds and/or payments of any accounts subject to this Agreement shall be paid by the debtors thereof under a lock box arrangement to Lender, or to Lender's agent, or to one or more financial institutions designated by Lender. Grantor further agrees that, if no Event of Default exists under this Agreement, any and all of such funds received under such a lock box arrangement shall, at Lender's sole election and discretion, either be: (a) paid and/or turned over to Grantor; (b) deposited into one or more accounts for the benefit of Grantor (which deposit accounts shall be subject to collateral assignment and pledge in favor of Lender as provided under this Agreement); (c) deposited into one or more accounts for the joint benefit of Grantor and Lender (which deposit accounts shall likewise be subject to assignment and pledge in favor of Lender as provided under this Agreement); (d) paid and/or turned over to Lender to be applied to the Indebtedness in such order and priority as Lender may determine within its sole discretion; or (e) any combination of the foregoing as Lender shall determine from time to time. Grantor further agrees that, should one or more Events of Default exist under this Agreement, any and all funds received under such a lock box arrangement shall be paid and/or turned over to Lender to be applied to principal, accrued interest, costs, expenses, attorneys' fees and other fees and charges under the Indebtedness, again in such order and priority as Lender may determine within its sole discretion.

**Notice to Obligors.** Upon request by Lender, Grantor immediately will notify individual obligors with regard to the Collateral, advising such obligors of the fact that Lender has been granted a security interest in their obligations. In the event that Grantor should fail to provide such notices for any reason upon Lender's request, Grantor agrees that Lender may forward appropriate notices to such obligors and debtors either in Lender's name or in Grantor's name.

**Additional Documents.** Grantor shall at any time, from time to time, one or more times, upon Lender's written request, execute and deliver such further documents and do any and all such further acts and things as Lender may reasonably request, within Lender's sole discretion, to effect the purposes of this Agreement.

**Verifications.** Grantor additionally agrees that Lender or Lender's agents may periodically contact individual debtors whose notes, instruments and chattel paper have been assigned and pledged under this Agreement in order to verify the amounts then owing under such obligations, to determine whether such debtors have any offsets or counterclaims against Grantor, and with respect to such other matters about which Lender may inquire.

**Notification of Lender.** Grantor will promptly deliver to Lender all written notices, and will promptly give Lender written notice of any other notices received by Grantor with respect to the Collateral and Rights, and Lender will promptly give like notice to Grantor of any such notices received by Lender or its nominee.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Agreement or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside,

## COMMERCIAL SECURITY AGREEMENT

Loan No: 00004
(Continued)
Page 6

discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Grantor and the failure by Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Wyoming Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**NO MARSHALLING.** Grantor hereby waives the right to (i) require Lender to marshal the Collateral or any other assets or Property of Grantor or (ii) require that Lender resort to any particular Property or any part thereof.

**CHOICE OF VENUE.** Any legal action with respect to the Indebtedness evidenced by this instrument or agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Grantor hereby accepts and unconditionally submits to the jurisdiction of such courts. Grantor hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**ADDITIONAL INDEBTEDNESS SECURED.** This Agreement shall secure the Indebtedness and any other amounts as set forth herein which Grantor or Borrower may owe to Lender, whether direct or indirect, now existing or hereafter arising, contingent or otherwise, and whether arising under this security instrument or otherwise, including without limitation (i) any advances made by Lender to pay drawings on any

## COMMERCIAL SECURITY AGREEMENT
**Loan No: 00004**                                   **(Continued)**                                        **Page 7**

irrevocable standby or commercial letter of credit issued on the account of Grantor or Borrower pursuant to an application therefor, (ii) any obligation under a Hedge Agreement. "Hedge Agreement" means an agreement between Borrower and Lender, now existing or hereafter entered into, which provides for an interest rate, credit, commodity, equity swap, cap floor, collar, spot or forward foreign exchange transaction, currency swap, cross-currency rate swap, currency option or any similar transaction or any combination of, or option with respect to, these or similar transactions, for the purpose of hedging Grantor's or Borrower's exposure to fluctuations in interest or exchange rates, loan, credit, exchange, security or currency valuations or currency prices pursuant to any ISDA Master agreement executed by Grantor or Borrower and all Schedules and Confirmations entered into in connection therewith or otherwise, (iii) all amounts expended to preserve or protect the Property, and (iv) all Lender's Expenditures as set forth herein, all of which shall be included in the Indebtedness, as defined herein.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Wyoming. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Florida.**

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Agreement is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business. Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Notice of Lender's Breach.** Grantor must notify Lender in writing of any breach of this Agreement or the Related Documents by Lender and any other claim, cause of action or offset against Lender within thirty (30) days after the occurrence of such breach or after the accrual of such claim, cause of action or offset. Grantor waives any claim, cause of action or offset for which notice is not given in accordance with this paragraph. Lender is entitled to rely on any failure to give such notice.

**Indemnification of Lender.** Grantor agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this, as well as by: (1) the ownership, use, operation, construction, renovation, demolition, preservation, management, repair, condition, or maintenance of any part of the Collateral; (2) the exercise of any of Grantor's rights collaterally assigned and pledged to Lender hereunder; (3) any failure of Grantor to perform any of its obligations hereunder; and/or (4) any failure of Grantor to comply with the environmental and ERISA obligations, representations and warranties set forth herein. The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder. Grantor's indemnity obligations under this section shall not in any way be affected by the presence or absence of covering insurance, or by the amount of such insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under any insurance policy or policies affecting the Collateral and/or Grantor's business activities. Should any claim, action or proceeding be made or brought against Lender by reason of any event as to which Grantor's indemnification obligations apply, then, upon Lender's demand, Grantor, at its sole cost and expense, shall defend such claim, action or proceeding in Grantor's name, if necessary, by the attorneys for Grantor's insurance carrier (if such claim, action or proceeding is covered by insurance), or otherwise by such attorneys as Lender shall approve. Lender may also engage its own attorneys at its reasonable discretion to defend Grantor and to assist in its defense and Grantor agrees to pay the fees and disbursements of such attorneys.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents

## COMMERCIAL SECURITY AGREEMENT
**Loan No: 00004**        **(Continued)**        **Page 8**

necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Agreement, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH GRANTOR AND LENDER, IF A PARTY HERETO, HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY GRANTOR AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH GRANTOR HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means INTERTRADE HOLDINGS INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Encumbrance.** The word "Encumbrance" means any and all presently existing or future mortgages, liens, privileges and other contractual and statutory security interests and rights, of every nature and kind, whether in admiralty, at law, or in equity, that now and/or in the future may affect the Collateral or any part or parts thereof.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means INTERTRADE HOLDINGS INC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, Grantor's successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Loan No: 00004**                                                                                  **Page 9**

Agreement.

**Lender.** The word "Lender" means TRUIST BANK, its successors and assigns.

**Note.** The word "Note" means the Note dated November 3, 2020 and executed by INTERTRADE HOLDINGS INC. in the principal amount of $1,200,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rights.** The word "Rights" means individually, collectively and interchangeably any and all of Grantor's additional rights granted and pledged to Lender as provided under this Agreement.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED NOVEMBER 3, 2020.**

**GRANTOR:**

INTERTRADE HOLDINGS INC.

By: _____
   PERRY BURK, CFO of INTERTRADE HOLDINGS INC.

By: _____
   GASPARE BONGIORNO, CEO of INTERTRADE
   HOLDINGS INC.

LaserPro, Ver. 20.2.20.003  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - WY/FL  C:\LPL-PROD\CFILPL\E40.FC  TR-185341  PR-118

# EXHIBIT F

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,500,000.00 | 05-05-2021 | 05-05-2022 | 00006 | | | 20655 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  INTERTRADE HOLDINGS INC.
2001 NW 109TH AVE
PEMBROKE PINES, FL  33026-2246

**Lender:**  TRUIST BANK
Broward -Bus Bnk BBT
3649 West Oakland Park Blvd  2nd floor
Lauderdale Lakes, FL  33311

**Principal Amount: $3,500,000.00**                                 **Date of Note:  May 5, 2021**

**PROMISE TO PAY.** INTERTRADE HOLDINGS INC. ("Borrower") promises to pay to TRUIST BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of **Three Million Five Hundred Thousand & 00/100 Dollars ($3,500,000.00)** or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 5, 2022. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 5, 2021, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to any unpaid collection costs, late and other charges and fees, accrued unpaid interest, and principal in such order as Lender may determine in its sole and absolute discretion. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the U.S. Prime Rate as published in The Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. If the Index is at any time determined to be less than zero percent (0%), then the Index shall be deemed to be zero percent (0%). Borrower understands that Lender may make loans based on other rates as well. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index (the "Margin"). If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this Note, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the effective rate of interest on this Note be less than 4.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**REAMORTIZATION.** In addition to other rights herein, Lender reserves the right in its sole discretion, from time to time, to (a) adjust any periodic fixed payment in such amounts and at such times to repay principal at the amortization period originally agreed upon and accruals of interest as the same becomes due, and (b) increase Borrower's payments to pay all accruals of interest for the period and accruals of unpaid interest from previous periods.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: TRUIST BANK, Broward -Bus Bnk BBT, 3649 West Oakland Park Blvd  2nd floor, Lauderdale Lakes, FL  33311.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 4.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection

with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender because of nonpayment due to nonsufficient funds.

**LENDER'S REMEDIES.** Upon an Event of Default, in addition to Lender's rights set forth above, Lender may, at its option and without notice to Borrower (i) cease making advances or disbursements; (ii) advance funds necessary to remedy any default or pay any lien filed against any of the Collateral; (iii) take possession of the Collateral or any part thereof; (iv) foreclose Lender's security interest and/or lien on any Collateral in accordance with applicable law; (v) make demand upon any or all Guarantors; and (vi) exercise any other right or remedy which Lender has under the Note or any related documents or which is otherwise available at law or in equity. Upon an Event of Default, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the Indebtedness has been paid in full or until the default has been satisfactorily cured which may be allowed at the sole discretion of the Lender, and such rate shall apply after judgment. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to make expenditures or to take action to perform an obligation of Borrower, or of any Grantor, shall not affect Lender's right to declare a default and exercise its rights and remedies.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Commercial Security Agreement dated May 5, 2021 made and executed between INTERTRADE HOLDINGS INC. and Lender on collateral described as: inventory, chattel paper, accounts, equipment and general intangibles.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor

**PROMISSORY NOTE**

Loan No: 00006

**(Continued)**

**Page 3**

ceases doing business or is insolvent;  (C)  any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or  (D)  Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**REQUIRED INFORMATION FOR A NEW LOAN.** To help the government fight the funding of terrorism and money laundering activities, federal law requires Lender to obtain, verify and record information that identifies each person or entity obtaining a loan including the Borrower's legal name, address, tax identification number, date of birth, driver's license, organizational documents or other identifying documents. Failure to provide the required information will result in a violation of the U.S. Patriot Act and will constitute a Default under this instrument or agreement. In addition, none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website.

**BUSINESS PURPOSE.** This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family or household purposes.

**USURY SAVINGS CLAUSE.** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect; and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note; and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower.  All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal.  Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only.  The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph.

**SUCCESSOR INTERESTS.**  The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**CHOICE OF VENUE.** Any legal action with respect to the Indebtedness evidenced by this instrument or agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Borrower hereby accepts  and unconditionally submits to the jurisdiction of such courts. Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH BORROWER AND LENDER, IF A PARTY HERETO, HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT.  EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**NOTICES.** Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Note.  Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address.  Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Note to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Note.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Note shall not affect the legality, validity of enforceability of any other provision of this Note.

**TIME IS OF THE ESSENCE.**  Time is of the essence in the performance of this Note.

**INTERPRETATION.** In all cases where there is more than one Borrower, then all words used in this Note in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Note or when this Note is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them.  The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them.  Wherever possible, the provisions of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.  If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Note.

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**GENERAL PROVISIONS.**  If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.  Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable).  Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower.  Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.  Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of

**PROMISSORY NOTE**
**(Continued)**

Loan No: 00006                                                                                      Page 4

dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

INTERTRADE HOLDINGS INC.

By: _____
    PERRY BURK, CFO of INTERTRADE HOLDINGS INC.

By: _____
    GASPARE BONGIORNO, CEO of INTERTRADE
    HOLDINGS INC.

ATTEST:

_____
Secretary or Assistant Secretary   Witness

(Corporate Seal)

---

**Florida Documentary Stamp Tax**

This Note constitutes a renewal and increase of Note ███████ 00004 in the original amount of $800,000.00. Documentary stamp tax in the amount of $2450.00 was paid to the Florida Department of Revenue, and additional documentary stamp tax in the amount of $0.00 has been or will be paid to the Florida Department of Revenue. Certificate of Registration No. 56-1074313-19-001.

LaserPro, Ver. 20.3.10.002  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - FL  C:\LPL-PROD\CFN.PL\D20.FC  TR-219512  PR-118

# EXHIBIT G



# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $3,500,000.00 | 05-05-2021 | 05-05-2022 | 00006 | | | 20655 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Grantor:**   INTERTRADE HOLDINGS INC.
2001 NW 109TH AVE
PEMBROKE PINES, FL  33026-2246

**Lender:**   TRUIST BANK
Broward -Bus Bnk BBT
3649 West Oakland Park Blvd  2nd floor
Lauderdale Lakes, FL  33311

---

THIS COMMERCIAL SECURITY AGREEMENT dated May 5, 2021, is made and executed between INTERTRADE HOLDINGS INC. ("Grantor") and TRUIST BANK ("Lender").

**GRANT OF SECURITY INTEREST.**  For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.**  The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); together with, all insurance policies and refunds, all good will, all records and data and embedded software, all equipment, inventory and software to utilize, create, maintain and process any records and data on electronic media, and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired and wherever located; and all accessions, additions, substitutions, replacements, products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing.**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.**  In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.**  In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.**  With respect to the Collateral, Grantor represents and promises to Lender that:

**Organization.**  Grantor is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Wyoming.  Grantor is duly authorized to transact business in the State of Florida and all other states in which Grantor is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Grantor is doing business.  Specifically, Grantor is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition.  Grantor has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage.  Grantor maintains an office at 2001 NW 109TH AVE, PEMBROKE PINES, FL  33026-2246.  Unless Grantor has designated otherwise in writing,

the principal office is the office at which Grantor keeps its books and records including its records concerning the Collateral. Grantor will notify Lender prior to any change in the location of Grantor's state of organization or any change in Grantor's name. Grantor shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Grantor and Grantor's business activities.

**Authorization.** Grantor's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Grantor, do not require the consent or approval of any other person, regulatory authority, or governmental body, and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Grantor's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Grantor or (2) any law, governmental regulation, court decree, or order applicable to Grantor or to Grantor's properties. Grantor has the power and authority to enter into the Note and the Related Documents and to grant collateral as security for the Indebtedness. Grantor has the further power and authority to own and to hold all of Grantor's assets and properties, and to carry on Grantor's business as presently conducted.

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice. Grantor represents and warrants to Lender that Grantor has provided Lender with Grantor's correct Employer Identification Number. Grantor promptly shall notify Lender should Grantor apply for or obtain a new Employer Identification Number.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located. Collateral consisting of inventory and other goods is not currently located and, as long as this Agreement remains in effect, will not be kept in a field or public warehouse or with a bailee, and shall be kept only at locations approved by Lender. Grantor will not permit any of the Collateral to be incorporated in or placed upon any real (immovable) property in such a way that it becomes immobilized under applicable Florida law. Upon Lender's request, Grantor shall cause any owners or mortgagees of the real property upon which any of of the Collateral may be located to furnish to Lender waivers with respect to any rights in or to the Collateral.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Florida, without Lender's prior written consent. If Grantor moves from Grantor's address shown above to another location within the same state, Grantor may move the Collateral to Grantor's new address, but only if Grantor gives Lender the new address in writing prior to Grantor's moving. In any event, Grantor agrees to keep Lender informed at all times of Grantor's current address. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Collateral Schedules and Locations.** As often as Lender shall require, and insofar as the Collateral consists of accounts and general intangibles, Grantor shall deliver to Lender schedules of such Collateral, including such information as Lender may require, including without limitation names and addresses of account debtors and agings of accounts and general intangibles. Insofar as the Collateral consists of inventory and equipment, Grantor shall deliver to Lender, as often as Lender shall require, such lists, descriptions, and designations of such

# COMMERCIAL SECURITY AGREEMENT
**Loan No: 00006**                                    (Continued)                                                **Page 3**

Collateral as Lender may require to identify the nature, extent, and location of such Collateral. Such information shall be submitted for Grantor and each of its subsidiaries or related companies.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Repairs and Maintenance.** Grantor shall keep and maintain and shall cause others to keep and maintain the Collateral in good order, repair and merchantable condition. Grantor shall further make and/or cause all necessary repairs to be made to the Collateral, including the repair and restoration of any portion of the Collateral that may be damaged, lost or destroyed. In addition, Grantor shall not, without the prior written consent of Lender, make or permit to be made any alterations to any of the Collateral that may reduce or impair the Collateral's use, value or marketability. Furthermore, Grantor shall not, nor shall Grantor permit others to abandon, commit waste, or destroy the Collateral or any part or parts thereof. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Required Insurance.** So long as this Agreement remains in effect, Grantor shall, at its sole cost, keep and/or cause others, at their expense, to keep the Collateral constantly insured against loss by fire, by hazards included within the term "extended coverage," and by such other hazards (including flood insurance where applicable) as may be required by Lender.

**Insurance Proceeds.** Lender shall have the right to directly receive the proceeds of all insurance protecting the Collateral. In the event that Grantor should receive any such insurance proceeds, Grantor agrees to immediately turn over and to pay such proceeds directly to Lender. All insurance proceeds may be applied, at its sole option and discretion, and in such a manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or fees necessarily paid or incurred by Lender in this connection), for the purpose of: (1) repairing or restoring the lost, damaged or destroyed Collateral; or (2) reducing the then outstanding balance of Grantor's Indebtedness.

Lender's receipt of such insurance proceeds and the application of such proceeds as provided herein shall not, however, affect the lien of this Agreement. Nothing under this section shall be deemed to excuse Grantor from its obligations promptly to repair, replace or restore any lost or damaged Collateral, whether or not the same may be covered by insurance, and whether or not such proceeds of insurance are available, and whether such proceeds are sufficient in amount to complete such repair, replacement or restoration to the satisfaction of Lender. Furthermore, unless otherwise confirmed by Lender in writing, the application or release of any insurance proceeds by Lender shall not be deemed to cure or waive any Event of Default under this Agreement. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before

# COMMERCIAL SECURITY AGREEMENT
**Loan No: 00006**                                       **(Continued)**                                            **Page 4**

the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Prior Encumbrances.** To the extent applicable, Grantor shall fully and timely perform any and all of Grantor's obligations under any prior Encumbrances affecting the Collateral. Without limiting the foregoing, Grantor shall not commit or permit to exist any breach of or default under any such prior Encumbrances. Grantor shall further promptly notify Lender in writing upon the occurrence of any event or circumstances that would, or that might, result in a breach of or default under any such prior Encumbrance. Grantor shall further not modify or extend any of the terms of any prior Encumbrance or any indebtedness secured thereby, or request or obtain any additional loans or other extensions of credit from any third party creditor or creditors whenever such additional loan advances or other extensions of credit may be directly or indirectly secured, whether by cross-collateralization or otherwise, by the Collateral, or any part or parts thereof, with possible preference and priority over Lender's security interest. Grantor additionally agrees to obtain, upon Lender's request, and in form and substance as may then be satisfactory to Lender, appropriate waivers and subordinations of any lessor's liens or privileges, vendor's liens or privileges, purchase money security interests, and any other Encumbrances that may affect the Collateral at any time.

**Future Encumbrances.** Grantor shall not, without the prior written consent of Lender, grant any Encumbrance that may affect the Collateral, or any part or parts thereof, nor shall Grantor permit or consent to any Encumbrance attaching to or being filed against any of the Collateral in favor of anyone other than Lender. Grantor shall further promptly pay when due all statements and charges of mechanics, materialmen, laborers and others incurred in connection with the alteration, improvement, repair and maintenance of the Collateral, or otherwise furnish appropriate security or bond, so that no future Encumbrance may ever attach to or be filed against any Collateral. In the event that the Collateral or any part or parts thereof is and/or may be located in and/or on leased premises, Grantor shall promptly pay the full amount of such rental or lease payments whenever the same shall be due so that no lessor's lien or privilege may ever attach to or affect any of the Collateral with possible preference and priority over the lien of this Agreement. In the event that any of the Collateral is purchased or otherwise acquired by Grantor on a credit or deferred payment sales basis, Grantor shall promptly pay the full amount of the purchase or acquisition price of such Collateral so that no vendor's lien or privilege, or purchase money security interest, may ever attach to or be asserted against any of the Collateral with possible preference and priority over the lien of this Agreement. Grantor additionally agrees to obtain, upon request by Lender, and in form and substance as may then be satisfactory to Lender, appropriate waivers and/or subordinations of any lessor's liens or privileges, vendor's liens or privileges, purchase money security interests, and any other Encumbrances that may affect the Collateral at any time.

As long as this Agreement remains in effect, Grantor will not permit any levy, attachment or restraint to be made affecting any of the Collateral, or permit any notice of lien to be filed with respect to the Collateral or any part or parts thereof, or permit any receiver, trustee, custodian or assignee for the benefit of creditors to be appointed to take possession of any of the Collateral. Notwithstanding the foregoing, Grantor may, at its sole expense, contest in good faith by appropriate proceedings the validity or amount of any levy, attachment, restraint or lien filed against or affecting the Collateral, or any part or parts thereof; provided that (1) Grantor notifies Lender in advance of Grantor's intent to contest such a levy, attachment, restraint or lien, and (2) Grantor provides additional security to Lender, in form and amount satisfactory to Lender.

**Notice of Encumbrances.** Grantor shall immediately notify Lender in writing upon the filing of any attachment, lien, judicial process, claim, or other Encumbrance. Grantor additionally agrees to notify Lender immediately in writing upon the occurrence of any default, or event that with the passage of time, failure to cure, or giving of notice, might result in a default under any of Grantor's obligations that may be secured by any presently existing or future Encumbrance, or that might result in an Encumbrance affecting the Collateral, or should any of the Collateral be seized or attached or levied upon, or threatened by seizure or attachment or levy, by any person other than Lender.

**Books and Records.** Grantor will keep proper books and records with regard to Grantor's business activities and the Collateral in which a security interest is granted hereunder, in accordance with GAAP, applied on a consistent basis throughout, which books and records shall at all reasonable times be open to inspection and copying by Lender or Lender's designated agents. Lender shall also have the right to inspect Grantor's books and records, and to discuss Grantor's affairs and finances with Grantor's officers and representatives, at such reasonable times as Lender may designate.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**Grantor's Name.** The Grantor's exact legal name is as set forth in the first paragraph of this Agreement.

**CONSIDERATION.** Grantor represents to Lender that the granting of the loan or other financial accommodations from Lender to Borrower will benefit, directly or indirectly, Grantor. Grantor acknowledges that Lender is relying upon this representation in extending the loan or other financial accommodations to Borrower.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the

Indebtedness.

**ADDITIONAL COVENANTS.** Grantor additionally agrees:

**No Settlement or Compromise.** Grantor will not, without the prior written consent of Lender, compromise, settle, adjust or extend payment under any of the Collateral.

**Books and Records.** Grantor will keep proper books and records with regard to Grantor's business activities and the Collateral, which books and records shall at all times be open to inspection and copying by Lender or its designated agent. Lender shall also have the right to inspect Grantor's books and records, and to discuss Grantor's affairs and finances with Grantor at such reasonable times as Lender may designate.

**Aging of Accounts.** Grantor will periodically, at such intervals requested by Lender, furnish Lender with an aging of that part of the Collateral consisting of accounts, together with a certificate executed by an officer of Grantor, in such form and containing such representations and warranties regarding the accounts as Lender may reasonably require.

**Lock Box.** Grantor agrees that Lender may at any time require Grantor to institute procedures whereby the proceeds and/or payments of any accounts subject to this Agreement shall be paid by the debtors thereof under a lock box arrangement to Lender, or to Lender's agent, or to one or more financial institutions designated by Lender. Grantor further agrees that, if no Event of Default exists under this Agreement, any and all of such funds received under such a lock box arrangement shall, at Lender's sole election and discretion, either be: (a) paid and/or turned over to Grantor; (b) deposited into one or more accounts for the benefit of Grantor (which deposit accounts shall be subject to collateral assignment and pledge in favor of Lender as provided under this Agreement); (c) deposited into one or more accounts for the joint benefit of Grantor and Lender (which deposit accounts shall likewise be subject to assignment and pledge in favor of Lender as provided under this Agreement); (d) paid and/or turned over to Lender to be applied to the Indebtedness in such order and priority as Lender may determine within its sole discretion; or (e) any combination of the foregoing as Lender shall determine from time to time. Grantor further agrees that, should one or more Events of Default exist under this Agreement, any and all funds received under such a lock box arrangement shall be paid and/or turned over to Lender to be applied to principal, accrued interest, costs, expenses, attorneys' fees and other fees and charges under the Indebtedness, again in such order and priority as Lender may determine within its sole discretion.

**Notice to Obligors.** Upon request by Lender, Grantor immediately will notify individual obligors with regard to the Collateral, advising such obligors of the fact that Lender has been granted a security interest in their obligations. In the event that Grantor should fail to provide such notices for any reason upon Lender's request, Grantor agrees that Lender may forward appropriate notices to such obligors and debtors either in Lender's name or in Grantor's name.

**Additional Documents.** Grantor shall at any time, from time to time, one or more times, upon Lender's written request, execute and deliver such further documents and do any and all such further acts and things as Lender may reasonably request, within Lender's sole discretion, to effect the purposes of this Agreement.

**Verifications.** Grantor additionally agrees that Lender or Lender's agents may periodically contact individual debtors whose notes, instruments and chattel paper have been assigned and pledged under this Agreement in order to verify the amounts then owing under such obligations, to determine whether such debtors have any offsets or counterclaims against Grantor, and with respect to such other matters about which Lender may inquire.

**Notification of Lender.** Grantor will promptly deliver to Lender all written notices, and will promptly give Lender written notice of any other notices received by Grantor with respect to the Collateral and Rights, and Lender will promptly give like notice to Grantor of any such notices received by Lender or its nominee.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Agreement or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Grantor and the failure by Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Florida Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** In the event of a suit being instituted to foreclose this Agreement, Lender shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of any or all of the Collateral, and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source. The parties agree that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases. Such appointment shall be made by the court as a matter of strict right to Lender and without notice to Grantor, and without reference to the adequacy or inadequacy of the value of the Collateral, or to Grantor's solvency or any other party defendant to such suit. Grantor hereby specifically waives the right to object to the appointment of a receiver and agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender, and consents to the appointment of any officer or employee of Lender as receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this

Case 26-15399-CAP    Doc 18    Filed 05/04/26    Page 53 of 108

## COMMERCIAL SECURITY AGREEMENT

**Loan No: 00006**    (Continued)    **Page 7**

Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**NO MARSHALLING.** Grantor hereby waives the right to (i) require Lender to marshal the Collateral or any other assets or Property of Grantor or (ii) require that Lender resort to any particular Property or any part thereof.

**CHOICE OF VENUE.** Any legal action with respect to the Indebtedness evidenced by this instrument or agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Grantor hereby accepts and unconditionally submits to the jurisdiction of such courts. Grantor hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**ADDITIONAL INDEBTEDNESS SECURED.** This Agreement shall secure the Indebtedness and any other amounts as set forth herein which Grantor or Borrower may owe to Lender, whether direct or indirect, now existing or hereafter arising, contingent or otherwise, and whether arising under this security instrument or otherwise, including without limitation (i) any advances made by Lender to pay drawings on any irrevocable standby or commercial letter of credit issued on the account of Grantor or Borrower pursuant to an application therefor, (ii) any obligation under a Hedge Agreement. "Hedge Agreement" means an agreement between Borrower and Lender, now existing or hereafter entered into, which provides for an interest rate, credit, commodity, equity swap, cap floor, collar, spot or forward foreign exchange transaction, currency swap, cross-currency rate swap, currency option or any similar transaction or any combination of, or option with respect to, these or similar transactions, for the purpose of hedging Grantor's or Borrower's exposure to fluctuations in interest or exchange rates, loan, credit, exchange, security or currency valuations or currency prices pursuant to any ISDA Master agreement executed by Grantor or Borrower and all Schedules and Confirmations entered into in connection therewith or otherwise, (iii) all amounts expended to preserve or protect the Property, and (iv) all Lender's Expenditures as set forth herein, all of which shall be included in the Indebtedness, as defined herein.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.**

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Agreement is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business. Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Notice of Lender's Breach.** Grantor must notify Lender in writing of any breach of this Agreement or the Related Documents by Lender and any other claim, cause of action or offset against Lender within thirty (30) days after the occurrence of such breach or after the accrual of such claim, cause of action or offset. Grantor waives any claim, cause of action or offset for which notice is not given in accordance with this paragraph. Lender is entitled to rely on any failure to give such notice.

**Indemnification of Lender.** Grantor agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's reasonable attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this, as well as by: (1) the ownership, use, operation, construction, renovation, demolition, preservation, management, repair, condition, or maintenance of any part of the Collateral; (2) the exercise of any of Grantor's rights collaterally assigned and pledged to Lender hereunder; (3) any failure of Grantor to perform any of its obligations hereunder; and/or (4) any failure of Grantor to comply with the environmental and ERISA obligations, representations and warranties set forth herein. The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder. Grantor's indemnity obligations under this section shall not in any way be affected by the presence or absence of covering insurance, or by the amount of such insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under any insurance policy or policies affecting the Collateral and/or Grantor's business activities. Should any claim, action or proceeding be made or brought against Lender by reason of any event as to which Grantor's indemnification obligations apply, then, upon Lender's demand, Grantor, at its sole cost and expense, shall defend such claim, action or proceeding in Grantor's name, if necessary, by the attorneys for Grantor's insurance carrier (if such claim, action or proceeding is covered by insurance), or otherwise by such attorneys as Lender shall approve. Lender may also engage its own attorneys at its reasonable discretion to defend Grantor and to assist in its defense and Grantor agrees to pay the fees and disbursements of such attorneys.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Agreement, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH GRANTOR AND LENDER, IF A PARTY HERETO, HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY GRANTOR AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH GRANTOR HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means INTERTRADE HOLDINGS INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Encumbrance.** The word "Encumbrance" means any and all presently existing or future mortgages, liens, privileges and other contractual and statutory security interests and rights, of every nature and kind, whether in admiralty, at law, or in equity, that now and/or in the future may affect the Collateral or any part or parts thereof.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means INTERTRADE HOLDINGS INC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, Grantor's successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical,

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

          **Page 9**

chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means TRUIST BANK, its successors and assigns.

**Note.** The word "Note" means the Note dated May 5, 2021 and executed by INTERTRADE HOLDINGS INC. in the principal amount of $3,500,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rights.** The word "Rights" means individually, collectively and interchangeably any and all of Grantor's additional rights granted and pledged to Lender as provided under this Agreement.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MAY 5, 2021.**

**GRANTOR:**

**INTERTRADE HOLDINGS INC.**

By: _____
     PERRY BURK, CFO of INTERTRADE HOLDINGS INC.

ATTEST: _____

Secretary or Assistant Secretary    Witness

By: _____
     GASPARE BONGIORNO, CEO of INTERTRADE HOLDINGS INC.

( Corporate Seal )

LaserPro, Ver. 20.3.10.002 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - FL C:\LPL-PROD\CFI\LPL\E40.FC TR-219512 PR-118

# EXHIBIT H

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,500,000.00 | 04-08-2022 | 04-08-2023 | 00008 | | | 72324 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** INTERTRADE HOLDINGS INC.
2001 NW 109TH AVE
PEMBROKE PINES, FL  33026-2246

**Lender:** TRUIST BANK
Broward - Commercial Loans BBT
515 E Las Olas Blvd  FL7
Fort Lauderdale, FL  33301-4220

---

## Principal Amount:  $3,500,000.00                                        Date of Note:  April 8, 2022

**PROMISE TO PAY.** INTERTRADE HOLDINGS INC. ("Borrower") promises to pay to TRUIST BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Five Hundred Thousand & 00/100 Dollars ($3,500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 8, 2023. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 5, 2022, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to any unpaid collection costs, late and other charges and fees, accrued unpaid interest, and principal in such order as Lender may determine in its sole and absolute discretion. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the rate announced by Lender from time to time as the Lender's Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index (the "Margin"). If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this Note, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the effective rate of interest on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**REAMORTIZATION.** In addition to other rights herein, Lender reserves the right in its sole discretion, from time to time, to (a) adjust any periodic fixed payment in such amounts and at such times to repay principal at the amortization period originally agreed upon and accruals of interest as the same becomes due, and (b) increase Borrower's payments to pay all accruals of interest for the period and accruals of unpaid interest from previous periods.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: TRUIST BANK, Broward - Commercial Loans BBT, 515 E Las Olas Blvd  FL7, Fort Lauderdale, FL  33301-4220.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 4.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false

 ~ 00008

## PROMISSORY NOTE
## (Continued)

**Loan No: 00008**                                                                                      **Page 2**

or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change In Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender unpaid.

**LENDER'S REMEDIES.** Upon an Event of Default, in addition to Lender's rights set forth above, Lender may, at its option and without notice to Borrower (i) cease making advances or disbursements including during any cure period; (ii) advance funds necessary to remedy any default or pay any lien filed against any of the collateral; (iii) take possession of the collateral or any part thereof; (iv) foreclose Lender's security interest and/or lien on any collateral in accordance with applicable law; (v) make demand upon any or all guarantors; and (vi) exercise any other right or remedy which Lender has under the Note or any related documents or which is otherwise available at law or in equity. Upon an Event of Default, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the default has been satisfactorily cured or until the Indebtedness has been paid in full, and such rate shall apply after judgment. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to make expenditures or to take action to perform an obligation of Borrower, or of any grantor, shall not affect Lender's right to declare a default and exercise its rights and remedies.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Commercial Security Agreement dated April 8, 2022 made and executed between INTERTRADE HOLDINGS INC. and Lender on collateral described as: inventory, chattel paper, accounts, equipment and general intangibles.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**FINANCIAL INFORMATION.** Borrower represents and covenants with Lender that: (1) all financial information, including but not limited to any and all financial statements and tax returns, previously furnished or which is now being furnished by or on behalf of Borrower to Lender for the



## PROMISSORY NOTE
### (Continued)

**Loan No: 00008**                                                                                           **Page 3**

purposes of or in connection with the Note or any related transaction is, and all such information furnished by or on behalf of Borrower to Lender in the future will be, (a) accurate, true and correct in all material respects on the date such information is dated or certified; (b) complete in all material respects and no material fact or information has been omitted which, by such omission, could cause the information to be misleading; and (c) a fair and accurate presentation of the financial condition and operations of the Borrower; (2) along with the submission of any financial information, Borrower will notify Lender if there has been a material change in the financial condition of the Borrower since the date of the financials being submitted; (3) Borrower shall also furnish such information as Lender shall request related to the Collateral and the financial condition of any obligor all of which shall be complete, true and correct in all material respects.

**FINANCIAL STATEMENT CERTIFICATION AND COMPLIANCE CERTIFICATE.** Upon the request of Lender, concurrently with the delivery of financial statements, Borrower shall deliver to Lender a certificate in a form satisfactory to Lender certifying (i) the financial statements are complete, true and accurate in all material respects; (ii) Borrower is in compliance with all covenants in the Note and any related documents; (iii) stating whether there exists an event of default or any circumstances which, with notice or the passage of time or both, would constitute an event of default; and (iv) if there exists an event of default or any such circumstance, specifying the details thereof and the action which Borrower has taken or proposes to take with respect thereto (it being understood that any action by Borrower to cure any default shall not serve as a cure of said default under the terms of the Note or any related document nor prevent Lender from exercising any right with respect to said default).

**AUTHORIZATION OF ADVANCES.** In addition to any advances made in accordance with the terms of the Note or any other related document, advances may be made in accordance with the terms and conditions of any other agreement between Borrower and Lender, and Borrower agrees to be liable for all sums advanced in accordance with any instructions provided by Borrower or its representatives pursuant to such agreements and products or services offered thereunder. All advances are subject to availability and Borrower shall comply with any conditions or requirements for advances under the loan evidenced by the Note.

**PATRIOT ACT NOTICE AND OTHER INFORMATION.** Lender hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act (Title III of Pub. L. 107-56 signed into law October 26, 2001), Lender may be required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Act. Further, Lender hereby notifies Borrower that, pursuant to the requirements of the Beneficial Ownership Rule (31 C.F.R. §1010.230), Lender may be required to obtain, verify and record information contained in a beneficial ownership certification executed by Borrower, which will identify the key individuals who have beneficial ownership or control of Borrower. Borrower covenants and agrees to promptly furnish to Lender such information and certifications with respect thereto as Lender shall request from time to time to obtain, verify and record information that identifies each Person obtaining a loan or executing documents in connection therewith.

**BUSINESS PURPOSE.** This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family or household purposes.

**USURY SAVINGS CLAUSE.** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect; and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note; and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower. All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal. Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only. The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph.

**CHOICE OF VENUE.** Any legal action with respect to the indebtedness evidenced by the Note may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Borrower hereby accepts and unconditionally submits to the jurisdiction of such courts. Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**NOTICES.** Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Note. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Note to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Note. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Note shall not affect the legality, validity of enforceability of any other provision of this Note.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Note.

**INTERPRETATION.** In all cases where there is more than one Borrower, then all words used in this Note in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Note or when this Note is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them. The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them; provided however, Borrower is not permitted to assign its

# PROMISSORY NOTE
## (Continued)

**Loan No: 00008**                                                                        **Page 4**

duties or obligations hereunder. All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons referred to may require. Wherever possible, the provisions of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Note.

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**RENEWAL.** In addition to any other rights set forth herein, Lender, in its sole discretion, may, but shall not be obligated to, renew or extend the final maturity date under the Note by written notice from Lender to Borrower. Any such extension or renewal may be conditioned upon timely payment of a fee by Borrower to the extent set forth in the notice. Any such extension or renewal shall not operate as a waiver of any rights, duties, defaults or defaults under this Note or any related document.

**KYC; BENEFICIAL OWNERSHIP INFORMATION.** Upon request of Lender, Borrower shall, and shall cause any guarantor or other parties as required by Lender to, provide Lender (i) documentation and other information so requested in connection with applicable "know your customer" and anti-money-laundering rules and regulations, including the PATRIOT Act, and (ii) beneficial ownership certificates or other information as Lender shall require from any "legal entity customer" under beneficial ownership regulations, including 31 C.F.R. § 1010.230, the Beneficial Ownership Regulation. Until the Note is paid in full, Borrower represents and covenants that none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website.

**SANCTIONS CONCERNS AND ANTI-CORRUPTION LAWS.** While the loan evidenced by the Note remains outstanding, (a) Borrower and any guarantor, each of their subsidiaries or affiliates, and their respective directors, officers, employees, or agents will not (i) be or become a Sanctioned Person, (ii) allow any of their assets to be located in a Sanctioned Country, or (iii) derive any of their operating income from investments in, or transactions with, one or more Sanctioned Person or Sanctioned Country; and (b) no part of the proceeds of the loan evidenced by the Note will be used directly or indirectly (i) to fund or finance any operations, investments or activities in or make any payments to a (x) person that is, or is owned or controlled by, persons that are the subject of any Sanctions (as defined below) (each a "Sanctioned Person") or (y) country or territory that is the subject of Sanctions, or is owned or controlled by one or more Sanctioned Person (a "Sanctioned Country"), or in any other manner that would result in a violation of any Sanctions by any Person, or (ii) in furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any Person in violation of any laws, rules or regulations of any jurisdiction concerning or relating to bribery or corruption. Borrower further represents that Borrower and any guarantor, each of their subsidiaries or affiliates have conducted their business in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977 and other applicable anti-corruption legislation in other jurisdictions, and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws. "Sanctions" means any trade, economic or financial sanctions administered or enforced by the Office of Foreign Assets Control, the U.S. Department of State, the United Nations Security Council, the EU, Her Majesty's Treasury or other relevant sanctions authority.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**INTERTRADE HOLDINGS INC**

By: _____
    **PERRY BURK, CEO of INTERTRADE HOLDINGS INC**

---

### Florida Documentary Stamp Tax

**This Note is a refinance of Note # ▓▓▓▓▓▓▓ / 00006 executed by Borrower in the amount of $3,500,000.00 and documentary stamp tax in the amount of $2,450.00 and intangible taxes were paid to the Clerk of Court of Broward County, Florida. No additional documentary stamp taxes are required.**

 -00008

# EXHIBIT I

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,500,000.00 | 04-08-2022 | 04-08-2023 | 00008 | | | 72324 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** INTERTRADE HOLDINGS INC.
2001 NW 109TH AVE
PEMBROKE PINES, FL  33026-2246

**Lender:** TRUIST BANK
Broward - Commercial Loans BBT
515 E Las Olas Blvd  FL7
Fort Lauderdale, FL  33301-4220

THIS COMMERCIAL SECURITY AGREEMENT dated April 8, 2022, is made and executed between INTERTRADE HOLDINGS INC. ("Grantor") and TRUIST BANK ("Lender").

**GRANT OF SECURITY INTEREST.**  For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.**  The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under the Note and this Agreement:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); together with, all insurance policies and refunds, all good will, all records and data and embedded software,  all equipment, inventory and software to utilize, create, maintain and process any records and data on electronic media, and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired and wherever located; and all accessions, additions, substitutions, replacements, products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.**  In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.**  In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.**  With respect to the Collateral, Grantor represents and promises to Lender that:

**Organization.**  Grantor is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Florida.  Grantor is duly authorized to transact business in all other states in which Grantor is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Grantor is doing business.  Specifically, Grantor is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition.  Grantor has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage.  Grantor maintains an office at 2001 NW 109TH AVE, PEMBROKE PINES, FL  33026-2246.  Unless Grantor has designated otherwise in writing, the principal office is the

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

office at which Grantor keeps its books and records including its records concerning the Collateral. Grantor will notify Lender prior to any change in the location of Grantor's state of organization or any change in Grantor's name. Grantor shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Grantor and Grantor's business activities.

**Authorization.** Grantor's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Grantor, do not require the consent or approval of any other person, regulatory authority, or governmental body, and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Grantor's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Grantor or (2) any law, governmental regulation, court decree, or order applicable to Grantor or to Grantor's properties. Grantor has the power and authority to enter into the Note and the Related Documents and to grant collateral as security for the Indebtedness. Grantor has the further power and authority to own and to hold all of Grantor's assets and properties, and to carry on Grantor's business as presently conducted.

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice. Grantor represents and warrants to Lender that Grantor has provided Lender with Grantor's correct Employer Identification Number. Grantor promptly shall notify Lender should Grantor apply for or obtain a new Employer Identification Number.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located. Collateral consisting of inventory and other goods is not currently located and, as long as this Agreement remains in effect, will not be kept in a field or public warehouse or with a bailee, and shall be kept only at locations approved by Lender. Grantor will not permit any of the Collateral to be incorporated in or placed upon any real (immovable) property in such a way that it becomes immobilized under applicable Wyoming law. Upon Lender's request, Grantor shall cause any owners or mortgagees of the real property upon which any of of the Collateral may be located to furnish to Lender waivers with respect to any rights in or to the Collateral.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Wyoming, without Lender's prior written consent. If Grantor moves from Grantor's address shown above to another location within the same state, Grantor may move the Collateral to Grantor's new address, but only if Grantor gives Lender the new address in writing prior to Grantor's moving. In any event, Grantor agrees to keep Lender informed at all times of Grantor's current address. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Collateral Schedules and Locations.** As often as Lender shall require, and insofar as the Collateral consists of accounts and general intangibles, Grantor shall deliver to Lender schedules of such Collateral, including such information as Lender may require, including without limitation names and addresses of account debtors and agings of accounts and general intangibles. Insofar as the Collateral consists of inventory and equipment, Grantor shall deliver to Lender, as often as Lender shall require, such lists, descriptions, and designations of such Collateral as Lender may require to identify the nature, extent, and location of such Collateral. Such information shall be submitted for

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

**Loan No: 00008**                                                                                    **Page 3**

Grantor and each of its subsidiaries or related companies.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Repairs and Maintenance.** Grantor shall keep and maintain and shall cause others to keep and maintain the Collateral in good order, repair and merchantable condition. Grantor shall further make and/or cause all necessary repairs to be made to the Collateral, including the repair and restoration of any portion of the Collateral that may be damaged, lost or destroyed. In addition, Grantor shall not, without the prior written consent of Lender, make or permit to be made any alterations to any of the Collateral that may reduce or impair the Collateral's use, value or marketability. Furthermore, Grantor shall not, nor shall Grantor permit others to abandon, commit waste, or destroy the Collateral or any part or parts thereof. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Required Insurance.** So long as this Agreement remains in effect, Grantor shall, at its sole cost, keep and/or cause others, at their expense, to keep the Collateral constantly insured against loss by fire, by hazards included within the term "extended coverage," and by such other hazards (including flood insurance where applicable) as may be required by Lender.

**Insurance Proceeds.** Lender shall have the right to directly receive the proceeds of all insurance protecting the Collateral. In the event that Grantor should receive any such insurance proceeds, Grantor agrees to immediately turn over and to pay such proceeds directly to Lender. All insurance proceeds may be applied, at its sole option and discretion, and in such a manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or fees necessarily paid or incurred by Lender in this connection), for the purpose of: (1) repairing or restoring the lost, damaged or destroyed Collateral; or (2) reducing the then outstanding balance of Grantor's Indebtedness.

Lender's receipt of such insurance proceeds and the application of such proceeds as provided herein shall not, however, affect the lien of this Agreement. Nothing under this section shall be deemed to excuse Grantor from its obligations promptly to repair, replace or restore any lost or damaged Collateral, whether or not the same may be covered by insurance, and whether or not such proceeds of insurance are available, and whether such proceeds are sufficient in amount to complete such repair, replacement or restoration to the satisfaction of Lender. Furthermore, unless otherwise confirmed by Lender in writing, the application or release of any insurance proceeds by Lender shall not be deemed to cure or waive any Event of Default under this Agreement. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve



## COMMERCIAL SECURITY AGREEMENT
### (Continued)

funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Prior Encumbrances.** To the extent applicable, Grantor shall fully and timely perform any and all of Grantor's obligations under any prior Encumbrances affecting the Collateral. Without limiting the foregoing, Grantor shall not commit or permit to exist any breach of or default under any such prior Encumbrances. Grantor shall further promptly notify Lender in writing upon the occurrence of any event or circumstances that would, or that might, result in a breach of or default under any such prior Encumbrance. Grantor shall further not modify or extend any of the terms of any prior Encumbrance or any indebtedness secured thereby, or request or obtain any additional loans or other extensions of credit from any third party creditor or creditors whenever such additional loan advances or other extensions of credit may be directly or indirectly secured, whether by cross-collateralization or otherwise, by the Collateral, or any part or parts thereof, with possible preference and priority over Lender's security interest. Grantor additionally agrees to obtain, upon Lender's request, and in form and substance as may then be satisfactory to Lender, appropriate waivers and subordinations of any lessor's liens or privileges, vendor's liens or privileges, purchase money security interests, and any other Encumbrances that may affect the Collateral at any time.

**Future Encumbrances.** Grantor shall not, without the prior written consent of Lender, grant any Encumbrance that may affect the Collateral, or any part or parts thereof, nor shall Grantor permit or consent to any Encumbrance attaching to or being filed against any of the Collateral in favor of anyone other than Lender. Grantor shall further promptly pay when due all statements and charges of mechanics, materialmen, laborers and others incurred in connection with the alteration, improvement, repair and maintenance of the Collateral, or otherwise furnish appropriate security or bond, so that no future Encumbrance may ever attach to or be filed against any Collateral. In the event that the Collateral or any part or parts thereof is and/or may be located in and/or on leased premises, Grantor shall promptly pay the full amount of such rental or lease payments whenever the same shall be due so that no lessor's lien or privilege may ever attach to or affect any of the Collateral with possible preference and priority over the lien of this Agreement. In the event that any of the Collateral is purchased or otherwise acquired by Grantor on a credit or deferred payment sales basis, Grantor shall promptly pay the full amount of the purchase or acquisition price of such Collateral so that no vendor's lien or privilege, or purchase money security interest, may ever attach to or be asserted against any of the Collateral with possible preference and priority over the lien of this Agreement. Grantor additionally agrees to obtain, upon request by Lender, and in form and substance as may then be satisfactory to Lender, appropriate waivers and/or subordinations of any lessor's liens or privileges, vendor's liens or privileges, purchase money security interests, and any other Encumbrances that may affect the Collateral at any time.

As long as this Agreement remains in effect, Grantor will not permit any levy, attachment or restraint to be made affecting any of the Collateral, or permit any notice of lien to be filed with respect to the Collateral or any part or parts thereof, or permit any receiver, trustee, custodian or assignee for the benefit of creditors to be appointed to take possession of any of the Collateral. Notwithstanding the foregoing, Grantor may, at its sole expense, contest in good faith by appropriate proceedings the validity or amount of any levy, attachment, restraint or lien filed against or affecting the Collateral, or any part or parts thereof; provided that (1) Grantor notifies Lender in advance of Grantor's intent to contest such a levy, attachment, restraint or lien, and (2) Grantor provides additional security to Lender, in form and amount satisfactory to Lender.

**Notice of Encumbrances.** Grantor shall immediately notify Lender in writing upon the filing of any attachment, lien, judicial process, claim, or other Encumbrance. Grantor additionally agrees to notify Lender immediately in writing upon the occurrence of any default, or event that with the passage of time, failure to cure, or giving of notice, might result in a default under any of Grantor's obligations that may be secured by any presently existing or future Encumbrance, or that might result in an Encumbrance affecting the Collateral, or should any of the Collateral be seized or attached or levied upon, or threatened by seizure or attachment or levy, by any person other than Lender.

**Books and Records.** Grantor will keep proper books and records with regard to Grantor's business activities and the Collateral in which a security interest is granted hereunder, in accordance with GAAP, applied on a consistent basis throughout, which books and records shall at all reasonable times be open to inspection and copying by Lender or Lender's designated agents. Lender shall also have the right to inspect Grantor's books and records, and to discuss Grantor's affairs and finances with Grantor's officers and representatives, at such reasonable times as Lender may designate.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**Grantor's Name.** The Grantor's exact legal name is as set forth in the first paragraph of this Agreement.

**CONSIDERATION.** Grantor represents to Lender that the granting of the loan or other financial accommodations from Lender to Borrower will benefit, directly or indirectly, Grantor. Grantor acknowledges that Lender is relying upon this representation in extending the loan or other financial accommodations to Borrower.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

**ADDITIONAL COVENANTS.** Grantor additionally agrees:

**No Settlement or Compromise.** Grantor will not, without the prior written consent of Lender, compromise, settle, adjust or extend payment under any of the Collateral.

**Books and Records.** Grantor will keep proper books and records with regard to Grantor's business activities and the Collateral, which books and records shall at all times be open to inspection and copying by Lender or its designated agent. Lender shall also have the right to inspect Grantor's books and records, and to discuss Grantor's affairs and finances with Grantor at such reasonable times as Lender may designate.

**Aging of Accounts.** Grantor will periodically, at such intervals requested by Lender, furnish Lender with an aging of that part of the Collateral consisting of accounts, together with a certificate executed by an officer of Grantor, in such form and containing such representations and warranties regarding the accounts as Lender may reasonably require.

**Lock Box.** Grantor agrees that Lender may at any time require Grantor to institute procedures whereby the proceeds and/or payments of any accounts subject to this Agreement shall be paid by the debtors thereof under a lock box arrangement to Lender, or to Lender's agent, or to one or more financial institutions designated by Lender. Grantor further agrees that, if no Event of Default exists under this Agreement, any and all of such funds received under such a lock box arrangement shall, at Lender's sole election and discretion, either be: (a) paid and/or turned over to Grantor; (b) deposited into one or more accounts for the benefit of Grantor (which deposit accounts shall be subject to collateral assignment and pledge in favor of Lender as provided under this Agreement); (c) deposited into one or more accounts for the joint benefit of Grantor and Lender (which deposit accounts shall likewise be subject to assignment and pledge in favor of Lender as provided under this Agreement); (d) paid and/or turned over to Lender to be applied to the Indebtedness in such order and priority as Lender may determine within its sole discretion; or (e) any combination of the foregoing as Lender shall determine from time to time. Grantor further agrees that, should one or more Events of Default exist under this Agreement, any and all funds received under such a lock box arrangement shall be paid and/or turned over to Lender to be applied to principal, accrued interest, costs, expenses, attorneys' fees and other fees and charges under the Indebtedness, again in such order and priority as Lender may determine within its sole discretion.

**Notice to Obligors.** Upon request by Lender, Grantor immediately will notify individual obligors with regard to the Collateral, advising such obligors of the fact that Lender has been granted a security interest in their obligations. In the event that Grantor should fail to provide such notices for any reason upon Lender's request, Grantor agrees that Lender may forward appropriate notices to such obligors and debtors either in Lender's name or in Grantor's name.

**Additional Documents.** Grantor shall at any time, from time to time, one or more times, upon Lender's written request, execute and deliver such further documents and do any and all such further acts and things as Lender may reasonably request, within Lender's sole discretion, to effect the purposes of this Agreement.

**Verifications.** Grantor additionally agrees that Lender or Lender's agents may periodically contact individual debtors whose notes, instruments and chattel paper have been assigned and pledged under this Agreement in order to verify the amounts then owing under such obligations, to determine whether such debtors have any offsets or counterclaims against Grantor, and with respect to such other matters about which Lender may inquire.

**Notification of Lender.** Grantor will promptly deliver to Lender all written notices, and will promptly give Lender written notice of any other notices received by Grantor with respect to the Collateral and Rights, and Lender will promptly give like notice to Grantor of any such notices received by Lender or its nominee.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Agreement or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Loan No: 00008**                                                                      **Page 6**

creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.**  Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.**  Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.**  A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.**  Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Grantor and the failure by Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.**  A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.**  If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Wyoming Uniform Commercial Code.  In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.**  Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.**  Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral.  Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender.  Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral.  If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.**  Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor.  Lender may sell the Collateral at public auction or private sale.  Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made.  However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale.  The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition.  All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.  The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.**  Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral.  Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine.  Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due.  For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral.  To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.**  If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement.  Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.**  Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time.  In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.**  Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**NO MARSHALLING.** Grantor hereby waives the right to (i) require Lender to marshal the Collateral or any other assets or Property of Grantor or (ii) require that Lender resort to any particular Property or any part thereof.

**CHOICE OF VENUE.** Any legal action with respect to the Indebtedness secured hereby or the subject of this Agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Grantor hereby accepts  and unconditionally submits to the jurisdiction of such courts.

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

**Loan No: 00008**                                                                                                     **Page 7**

Grantor hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**ADDITIONAL INDEBTEDNESS SECURED.** In addition to the Indebtedness, and without limitation of any Future Advance or Cross Collateralization provisions, this Agreement shall secure any other amounts which Grantor or Borrower may owe to Lender, whether direct or indirect, now existing or hereafter arising, contingent or otherwise, and whether arising under this security instrument or otherwise, including without limitation (i) any advances made by Lender to pay drawings on any irrevocable standby or commercial letter of credit issued on the account of Grantor or Borrower pursuant to an application therefor, (ii) any obligation under a Hedge Agreement, (iii) all amounts expended to preserve or protect the Property, and (iv) all Lender's Expenditures as set forth herein, all of which shall be included in the Indebtedness, as defined herein. "Hedge Agreement" means an agreement between Borrower and Lender, now existing or hereafter entered into, which provides for an interest rate, credit, commodity, equity swap, cap floor, collar, spot or forward foreign exchange transaction, currency swap, cross-currency rate swap, currency option or any similar transaction or any combination of, or option with respect to, these or similar transactions, for the purpose of hedging Grantor's or Borrower's exposure to fluctuations in interest or exchange rates, loan, credit, exchange, security or currency valuations or currency prices pursuant to any ISDA Master agreement executed by Grantor or Borrower and all Schedules and Confirmations entered into in connection therewith or otherwise.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Wyoming. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Florida.**

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Agreement is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business. Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Notice of Lender's Breach.** Grantor must notify Lender in writing of any breach of this Agreement or the Related Documents by Lender and any other claim, cause of action or offset against Lender within thirty (30) days after the occurrence of such breach or after the accrual of such claim, cause of action or offset. Grantor waives any claim, cause of action or offset for which notice is not given in accordance with this paragraph. Lender is entitled to rely on any failure to give such notice.

**Indemnification of Lender.** Grantor agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this, as well as by: (1) the ownership, use, operation, construction, renovation, demolition, preservation, management, repair, condition, or maintenance of any part of the Collateral; (2) the exercise of any of Grantor's rights collaterally assigned and pledged to Lender hereunder; (3) any failure of Grantor to perform any of its obligations hereunder; and/or (4) any failure of Grantor to comply with the environmental and ERISA obligations, representations and warranties set forth herein. The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder. Grantor's indemnity obligations under this section shall not in any way be affected by the presence or absence of covering insurance, or by the amount of such insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under any insurance policy or policies affecting the Collateral and/or Grantor's business activities. Should any claim, action or proceeding be made or brought against Lender by reason of any event as to which Grantor's indemnification obligations apply, then, upon Lender's demand, Grantor, at its sole cost and expense, shall defend such claim, action or proceeding in Grantor's name, if necessary, by the attorneys for Grantor's insurance carrier (if such claim, action or proceeding is covered by insurance), or otherwise by such attorneys as Lender shall approve. Lender may also engage its own attorneys at its reasonable discretion to defend Grantor and to assist in its defense and Grantor agrees to pay the fees and disbursements of such attorneys.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Loan No: 00008**                                                                                           **Page 8**

shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Agreement, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH GRANTOR AND LENDER, HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY GRANTOR AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH GRANTOR HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means INTERTRADE HOLDINGS INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Encumbrance.** The word "Encumbrance" means any and all presently existing or future mortgages, liens, privileges and other contractual and statutory security interests and rights, of every nature and kind, whether in admiralty, at law, or in equity, that now and/or in the future may affect the Collateral or any part or parts thereof.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means INTERTRADE HOLDINGS INC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, Grantor's successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: 00008                                                                                                      Page 9

waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means TRUIST BANK, its successors and assigns.

**Note.** The word "Note" means the Note dated April 8, 2022 and executed by INTERTRADE HOLDINGS INC. in the principal amount of $3,500,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rights.** The word "Rights" means individually, collectively and interchangeably any and all of Grantor's additional rights granted and pledged to Lender as provided under this Agreement.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED APRIL 8, 2022.**

**GRANTOR:**

**INTERTRADE HOLDINGS INC.**

By: _____
     **PERRY BURK, CEO of INTERTRADE HOLDINGS INC.**

LaserPro, Ver. 21.3.11.003  Copr. Finastra USA Corporation 1997, 2022   All Rights Reserved.   - WY/FL  C:\LPL-PROD\CFN.PL\E40 FC  TR-255097  PR-118

# EXHIBIT J



2713 Forest Hills Road
P.O. Box 1847
Wilson, NC 27893-1847

4/12/2023

INTERTRADE HOLDINGS INC
2511 N HIATUS RD # 108
HOLLYWOOD, FL 33026-1301

Re: Temporary Extension of Maturity Date
Dear INTERTRADE HOLDINGS INC:

Truist Bank (the "Bank") hereby agrees to extend the maturity date of Obligor/Obligation No. ▇▇▇▇▇▇ - 00008 (the "Note") dated 4/8/2022 made by INTERTRADE HOLDINGS INC (the "Borrower") from the current maturity date of 4/8/2023 to 7/8/2023. Other than the maturity date as changed above, all other terms and conditions of the Note remain unchanged. Any collateral or guaranties which currently secure the Note will continue to secure the note and remain in full force and effect.

During this extension period, payments will continue to be due and payable in the amounts and at the payment intervals for payments due prior to maturity as set forth in the Note or any related document executed in connection with the Note and the Borrower shall remain obligated and shall continue to make said payments.

Should you have any questions or concerns regarding this matter, please do not hesitate to contact your Truist Relationship Banker.

Thank you for banking with Truist.

Loan Services

TRUIST BANK

# EXHIBIT K



# CHANGE IN TERMS AGREEMENT

| Principal $3,500,000.00 | Loan Date 06-29-2023 | Maturity 07-08-2024 | Loan No 00008 | Call / Coll | Account | Officer 72324 | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "***" has been omitted due to text length limitations

**Borrower:** INTERTRADE HOLDINGS INC.
2001 NW 109TH AVE
PEMBROKE PINES, FL  33026-2246

**Lender:** TRUIST BANK
Broward - Commercial Loans BBT
515 E Las Olas Blvd  FL7
Fort Lauderdale, FL  33301-4220

---

**Principal Amount:  $3,500,000.00**                                  **Date of Agreement:  June 29, 2023**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** The loan from Lender to Borrower (the "Loan") evidenced by that certain promissory note dated April 8, 2022 in the original amount of $3,500,000 00 payable to the order of Lender, as may have been amended, modified, renewed or extended from time to time together with all other documents evidencing said indebtedness(the "Note", the Note together with this Agreement and all other documents and instruments evidencing, securing or otherwise executed and delivered in connection with the Loan being sometimes collectively referred to as the "Related Documents")   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Related Documents

**DESCRIPTION OF CHANGE IN TERMS.  Borrower and Lender agree to the following amendments and changes to the Note and Related Documents**

**Maturity Date**   The maturity date of the Note shall be extended to July 8th, 2024, at which time the outstanding balance of the Loan, including without limitation, the outstanding principal amount and all accrued and unpaid interest and all other amounts owing under the Related Documents, now or hereafter arising, shall be due and payable, unless the same shall be due and payable sooner by way of acceleration, default, demand or otherwise   Payments shall continue to be payable in the amounts and on the same date as provided in the Note until the maturity date

**This listing is provided in general terms and may not include all changes to the loan terms reflected in the body of this Change in Terms Agreement.**

**PAYMENT.  Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 8, 2024.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 5, 2023, with all subsequent interest payments to be due on the same day of each month after that.**

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an index which is the rate announced by Lender from time to time as the Lender's Prime Rate (the "Index")   The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion   Lender will tell Borrower the current Index rate upon Borrower's request   The interest rate change will not occur more often than each day   Borrower understands that Lender may make loans based on other rates as well   Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1 000 percentage point over the Index (the "Margin")   If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this loan by designating a substantially similar substitute index   Lender may also amend and adjust the Margin to accompany the substitute index   The change to the Margin may be a positive or negative value, or zero   In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable   Such an amendment to the terms of this loan will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower   NOTICE   Under no circumstances will the effective rate of interest on this loan be more than the maximum rate allowed by applicable law

**INTEREST CALCULATION METHOD   Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.**

**CONTINUING VALIDITY.**  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect   Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms   Nothing in this Agreement will constitute a satisfaction of the obligation(s)   It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing   Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement   If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it   This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender unpaid

**AUTHORIZATION OF ADVANCES**  In addition to any advances made in accordance with the terms of the Note or any other related document, advances may be made in accordance with the terms and conditions of any other agreement between Borrower and Lender, and Borrower agrees to be liable for all sums advanced in accordance with any instructions provided by Borrower or its representatives pursuant to such agreements and products or services offered thereunder   All advances are subject to availability and Borrower shall comply with any conditions or requirements for advances under the loan evidenced by the Note

**BUSINESS PURPOSE.** This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family

# CHANGE IN TERMS AGREEMENT

**Loan No: 00008**          (Continued)          Page 2

or household purposes

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION**

**NOTICES.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity of enforceability of any other provision of this Agreement

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement

**INTERPRETATION.** In all cases where there is more than one Borrower, then all words used in this Agreement in the singular shall be deemed to have been used in the plural where the context and construction so require, and where there is more than one Borrower named in this Agreement or when this Agreement is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them. The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them, provided however, Borrower is not permitted to assign its duties or obligations hereunder. All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons referred to may require. Wherever possible, the provisions of this Agreement shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement

**LENDER'S REMEDIES.** Upon an Event of Default, in addition to Lender's rights set forth above, Lender may, at its option and without notice to Borrower (i) cease making advances or disbursements, (ii) advance funds necessary to remedy any default or pay any lien filed against any of the Collateral, (iii) take possession of the Collateral or any part thereof, (iv) foreclose Lender's security interest and/or lien on any Collateral in accordance with applicable law, (v) make demand upon any or all Guarantors, and (vi) exercise any other right or remedy which Lender has under this Agreement, the Note or any related documents or which is otherwise available at law or in equity. Upon an Event of Default, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the Indebtedness has been paid in full or until the default has been satisfactorily cured which may be allowed at the sole discretion of the Lender, and such rate shall apply after judgment. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to make expenditures or to take action to perform an obligation of Borrower, or of any Grantor, shall not affect Lender's right to declare a default and exercise its rights and remedies

**CLAIMS AND DEFENSES.** There are no defenses or counterclaims, offsets or other adverse claims, demands or actions of any kind, personal or otherwise, that Borrower, any Guarantor, or any other maker, endorser, obligor or grantor could assert with respect to the Note, this Agreement, or the Related Documents

**CONFLICTING PROVISIONS.** Should any provision of this Agreement conflict with the provision of the Note and/or any Related Documents, the terms of this Agreement shall control. The "Note" means the Note described in this Agreement, and "Related Documents" means all loan documents now or hereafter executed in connection with the loan evidenced hereby

**USURY SAVINGS CLAUSE.** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws, and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect, and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note, and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower. All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal. Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only. The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement

**REAMORTIZATION.** In addition to other rights herein, Lender reserves the right in its sole discretion, from time to time, to (a) adjust any periodic fixed payment in such amounts and at such times to repay principal at the amortization period originally agreed upon and accruals of interest as the same becomes due, and (b) increase Borrower's payments to pay all accruals of interest for the period and accruals of unpaid interest from previous periods

**COUNTERPARTS.** This Agreement may be executed by one or more parties on any number of separate counterparts and all such counterparts taken together shall be deemed to constitute one and the same instrument

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request

# CHANGE IN TERMS AGREEMENT
Loan No: 00008 | (Continued) | Page 3

---

**FINANCIAL INFORMATION** Borrower represents and covenants with Lender that (1) all financial information, including but not limited to any and all financial statements and tax returns, previously furnished or which is now being furnished by or on behalf of Borrower to Lender for the purposes of or in connection with the Note or any related transaction is, and all such information furnished by or on behalf of Borrower to Lender in the future will be, (a) accurate, true and correct in all material respects on the date such information is dated or certified, (b) complete in all material respects and no material fact or information has been omitted which, by such omission, could cause the information to be misleading, and (c) a fair and accurate presentation of the financial condition and operations of the Borrower, (2) along with the submission of any financial information, Borrower will notify Lender if there has been a material change in the financial condition of the Borrower since the date of the financials being submitted, (3) Borrower shall also furnish such information as Lender shall request related to the Collateral and the financial condition of any obligor all of which shall be complete, true and correct in all material respects

**FINANCIAL STATEMENT CERTIFICATION AND COMPLIANCE CERTIFICATE** Upon the request of Lender, concurrently with the delivery of financial statements, Borrower shall deliver to Lender a certificate in a form satisfactory to Lender certifying (i) the financial statements are complete, true and accurate in all material respects, (ii) Borrower is in compliance with all covenants in the Note and any related documents, (iii) stating whether there exists an event of default or any circumstances which, with notice or the passage of time or both, would constitute an event of default, and (iv) if there exists an event of default or any such circumstance, specifying the details thereof and the action which Borrower has taken or proposes to take with respect thereto (it being understood that any action by Borrower to cure any default shall not serve as a cure of said default under the terms of the Note or any related document nor prevent Lender from exercising any right with respect to said default)

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Agreement, the Promissory Note, as amended or modified from time to time, or any document related thereto unless such waiver is given in writing and signed by Lender No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right A waiver by Lender of a provision of this Agreement, the Promissory Note or any related document shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision thereof No prior waiver by Lender, nor any course of dealing between Lender and Borrower or between Lender any grantor or guarantor, shall constitute a waiver of any of Lender's rights or of the obligations any of Borrower's or any grantor or guarantor in connection with any future transaction Whenever the consent of Lender is required under this Agreement, the Note or any related document, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender

**RENEWAL** In addition to any other rights set forth herein, Lender, in its sole discretion, may, but shall not be obligated to, renew or extend the final maturity date under the Note by written notice from Lender to Borrower Any such extension or renewal may be conditioned upon timely payment of a fee by Borrower to the extent set forth in the notice Any such extension or renewal shall not operate as a waiver of any rights, duties, defaults or defaults under this Note or any related document

**CHOICE OF VENUE.** Any legal action with respect to the indebtedness evidenced by the Note may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Borrower hereby accepts and unconditionally submits to the jurisdiction of such courts Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto

**KYC, BENEFICIAL OWNERSHIP INFORMATION.** Upon request of Lender, Borrower shall, and shall cause any guarantor or other parties as required by Lender to, provide Lender (i) documentation and other information so requested in connection with applicable "know your customer" and anti-money-laundering rules and regulations, including the PATRIOT Act, and (ii) beneficial ownership certificates or other information as Lender shall require from any "legal entity customer" under beneficial ownership regulations, including 31 C F R § 1010 230, the Beneficial Ownership Regulation Until the Note is paid in full, Borrower represents and covenants that none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U S Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website

**SANCTIONS CONCERNS AND ANTI-CORRUPTION LAWS** While the loan evidenced by the Note remains outstanding, (a) Borrower and any guarantor, each of their subsidiaries or affiliates, and their respective directors, officers, employees, or agents will not (i) be or become a Sanctioned Person, (ii) allow any of their assets to be located in a Sanctioned Country, or (iii) derive any of their operating income from investments in, or transactions with, one or more Sanctioned Person or Sanctioned Country, and (b) no part of the proceeds of the loan evidenced by the Note will be used directly or indirectly (i) to fund or finance any operations, investments or activities in or make any payments to a (x) person that is, or is owned or controlled by, persons that are the subject of any Sanctions (as defined below) (each a "Sanctioned Person") or (y) country or territory that is the subject of Sanctions, or is owned or controlled by one or more Sanctioned Person (a "Sanctioned Country"), or in any other manner that would result in a violation of any Sanctions by any Person, or (ii) in furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any Person in violation of any laws, rules or regulations of any jurisdiction concerning or relating to bribery or corruption Borrower further represents that Borrower and any guarantor, each of their subsidiaries or affiliates have conducted their business in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977 and other applicable anti-corruption legislation in other jurisdictions, and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws "Sanctions" means any trade, economic or financial sanctions administered or enforced by the Office of Foreign Assets Control, the U S Department of State, the United Nations Security Council, the EU, Her Majesty's Treasury or other relevant sanctions authority

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS BORROWER AGREES TO THE TERMS OF THE AGREEMENT

BORROWER

INTERTRADE HOLDINGS INC

By _____
PERRY BURK, CEO of INTERTRADE HOLDINGS INC

EACH GUARANTOR HEREBY ACKNOWLEDGES HAVING READ, UNDERSTOOD AND AGREED TO ALL OF THE TERMS OF THIS AGREEMENT AND HEREBY RATIFIES AND CONFIRMS THEIR GUARANTY OF THE INDEBTEDNESS DESCRIBED HEREIN.

## CHANGE IN TERMS AGREEMENT
(Continued)

Loan No: 00008                                                          Page 4

GUARANTOR:

X_____
PERRY BURK, Individually

### Florida Documentary Stamp Tax

Documentary stamp tax in the amount of $2450.00 was fully paid to the Florida Department of Revenue on the Note. No additional documentary stamp tax is required to be paid in connection with this Agreement.

LaserPro Ver 23.1.10.010 Copr Finastra USA Corporation 1997 2023   All Rights Reserved   - FL  L:\CFI\LPL\D20C FC  TR-283815  PR 118

# EXHIBIT L



<div align="right">

2713 Forest Hills Road
P.O. Box 1847
Wilson, NC 27893-1847

</div>

7/3/2024

INTERTRADE HOLDINGS INC
2511 N HIATUS RD # 108
HOLLYWOOD, FL 33026-1301

Re: Temporary Extension of Maturity Date
Dear INTERTRADE HOLDINGS INC:

Truist Bank (the "Bank") hereby agrees to extend the maturity date of Obligor/Obligation No. ███████ - 00008 (the "Note") dated 4/8/2022 made by INTERTRADE HOLDINGS INC (the "Borrower") from the current maturity date of 7/8/2024 to 10/6/2024. Other than the maturity date as changed above, all other terms and conditions of the Note remain unchanged. Any collateral or guaranties which currently secure the Note will continue to secure the note and remain in full force and effect.

During this extension period, payments will continue to be due and payable in the amounts and at the payment intervals for payments due prior to maturity as set forth in the Note or any related document executed in connection with the Note and the Borrower shall remain obligated and shall continue to make said payments.

Should you have any questions or concerns regarding this matter, please do not hesitate to contact your Truist Relationship Banker.

Thank you for banking with Truist.


Loan Services

TRUIST BANK

# EXHIBIT M



2713 Forest Hills Road
P.O. Box 1847
Wilson, NC 27893-1847

10/2/2024

INTERTRADE HOLDINGS INC
2511 N HIATUS RD # 108
HOLLYWOOD, FL 33026-1301

Re: Temporary Extension of Maturity Date
Dear INTERTRADE HOLDINGS INC:

Truist Bank (the "Bank") hereby agrees to extend the maturity date of Obligor/Obligation No. ████████ - 00008 (the "Note") dated 4/8/2022 made by INTERTRADE HOLDINGS INC (the "Borrower") from the current maturity date of 10/6/2024 to 1/4/2025. Other than the maturity date as changed above, all other terms and conditions of the Note remain unchanged. Any collateral or guaranties which currently secure the Note will continue to secure the note and remain in full force and effect.

During this extension period, payments will continue to be due and payable in the amounts and at the payment intervals for payments due prior to maturity as set forth in the Note or any related document executed in connection with the Note and the Borrower shall remain obligated and shall continue to make said payments.

Should you have any questions or concerns regarding this matter, please do not hesitate to contact your Truist Relationship Banker.

Thank you for banking with Truist.


Loan Services

TRUIST BANK

# EXHIBIT N



2713 Forest Hills Road
P.O. Box 1847
Wilson, NC 27893-1847

12/26/2024

INTERTRADE HOLDINGS INC
2511 N HIATUS RD # 108
HOLLYWOOD, FL 33026-1301

Re: Temporary Extension of Maturity Date
Dear INTERTRADE HOLDINGS INC:

Truist Bank (the "Bank") hereby agrees to extend the maturity date of Obligor/Obligation No. ▮▮▮▮▮▮▮ - 00008 (the "Note") dated 4/8/2022 made by INTERTRADE HOLDINGS INC (the "Borrower") from the current maturity date of 1/4/2025 to 4/4/2025. Other than the maturity date as changed above, all other terms and conditions of the Note remain unchanged. Any collateral or guaranties which currently secure the Note will continue to secure the note and remain in full force and effect.

During this extension period, payments will continue to be due and payable in the amounts and at the payment intervals for payments due prior to maturity as set forth in the Note or any related document executed in connection with the Note and the Borrower shall remain obligated and shall continue to make said payments.

Should you have any questions or concerns regarding this matter, please do not hesitate to contact your Truist Relationship Banker.

Thank you for banking with Truist.


Loan Services

TRUIST BANK

# EXHIBIT O



[redacted]

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,500,000.00 | 04-18-2025 | 08-04-2025 | 00008 | | [redacted] | 72324 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item Any item above containing "***" has been omitted due to text length limitations

**Borrower:** INTERTRADE HOLDINGS INC.
2144 N FLAMINGO RD #142
PEMBROKE PINES, FL 33028-3501

**Lender:** TRUIST BANK
BROWARD - COMMERCIAL LOANS
515 E LAS OLAS BLVD FL 7
FORT LAUDERDALE, FL 33301-4220

**Principal Amount: $3,500,000.00** **Date of Agreement: April 18, 2025**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**
The loan from Lender to Borrower (the "Loan") evidenced by that certain promissory note dated April 8, 2022 in the original amount of $3,500,000 00 payable to the order of Lender, as may have been amended, modified, renewed or extended from time to time together with all other documents evidencing said indebtedness(the "Note", the Note together with this Agreement and all other documents and instruments evidencing, securing or otherwise executed and delivered in connection with the Loan being sometimes collectively referred to as the "Related Documents") Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Related Documents

**DESCRIPTION OF CHANGE IN TERMS.**
**Borrower and Lender agree to the following amendments and changes to the Note and Related Documents**

**Maturity Date** The maturity date of the Note shall be extended to August 4, 2025, at which time the outstanding balance of the Loan, including without limitation, the outstanding principal amount and all accrued and unpaid interest and all other amounts owing under the Related Documents, now or hereafter arising, shall be due and payable, unless the same shall be due and payable sooner by way of acceleration, default, demand or otherwise Payments shall continue to be payable in the amounts and on the same date as provided in the Note until the maturity date

**This listing is provided in general terms and may not include all changes to the loan terms reflected in the body of this Change in Terms Agreement.**

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms Nothing in this Agreement will constitute a satisfaction of the obligation(s) It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender unpaid

**AUTHORIZATION OF ADVANCES** In addition to any advances made in accordance with the terms of the Note or any other related document, advances may be made in accordance with the terms and conditions of any other agreement between Borrower and Lender, and Borrower agrees to be liable for all sums advanced in accordance with any instructions provided by Borrower or its representatives pursuant to such agreements and products or services offered thereunder All advances are subject to availability and Borrower shall comply with any conditions or requirements for advances under the loan evidenced by the Note

**BUSINESS PURPOSE.** This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family or household purposes

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION**

**NOTICES.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers

**SEVERABILITY** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable If the offending provision cannot be so modified, it shall be considered deleted from this Agreement Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity of enforceability of any other provision of this Agreement

# CHANGE IN TERMS AGREEMENT
## (Continued)

**Loan No: 00008**                                                                                                    **Page 2**

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement

**INTERPRETATION** In all cases where there is more than one Borrower, then all words used in this Agreement in the singular shall be deemed to have been used in the plural where the context and construction so require, and where there is more than one Borrower named in this Agreement or when this Agreement is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them, provided however, Borrower is not permitted to assign its duties or obligations hereunder  All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons referred to may require  Wherever possible, the provisions of this Agreement shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement  If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement

**LENDER'S REMEDIES** Upon an Event of Default, in addition to Lender's rights set forth above, Lender may, at its option and without notice to Borrower (i) cease making advances or disbursements, (ii) advance funds necessary to remedy any default or pay any lien filed against any of the Collateral, (iii) take possession of the Collateral or any part thereof, (iv) foreclose Lender's security interest and/or lien on any Collateral in accordance with applicable law, (v) make demand upon any or all Guarantors, and (vi) exercise any other right or remedy which Lender has under this Agreement, the Note or any related documents or which is otherwise available at law or in equity  Upon an Event of Default, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the Indebtedness has been paid in full or until the default has been satisfactorily cured which may be allowed at the sole discretion of the Lender, and such rate shall apply after judgment  All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently  Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to make expenditures or to take action to perform an obligation of Borrower, or of any Grantor, shall not affect Lender's right to declare a default and exercise its rights and remedies

**CLAIMS AND DEFENSES.** There are no defenses or counterclaims, offsets or other adverse claims, demands or actions of any kind, personal or otherwise, that Borrower, any Guarantor, or any other maker, endorser, obligor or grantor could assert with respect to the Note, this Agreement, or the Related Documents

**CONFLICTING PROVISIONS** Should any provision of this Agreement conflict with the provision of the Note and/or any Related Documents, the terms of this Agreement shall control  The "Note" means the Note described in this Agreement, and "Related Documents" means all loan documents now or hereafter executed in connection with the loan evidenced hereby

**USURY SAVINGS CLAUSE** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws, and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect, and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note, and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower  All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal  Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only  The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement

**REAMORTIZATION** In addition to other rights herein, Lender reserves the right in its sole discretion, from time to time, to (a) adjust any periodic fixed payment in such amounts and at such times to repay principal at the amortization period originally agreed upon and accruals of interest as the same becomes due, and (b) increase Borrower's payments to pay all accruals of interest for the period and accruals of unpaid interest from previous periods

**COUNTERPARTS** This Agreement may be executed by one or more parties on any number of separate counterparts and all such counterparts taken together shall be deemed to constitute one and the same instrument

**FINANCIAL STATEMENTS** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request

**FINANCIAL INFORMATION** Borrower represents and covenants with Lender that  (1) all financial information, including but not limited to any and all financial statements and tax returns, previously furnished or which is now being furnished by or on behalf of Borrower to Lender for the purposes of or in connection with the Note or any related transaction is, and all such information furnished by or on behalf of Borrower to Lender in the future will be, (a) accurate, true and correct in all material respects on the date such information is dated or certified, (b) complete in all material respects and no material fact or information has been omitted which, by such omission, could cause the information to be misleading, and (c) a fair and accurate presentation of the financial condition and operations of the Borrower, (2) along with the submission of any financial information, Borrower will notify Lender if there has been a material change in the financial condition of the Borrower since the date of the financials being submitted, (3) Borrower shall also furnish such information as Lender shall request related to the Collateral and the financial condition of any obligor all of which shall be complete, true and correct in all material respects

**FINANCIAL STATEMENT CERTIFICATION AND COMPLIANCE CERTIFICATE** Upon the request of Lender, concurrently with the delivery of financial statements, Borrower shall deliver to Lender a certificate in a form satisfactory to Lender certifying (i) the financial statements are complete, true and accurate in all material respects, (ii) Borrower is in compliance with all covenants in the Note and any related documents, (iii) stating whether there exists an event of default or any circumstances which, with notice or the passage of time or both, would constitute an event of default, and (iv) if there exists an event of default or any such circumstance, specifying the details thereof and the action which Borrower has taken or proposes to take with respect thereto (it being understood that any action by Borrower to cure any default shall not serve as a cure of said default under the terms of the Note or any related document nor prevent Lender from exercising any right with respect to said default)

**NO WAIVER BY LENDER** Lender shall not be deemed to have waived any rights under this Agreement, the Promissory Note, as amended or modified from time to time, or any document related thereto unless such waiver is given in writing and signed by Lender  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right  A waiver by Lender of a provision of this Agreement, the Promissory Note or any related document shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict

# CHANGE IN TERMS AGREEMENT
**Loan No: 00008**                                    (Continued)                                    **Page 3**

compliance with that provision or any other provision thereof  No prior waiver by Lender, nor any course of dealing between Lender and Borrower or between Lender any grantor or guarantor, shall constitute a waiver of any of Lender's rights or of the obligations any of Borrower's or any grantor or guarantor in connection with any future transaction  Whenever the consent of Lender is required under this Agreement, the Note or any related document, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender

**RENEWAL**  In addition to any other rights set forth herein, Lender, in its sole discretion, may, but shall not be obligated to, renew or extend the final maturity date under the Note by written notice from Lender to Borrower  Any such extension or renewal may be conditioned upon timely payment of a fee by Borrower to the extent set forth in the notice  Any such extension or renewal shall not operate as a waiver of any rights, duties, defaults or defaults under this Note or any related document

**CHOICE OF VENUE.** Any legal action with respect to the indebtedness evidenced by the Note may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Borrower hereby accepts and unconditionally submits to the jurisdiction of such courts  Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto

**KYC, BENEFICIAL OWNERSHIP INFORMATION**  Upon request of Lender, Borrower shall, and shall cause any guarantor or other parties as required by Lender to, provide Lender (i) documentation and other information so requested in connection with applicable "know your customer" and anti-money-laundering rules and regulations, including the PATRIOT Act, and (ii) beneficial ownership certificates or other information as Lender shall require from any "legal entity customer" under beneficial ownership regulations, including 31 C F R  § 1010 230, the Beneficial Ownership Regulation  Until the Note is paid in full, Borrower represents and covenants that none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U S  Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website

**SANCTIONS CONCERNS AND ANTI-CORRUPTION LAWS**  While the loan evidenced by the Note remains outstanding, (a) Borrower and any guarantor, each of their subsidiaries or affiliates, and their respective directors, officers, employees, or agents will not (i) be or become a Sanctioned Person, (ii) allow any of their assets to be located in a Sanctioned Country, or (iii) derive any of their operating income from investments in, or transactions with, one or more Sanctioned Person or Sanctioned Country, and (b) no part of the proceeds of the loan evidenced by the Note will be used directly or indirectly (i) to fund or finance any operations, investments or activities in or make any payments to a (x) person that is, or is owned or controlled by, persons that are the subject of any Sanctions (as defined below) (each a "Sanctioned Person") or (y) country or territory that is the subject of Sanctions, or is owned or controlled by one or more Sanctioned Person (a "Sanctioned Country"), or in any other manner that would result in a violation of any Sanctions by any Person, or (ii) in furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any Person in violation of any laws, rules or regulations of any jurisdiction concerning or relating to bribery or corruption  Borrower further represents that Borrower and any guarantor, each of their subsidiaries or affiliates have conducted their business in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977 and other applicable anti-corruption legislation in other jurisdictions, and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws  "Sanctions" means any trade, economic or financial sanctions administered or enforced by the Office of Foreign Assets Control, the U S  Department of State, the United Nations Security Council, the EU, Her Majesty's Treasury or other relevant sanctions authority

**EXECUTION, ESIGNATURE**  This Agreement and any other documents to be delivered in connection herewith may be manually or, if approved by Lender, electronically signed, including signatures transmitted by telecopy, emailed PDF, or by any other electronic means that reproduces an image of an actual executed signature page  If electronically signed, to the fullest extent permitted by applicable law, including, without limitation, the Federal Electronic Signatures in Global and National Commerce Act, any state laws based on the Uniform Electronic Transactions Act, and the UCC (i) each electronic signature shall be of the same legal effect, validity, enforceability and admissibility as a manually executed signature, and (ii) the electronic matching of assignment terms, electronic contract formations on electronic platforms, and the keeping of records in electronic form all shall be of the same legal effect, validity, enforceability and admissibility as the use of a paper-based recordkeeping system  The words execution, execute, signed, signature and words of like import in this Agreement or any document executed in connection herewith shall include electronic signatures as contemplated in this paragraph  Nothing herein shall require Lender to accept electronic signatures in any form or format or through any electronic platform or service  Notwithstanding acceptance of any electronic signature by Lender, manually executed signatures shall be delivered promptly upon request by Lender

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER**

**INTERTRADE HOLDINGS INC**

By. _____
    **PERRY BURK, CEO of INTERTRADE HOLDINGS INC**

EACH GUARANTOR HEREBY ACKNOWLEDGES HAVING READ, UNDERSTOOD AND AGREED TO ALL OF THE TERMS OF THIS AGREEMENT AND HEREBY RATIFIES AND CONFIRMS THEIR GUARANTY OF THE INDEBTEDNESS DESCRIBED HEREIN.

**GUARANTOR**

X _____
    **PERRY BURK, Individually**

# EXHIBIT P



# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,500,000.00 | 08-27-2025 | 11-04-2025 | 00008 | | ▮▮▮▮ | 72324 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "****" has been omitted due to text length limitations

**Borrower:** INTERTRADE HOLDINGS INC.
2144 N FLAMINGO RD # 142
PEMBROKE PINES, FL  33028-3501

**Lender:** TRUIST BANK
BROWARD - COMMERCIAL LOANS
515 E Las Olas Blvd  Fl 7
Fort Lauderdale, FL  33301-4220

**Principal Amount: $3,500,000.00**                    **Date of Agreement: August 27, 2025**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**  The loan from Lender to Borrower (the "Loan") evidenced by that certain promissory note dated April 6, 2022 in the original amount of $3,500,000 00 payable to the order of Lender, as may have been amended, modified, renewed or extended from time to time together with all other documents evidencing said indebtedness(the "Note", the Note together with this Agreement and all other documents and instruments evidencing, securing or otherwise executed and delivered in connection with the Loan being sometimes collectively referred to as the "Related Documents")  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Related Documents

**DESCRIPTION OF CHANGE IN TERMS.**  Borrower and Lender agree to the following amendments and changes to the Note and Related Documents

**Maturity Date·**  The maturity date of the Note shall be extended to November 4, 2025, at which time the outstanding balance of the Loan, including without limitation, the outstanding principal amount and all accrued and unpaid interest and all other amounts owing under the Related Documents, now or hereafter arising, shall be due and payable, unless the same shall be due and payable sooner by way of acceleration, default, demand or otherwise   Payments shall continue to be payable in the amounts and on the same date as provided in the Note until the maturity date

**This listing is provided in general terms and may not include all changes to the loan terms reflected in the body of this Change in Terms Agreement.**

**CONTINUING VALIDITY.**  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect   Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms   Nothing in this Agreement will constitute a satisfaction of the obligation(s)   It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing   Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement   If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it   This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender unpaid

**AUTHORIZATION OF ADVANCES.** In addition to any advances made in accordance with the terms of the Note or any other related document, advances may be made in accordance with the terms and conditions of any other agreement between Borrower and Lender, and Borrower agrees to be liable for all sums advanced in accordance with any instructions provided by Borrower or its representatives pursuant to such agreements and products or services offered thereunder   All advances are subject to availability and Borrower shall comply with any conditions or requirements for advances under the loan evidenced by the Note

**BUSINESS PURPOSE**  This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family or household purposes

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT.  EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION**

**NOTICES.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement   Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address   For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address   Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances   If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable   If the offending provision cannot be so modified, it shall be considered deleted from this Agreement   Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity of enforceability of any other provision of this Agreement

# CHANGE IN TERMS AGREEMENT
**Loan No: 00008**                                    **(Continued)**                                    **Page 2**

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement

**INTERPRETATION.** In all cases where there is more than one Borrower, then all words used in this Agreement in the singular shall be deemed to have been used in the plural where the context and construction so require, and where there is more than one Borrower named in this Agreement or when this Agreement is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them, provided however, Borrower is not permitted to assign its duties or obligations hereunder   All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons referred to may require   Wherever possible, the provisions of this Agreement shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement   If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement

**LENDER'S REMEDIES.** Upon an Event of Default, in addition to Lender's rights set forth above, Lender may, at its option and without notice to Borrower (i) cease making advances or disbursements, (ii) advance funds necessary to remedy any default or pay any lien filed against any of the Collateral, (iii) take possession of the Collateral or any part thereof, (iv) foreclose Lender's security interest and/or lien on any Collateral in accordance with applicable law, (v) make demand upon any or all Guarantors, and (vi) exercise any other right or remedy which Lender has under this Agreement, the Note or any related documents or which is otherwise available at law or in equity   Upon an Event of Default, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the Indebtedness has been paid in full or until the default has been satisfactorily cured which may be allowed at the sole discretion of the Lender, and such rate shall apply after judgment   All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently   Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to make expenditures or to take action to perform an obligation of Borrower, or of any Grantor, shall not affect Lender's right to declare a default and exercise its rights and remedies

**CLAIMS AND DEFENSES.** There are no defenses or counterclaims, offsets or other adverse claims, demands or actions of any kind, personal or otherwise, that Borrower, any Guarantor, or any other maker, endorser, obligor or grantor could assert with respect to the Note, this Agreement, or the Related Documents

**CONFLICTING PROVISIONS.** Should any provision of this Agreement conflict with the provision of the Note and/or any Related Documents, the terms of this Agreement shall control   The "Note" means the Note described in this Agreement, and "Related Documents" means all loan documents now or hereafter executed in connection with the loan evidenced hereby

**USURY SAVINGS CLAUSE.** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws, and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect, and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note, and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower   All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal   Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only   The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement

**REAMORTIZATION.** In addition to other rights herein, Lender reserves the right in its sole discretion, from time to time, to (a) adjust any periodic fixed payment in such amounts and at such times to repay principal at the amortization period originally agreed upon and accruals of interest as the same becomes due, and (b) increase Borrower's payments to pay all accruals of interest for the period and accruals of unpaid interest from previous periods

**COUNTERPARTS.** This Agreement may be executed by one or more parties on any number of separate counterparts and all such counterparts taken together shall be deemed to constitute one and the same instrument

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request

**FINANCIAL INFORMATION** Borrower represents and covenants with Lender that  (1) all financial information, including but not limited to any and all financial statements and tax returns, previously furnished or which is now being furnished by or on behalf of Borrower to Lender for the purposes of or in connection with the Note or any related transaction is, and all such information furnished by or on behalf of Borrower to Lender in the future will be, (a) accurate, true and correct in all material respects on the date such information is dated or certified, (b) complete in all material respects and no material fact or information has been omitted which, by such omission, could cause the information to be misleading, and (c) a fair and accurate presentation of the financial condition and operations of the Borrower, (2) along with the submission of any financial information, Borrower will notify Lender if there has been a material change in the financial condition of the Borrower since the date of the financials being submitted, (3)  Borrower shall also furnish such information as Lender shall request related to the Collateral and the financial condition of any obligor all of which shall be complete, true and correct in all material respects

**FINANCIAL STATEMENT CERTIFICATION AND COMPLIANCE CERTIFICATE** Upon the request of Lender, concurrently with the delivery of financial statements, Borrower shall deliver to Lender a certificate in a form satisfactory to Lender certifying (i) the financial statements are complete, true and accurate in all material respects, (ii) Borrower is in compliance with all covenants in the Note and any related documents, (iii) stating whether there exists an event of default or any circumstances which, with notice or the passage of time or both, would constitute an event of default, and (iv) if there exists an event of default or any such circumstance, specifying the details thereof and the action which Borrower has taken or proposes to take with respect thereto (it being understood that any action by Borrower to cure any default shall not serve as a cure of said default under the terms of the Note or any related document nor prevent Lender from exercising any right with respect to said default)

**NO WAIVER BY LENDER** Lender shall not be deemed to have waived any rights under this Agreement, the Promissory Note, as amended or modified from time to time, or any document related thereto unless such waiver is given in writing and signed by Lender   No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right   A waiver by Lender of a provision of this Agreement, the Promissory Note or any related document shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict

# CHANGE IN TERMS AGREEMENT
## (Continued)

**Loan No: 00008**                                                                 **Page 3**

compliance with that provision or any other provision thereof  No prior waiver by Lender, nor any course of dealing between Lender and Borrower or between Lender any grantor or guarantor, shall constitute a waiver of any of Lender's rights or of the obligations any of Borrower's or any grantor or guarantor in connection with any future transaction  Whenever the consent of Lender is required under this Agreement, the Note or any related document, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender

**RENEWAL.** In addition to any other rights set forth herein, Lender, in its sole discretion, may, but shall not be obligated to, renew or extend the final maturity date under the Note by written notice from Lender to Borrower  Any such extension or renewal may be conditioned upon timely payment of a fee by Borrower to the extent set forth in the notice  Any such extension or renewal shall not operate as a waiver of any rights, duties, defaults or defaults under this Note or any related document

**CHOICE OF VENUE** Any legal action with respect to the indebtedness evidenced by the Note may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Borrower hereby accepts  and unconditionally submits to the jurisdiction of such courts  Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto

**KYC; BENEFICIAL OWNERSHIP INFORMATION.** Upon request of Lender, Borrower shall, and shall cause any guarantor or other parties as required by Lender to, provide Lender (i) documentation and other information so requested in connection with applicable "know your customer" and anti-money-laundering rules and regulations, including the PATRIOT Act, and (ii) beneficial ownership certificates or other information as Lender shall require from any "legal entity customer" under beneficial ownership regulations, including 31 C F R § 1010 230, the Beneficial Ownership Regulation  Until the Note is paid in full, Borrower represents and covenants that none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U S  Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website

**SANCTIONS CONCERNS AND ANTI-CORRUPTION LAWS** While the loan evidenced by the Note remains outstanding, (a) Borrower and any guarantor, each of their subsidiaries or affiliates, and their respective directors, officers, employees, or agents will not (i) be or become a Sanctioned Person, (ii) allow any of their assets to be located in a Sanctioned Country, or (iii) derive any of their operating income from investments in, or transactions with, one or more Sanctioned Person or Sanctioned Country, and (b) no part of the proceeds of the loan evidenced by the Note will be used directly or indirectly (i) to fund or finance any operations, investments or activities in or make any payments to a (x) person that is, or is owned or controlled by, persons that are the subject of any Sanctions (as defined below) (each a "Sanctioned Person") or (y) country or territory that is the subject of Sanctions, or is owned or controlled by one or more Sanctioned Person (a "Sanctioned Country"), or in any other manner that would result in a violation of any Sanctions by any Person, or (ii) in furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any Person in violation of any laws, rules or regulations of any jurisdiction concerning or relating to bribery or corruption  Borrower further represents that Borrower and any guarantor, each of their subsidiaries or affiliates have conducted their business in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977 and other applicable anti-corruption legislation in other jurisdictions, and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws  "Sanctions" means any trade, economic or financial sanctions administered or enforced by the Office of Foreign Assets Control, the U S  Department of State, the United Nations Security Council, the EU, Her Majesty's Treasury or other relevant sanctions authority

**EXECUTION; ESIGNATURE.** This Agreement and any other documents to be delivered in connection herewith may be manually or, if approved by Lender, electronically signed, including signatures transmitted by telecopy, emailed PDF, or by any other electronic means that reproduces an image of an actual executed signature page  If electronically signed, to the fullest extent permitted by applicable law, including, without limitation, the Federal Electronic Signatures in Global and National Commerce Act, any state laws based on the Uniform Electronic Transactions Act, and the UCC (i) each electronic signature shall be of the same legal effect, validity, enforceability and admissibility as a manually executed signature, and (ii) the electronic matching of assignment terms, electronic contract formations on electronic platforms, and the keeping of records in electronic form all shall be of the same legal effect, validity, enforceability and admissibility as the use of a paper-based recordkeeping system  The words execution, execute, signed, signature and words of like import in this Agreement or any document executed in connection herewith shall include electronic signatures as contemplated in this paragraph  Nothing herein shall require Lender to accept electronic signatures in any form or format or through any electronic platform or service  Notwithstanding acceptance of any electronic signature by Lender, manually executed signatures shall be delivered promptly upon request by Lender

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER**

**INTERTRADE HOLDINGS INC.**

By: _____
   **PERRY BURK, CEO of INTERTRADE HOLDINGS INC.**

**EACH GUARANTOR HEREBY ACKNOWLEDGES HAVING READ, UNDERSTOOD AND AGREED TO ALL OF THE TERMS OF THIS AGREEMENT AND HEREBY RATIFIES AND CONFIRMS THEIR GUARANTY OF THE INDEBTEDNESS DESCRIBED HEREIN.**

**GUARANTOR:**

X _____
   **PERRY BURK, Individually**

# CHANGE IN TERMS AGREEMENT
## (Continued)

Loan No: 00008                                                                                              Page 4

### Florida Documentary Stamp Tax

Documentary stamp tax in the amount of $2,450.00 was fully paid to the Florida Department of Revenue on the Note. No additional documentary stamp tax is required to be paid in connection with this Agreement.

LaserPro Ver. 24.2.10.066 Copr. Finastra USA Corporation 1997, 2025   All Rights Reserved   FL   \\CFILPL\G26\FC TR-316554 PR-118

# EXHIBIT Q

 

1608    100-50-02-57
INTERTRADE HOLDINGS INC                                          November 12, 2025
2144 N FLAMINGO RD # 142
PEMBROKE PINES, FL 33028-3501

Re: Temporary Extension of Maturity Date

Dear INTERTRADE HOLDINGS INC:

Truist Bank (the "Bank") hereby agrees to extend the maturity date of Obligor/Obligation No. ▮▮▮▮▮▮▮ - 00008 (the "Note") dated April 8, 2022 made by INTERTRADE HOLDINGS INC (the "Borrower") from the current maturity date of November 4, 2025 to February 4, 2026. Other than the maturity date as changed above, all other terms and conditions of the Note remain unchanged. Any collateral or guaranties which currently secure the Note will continue to secure the note and remain in full force and effect.

During this extension period, payments will continue to be due and payable in the amounts and at the payment intervals for payments due prior to maturity as set forth in the Note or any related document executed in connection with the Note and the Borrower shall remain obligated and shall continue to make said payments.

Should you have any questions or concerns regarding this matter, please do not hesitate to contact your Truist Relationship Banker.

Thank you for banking with Truist.

Loan Services

TRUIST BANK

# EXHIBIT R



101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602

o 813.229.7600
f 813.229.1660
shumaker.com

Jay B. Verona
(813) 676-7213
jverona@shumaker.com

February 11, 2026

**Via U.S. Mail and Certified Mail**
Intertrade Holdings, Inc.
Attn: Perry Burk, Director
2144 N. Flamingo Road, Suite 142
Pembroke Pines, FL 33330

**Via U.S. Mail and Certified Mail**
Intertrade Holdings, Inc.
Attn: Perry Burk, Director
2511 N. Hiatus Road, Suite 108
Hollywood, FL 33026

**Via U.S. Mail and Certified Mail**
Perry Burk
2001 NW 109 Avenue
Pembroke Pines, FL 33025

**Via U.S. Mail and Certified Mail**
Perry Burk
4780 Hancock Road
Southwest Ranches, FL 33330

Re:    Borrower:    Intertrade Holdings, Inc.
       Guarantor(s):  Perry Burk
       Collateral:   Business assets
       Account:      ███████████
       Our File No.:  B25408-416397

Mr. Burk:

This office is counsel to Truist Bank *("Truist")* in connection with the above referenced line of credit *("the LOC")*. *Please direct all future correspondence regarding the LOC to the undersigned.*

The LOC matured on February 4, 2026, and demand is hereby made for payment in full of the LOC balance which, <u>as of February 11, 2026</u>, is as follows:.

| | | |
|---|---|---:|
| Principal | $ | 3,500,000.00 |
| Interest | | 74,689.54 |
| Returned Payment fees | | 60.00 |
| Late charges | | 2,340.40 |
| Attorneys' fees and costs (est.) | | 2,500.00 |
| ***TOTAL through February 11, 2026*** | ***$*** | ***3,579,589.94*** |

Additionally, interest continues to accrue on the principal balance subsequent to February 11, 2026 at the non-default contract rate of $753.47 per day.

Should the TOTAL amount set forth above, together with interest through the date of payment, not be paid within fourteen (14) days of the date of this letter, Truist will file suit to (i) enforce payment of the LOC from both the Borrower and the Guarantor, (ii) recover possession and control of the Collateral, (iii) foreclose its security interest in the Collateral, and (iv) exercise all other rights and remedies provided for under the obligation documents and applicable law. Additionally,

Intertrade Holdings, Inc.
February 11, 2026
Page 2

if such payment is not made, this letter will serve as Truist's demand, pursuant to Sec. 679.609, Fla. Stat., that the Collateral be assembled and made available to Truist at the Borrower's principal place of business.

Your remittance should be made payable to "Truist Bank" and should be remitted to Truist at 150 S. US Highway One, Fourth Floor, Jupiter, FL 33477, Attn:  John Breitfelder, Senior Vice-President.  Please include the above referenced account number on the remittance.

Importantly, please note that the "TOTAL" amount set forth above (i) does not include interest accruing after February 11, 2026, and (ii) assumes that Truist will have incurred no additional costs, expenses or attorneys' fees between the date of this letter and the date of payoff. Therefore, before sending the payoff, please contact this office for updated figures.

The acceptance by Truist of any payments in connection with the LOC, to the extent that said payments do not represent complete and full payment of the LOC, shall not constitute a waiver by Truist of the defaults described herein.  Truist shall not accept any payment marked "payment in full" as to a disputed account and reserves the right to reject all such payments.

All communications related in any manner to the LOC or your relationship with Truist should be directed to the undersigned attorney.  Truist will not be bound by any verbal representations related in any manner to the loan or this demand.  No amendments, modifications, requests for forbearance, or any other agreement whatsoever related to the obligations shall be binding on Truist unless it is memorialized in a writing signed by a duly authorized representative of Truist.

We trust that Truist's position is clear.  Should you have questions, please contact the undersigned personally.

Sincerely,
SHUMAKER, LOOP & KENDRICK, LLP

*/s/ Jay B. Verona*

Jay B. Verona
Electronically signed in his absence
to avoid delay
JBV/mh
cc:      Truist Bank

## USPS CERTIFIED MAIL

Michelle Hartz
Shumaker
101 E Kennedy Blvd
Ste 2800
Tampa, FL 33602

9414 8149 0351 1497 0597 76

Intertrade Holdings, Inc.
Attn:  Perry Burk, Director
2511 N HIATUS RD
SUITE 108
HOLLYWOOD, FL 33026-1301

Shipper Ref:      MH\416397
Reference 1:      JV\mh



**USPS CERTIFIED MAIL**

9414 8149 0351 1497 0597 52

Michelle Hartz
Shumaker
101 E Kennedy Blvd
Ste 2800
Tampa, FL 33602

Intertrade Holdings, Inc.
Attn: Perry Burk, Director
2144 N FLAMINGO RD
SUITE 142
PEMBROKE PINES, FL 33028-3501

Shipper Ref:     MH\416397
Reference 1:     JV\mh

**USPS CERTIFIED MAIL**

Michelle Hartz
Shumaker
101 E Kennedy Blvd
Ste 2800
Tampa, FL 33602

9414 8149 0351 1497 0597 90

Perry Burk
4780 HANCOCK RD
FORT LAUDERDALE, FL 33330-2208

Shipper Ref:      MH\416397
Reference 1:      JV\mh

**USPS CERTIFIED MAIL**

Michelle Hartz
Shumaker
101 E Kennedy Blvd
Ste 2800
Tampa, FL 33602

9414 8149 0351 1497 0597 83

Perry Burk
2001 NW 109TH AVE
HOLLYWOOD, FL 33026-2246

Shipper Ref:      MH\416397
Reference 1:      JV\mh

# EXHIBIT S

*EXHIBIT "S" – Indebtedness Worksheet*
*DEBT AS OF THE PETITION DATE*

A.  Total pre-petition indebtedness of debtor(s) to movant (if movant is not the lender, this refers to the indebtedness owed to the lender) as of petition filing date:  ***$3,637,649.49***

| | | |
|---|---|---|
| 1. | Amount of principal: | $3,500,000.00 |
| 2. | Amount of interest: | $  131,953.44 |
| 3. | Amount of escrow (taxes and insurance): | $ NA |
| 4. | Amount of forced placed insurance expended by movant: | $ NA |
| 5. | Amount of attorney's fees billed to debtor(s) pre-petition: | $     3,295.65 |
| 6. | Amount of pre-petition late fees, if any, billed to debtor(s): | $     2,340.40 |

7.  Any additional pre-petition fees, charges or amounts charged to debtors/debtors account and not listed above: Returned payment fees of $60.00.

B.  Contractual interest rate: Truist Prime plus 1% (if interest rate is (or was) adjustable, list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; list the exhibit number here: Exhibit S-1.)

**AMOUNT OF ALLEGED POST-PETITION DEFAULT:  Debt matured prepetition (AS OF 04/28/2026)**

C.  Date last payment was received: 11/26/2025
D.  Alleged total number of payments due postpetition from filing of petition through payment due on 04/28/2026: None – debt is matured.
E.  All postpetition payments alleged to be in default:  None.  Debt is matured
F.  Amount of movant's attorneys' fees billed to debtor for the preparation, and filing and prosecution of this motion:  $ 1,500 (appr) for preparation
G.  Amount of movant's filing fee for this motion: $199.00
H.  Other attorney's fees billed to debtor post-petition:  $ NA
I.  Amount of movant's post-petition inspection fees:  $ 0.00
J.  Amount of movant's post-petition appraisal broker's price opinion:  $ 0.00
K.  Amount of forced placed insurance or insurance provided by the movant post-petition:  $ 0.00
L.  Sum held in suspense by movant in connection with this contract, if applicable:  $0.00
M.  Amount of other post-petition advances or charges, for example taxes, insurance incurred by debtor, etc., (itemize each charge):  $ 0.00

1

# EXHIBIT S-1

## Accrual Schedules Summary

**Obligor**   ████████ - INTERTRADE HOLD   **Obligation** 9 - HLF 2022   **Application** 1 - *Commercial Lending   **Legal Maturity Date**   02/04/2026

| Charge Code | Balance Code | Memo Item | Earnings Type | Accrual Method |
|---|---|---|---|---|
| 1001 Interest | 10 - Principal | 0 - Posted to G/L and in payoff | 1 - Accrue on whole balance | 1 - Simple Interest |

| All in Rate | Effective From | Effective Through | Basis | From Tier Amount | To Tier Amount | Tier Percent |
|---|---|---|---|---|---|---|
| 7.75000000 | 12/11/2025 | 12/31/2999 | 4 - Actual/360 | | | |
| 8.00000000 | 10/30/2025 | 12/10/2025 | 4 - Actual/360 | | | |
| 8.25000000 | 09/18/2025 | 10/29/2025 | 4 - Actual/360 | | | |
| 8.50000000 | 12/19/2024 | 09/17/2025 | 4 - Actual/360 | | | |
| 8.75000000 | 11/08/2024 | 12/18/2024 | 4 - Actual/360 | | | |
| 9.00000000 | 09/19/2024 | 11/07/2024 | 4 - Actual/360 | | | |
| 9.50000000 | 07/27/2023 | 09/18/2024 | 4 - Actual/360 | | | |
| 9.25000000 | 05/04/2023 | 07/26/2023 | 4 - Actual/360 | | | |
| 9.00000000 | 03/23/2023 | 05/03/2023 | 4 - Actual/360 | | | |
| 8.75000000 | 02/02/2023 | 03/22/2023 | 4 - Actual/360 | | | |
| 8.50000000 | 12/15/2022 | 02/01/2023 | 4 - Actual/360 | | | |
| 8.00000000 | 11/03/2022 | 12/14/2022 | 4 - Actual/360 | | | |
| 7.25000000 | 09/22/2022 | 11/02/2022 | 4 - Actual/360 | | | |
| 6.50000000 | 07/28/2022 | 09/21/2022 | 4 - Actual/360 | | | |
| 5.75000000 | 06/16/2022 | 07/27/2022 | 4 - Actual/360 | | | |
| 5.00000000 | 05/05/2022 | 06/15/2022 | 4 - Actual/360 | | | |
| 4.50000000 | 04/11/2022 | 05/04/2022 | 4 - Actual/360 | | | |

Case 26-15399-CAP   Doc 18   Filed 05/04/26   Page 105 of 108

# EXHIBIT T

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

INTERTRADE HOLDINGS INC.,

Debtor.

_____/

Case No. 26-15399-PDR

Chapter 11

### AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY AND TO PROHIBIT USE OF CASH COLLATERAL

Before me, the undersigned authority, personally appeared *JOHN BREITFELDER*, who upon being duly sworn, deposes and says as follows:

1.     The factual matters set forth herein are based upon my personal knowledge or the Business Records described herein.

2.     I am a Senior Vice President in the Small Business Default Solutions group of TRUIST BANK *("Truist")*, the movant named in the Motion for Relief from Automatic Stay and to Prohibit Use of Cash Collateral which this Affidavit supports *("the Motion")*.

3.     I am authorized to make this Affidavit on behalf of Truist.

4.     I have read the Motion.  I am familiar with the line of credit described in the Motion *("the LOC")*, and the factual matters set forth in the Motion are true.

5.     As part of its regularly conducted business activity, and as its regular practice, Truist creates and maintains accurate reports, records and data compilations *("the Business Records")* concerning transactions that occur in connection with the LOC, including, without limitation, (i) the timing and amount of payments made on the LOC, and how those payments have been applied to the LOC balance, and (ii) the timing, nature and amount of charges against the LOC, including, without limitation, those for interest, late charges, and expenses incurred by Truist for, among other

1

17234715v1

things, professional fees and expenses.

6.    The information in the Business Records is input or compiled contemporaneous with the events described therein, and are updated virtually on a daily basis as additional events occur and information is received.

7.    The Business Records are kept under the care, custody, control and supervision of a limited number of individuals within the Small Business Default Solutions Group, including myself.

8.    The documents that are attached to the Motion are true and correct copies of the original documents maintained as part of the Business Records.

9.    The amount of the indebtedness and the nature and extent of the defaults set forth in the Motion is information derived from the Business Records.

10.   Truist has retained the law firm of SHUMAKER, LOOP & KENDRICK, LLP to represent it in this matter, and has agreed to pay said firm a reasonable fee for its services.

11.   This concludes my affidavit.

_____
**JOHN BREITFELDER**

STATE OF _Carolina_
COUNTY OF _Palm Beach_

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization on this _1st_ day of _MAY_, 2026 by **John Breitfelder**, as Senior Vice President of **TRUIST BANK**, a North Carolina corporation, on behalf of the corporation (X) who is personally known to me or ( ) who has produced _____ as identification.

_____
Notary Public - signature
_____
Notary's name - type/print
_____
Commission/Serial number
_____
My Commission Expires:

LORETTA SADOWSKI
MY COMMISSION # HH 697388
EXPIRES: July 18, 2029

2