## ATTACHMENT A TO PROOF OF CLAIM

Claimant World Wide Frozen Foods LLC. ("Claimant") states the following in support of Claimant's proof of claim (the "Claim") filed against the Debtor. Claimant's claim is based on Section 5(c) of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c).

### Relevant Factual Background

1. Claimant is a wholesale produce dealer licensed under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq*. and holding valid PACA licensed number 20030630. A copy of Claimant's PACA License is submitted as Exhibit 1.

2. Debtor regularly contracted for and received 2,000 pounds of produce from Claimant and first began contracting for and receiving more than 2,000 pounds of produce on December 1, 2021. At all times relevant to this Claim, Debtor was the holder of a valid PACA license number 20200456.

3. Debtor has not had a zero balance with Claimant since December 1, 2021.

4. Between December 1, 2021, and November 21, 2025, Claimant sold and delivered wholesale quantities of produce and other items to Debtor worth the total principal amount of $162,334.93, all of which remains unpaid (the "Principal Debt"). Copies of the unpaid invoices are submitted herewith as Exhibit 2.

5. All of the produce that is the subject of this declaration had been moved in interstate commerce, or contemplation thereof, and in that stream of commerce common in the trade.

6. Debtor accepted the produce received from Claimant.

7. Claimant prepared and sent to Debtor an invoice for each shipment, and each invoice contained the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act,

> 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

*See* Exhibit 2. The inclusion of this language is sufficient to preserve Claimant's trust rights under the trust provision of the PACA.

8. Claimant's invoices include a provision entitling Claimant to interest at the rate of 1.5% per month on unpaid balances and attorneys' fees. It reads, "Past due accounts are subject to interest charge of 1 1/2% per month, maximum 18% per annum both on prejudgment and post-judgement debt. Buyer agrees to pay all collection costs, including collection agency fees, reasonable attorneys fees, and court[] costs if this account [goes into] collection.." *See* Exhibit 2.

9. The principal amount of $162,334.93, plus interest in the amount of $54,188.07 calculated at the rate of 1.5% per month through June 27, 2026, plus attorneys' fees and costs in the estimated amount of $10,000.00 through June 27, 2026, is due and owing.

**Discussion**

**A. The PACA Trust Provision Entitles Claimant to Payment from PACA Trust Assets Ahead of All Others**

10. PACA was enacted in 1930 to "deter unfair business practices and promote financial responsibility in the perishable agricultural goods market." *Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 419 (3d Cir. 2005). *See also Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 594-95 (4th Cir. 2010). The PACA requires that produce buyers make full payment promptly for all produce purchases. 7 U.S.C. § 499b(4); 7 C.F.R. § 46.2(aa).

11. In the early 1980's, Congress recognized a significant payment problem in the produce industry arising from the slow-pay and no-pay practices of produce buyers and the produce buyers' granting of security interests in produce-related assets, which often left produce

sellers unpaid and unsecured in the event of insolvency. *See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 135 (3d Cir. 2000); *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990).

12. To remedy this problem, Congress added the Trust Provision in 1984, which creates a "non-segregated floating trust," for the protection of produce sellers. *Weis-Buy Servs., Inc.*, 411 F.3d at 420. *See also* 7 U.S.C. § 499e(c)(2); H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S. Code Cong & Admin News 405, 406 (the Trust Provision was added "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them.").

13. The Trust Provision requires produce buyers that are licensed or subject to license under the PACA (such as Debtor because it purchased wholesale quantities of produce as defined under the PACA) to hold in trust all of their produce-related assets—which includes the produce itself, products derived therefrom, and any receivables or proceeds from the sale thereof—until full payment is made to the seller. 7 U.S.C. § 499e(c)(2); *Kingdom Fresh Produce, Inc. v. Stokes Law Office, L.L.P. (In re Delta Produce, L.P.)*, 745 F.3d 609, 613 (5th Cir. 2016); *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 166-67 (3d Cir. 2010); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 136 (3d Cir. 2000); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *Tom Lange Co. v. Kornblum & Co., (In re Kornblum & Co..),* 81 F.3d 280 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.,* 986 F.2d 1010 (6th Cir. 1993) (noting that assets and proceeds from produce should be held in trust until payment in full).

14. The PACA trust and the produce buyer's obligations as a trustee of the PACA trust arise automatically "by operation of law" upon the buyer's first produce purchase. *Tanimura &*

*Antle, Inc.* 222 F.3d at 136. The trust remains continually in existence until all unpaid suppliers of produce are paid in full. *In re Kornblum & Co.*, 81 F.3d at 286.

15. Importantly, entities that are subject to the Trust Provision must prioritize payment to produce sellers ahead of all other creditors, including secured creditors. *Consumers Produce Co, Inc. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1379 (3d Cir. 1994); 49 Fed. Reg. 45735, 45738 ("While the regulations do not prohibit a buyer or receiver from granting a secured interest in rust assets, they make it clear that the secured interest is secondary and specifically voidable in order to satisfy debts to unpaid suppliers, sellers, or agents in perishable agricultural commodity transactions.").

**B. Claimant Preserved its Rights in the PACA Trust**

16. To become a qualified beneficiary of the PACA trust, a produce supplier must meet certain requirements. First, the transaction at issue must concern the sale of produce. Second, the produce must have been purchased by a commission merchant, dealer, or broker subject to or licensed under the PACA. And third, the produce supplier must give written notice of its intent to preserve trust rights. *See generally Sysco Food Servs. Of Seattle, Inc. v. Country Harvest Buffet Restaurants, Inc.,* 245 B.R. 650, 653 (B.A.P. 9th Cir. Wash. 2000). Notice is proper for a PACA licensee if, on its "ordinary and usual billing or invoice statements" the seller places the following language required by 7 U.S.C. § 499e(c)(4)):

> The perishable agricultural commodities listed on this invoice are sold subject to statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

17. In addition, the produce seller cannot agree prior to the transaction to payment terms greater than thirty (30). 7 C.F.R. § 46.46(e)(2).

18. The sales at issue indisputably concern the sale of produce by Claimant, a licensed dealer, which issued invoices to Debtor. The invoices contained the language required by 7 U.S.C. § 499e(c)(4), and the payment terms were never extended beyond 30 days prior to any transactions. Thus, Claimant properly preserved its rights in the PACA and remains a beneficiary of the trust "until full payment is received."

**C. All Assets Acquired with Proceeds from the Sale of Produce are Part of the PACA Trust**

19. The PACA and its implementing regulations clearly anticipate a single, undifferentiated trust consisting of all produce sales, in all transactions.

20. "Perishable agricultural commodities received by a commission merchant, dealer, or broker *in all transactions*, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, *shall be held* by such commission merchant, dealer, or broker *in trust for the benefit of all unpaid suppliers or sellers* of such commodities or agents involved in the transaction, *until full payment of the sums owing in connection with such transactions has been received* by such unpaid suppliers, sellers, or agents." 7 U.S.C. 499e(c)(2 (emphasis added).

21. The regulations similarly provide, "The trust is made up of perishable agricultural commodities *received in all transactions*, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom. *Trust assets are to be preserved as a nonsegregated "floating" trust.* Commingling of trust assets is contemplated." 7 C.F.R. 46.46(b).

22. Relying on this language, the Second Circuit held that "a single PACA trust exists for the benefit of all of the sellers to a Produce Debtor and continues in existence until all of the outstanding beneficiaries have been paid in full." *See In re Kornblum & Co.,* 81 F.3d at 286.

23. In short – and because commingling is contemplated – each produce buyer is the trustee of an undifferentiated, continuous PACA trust that consists of all of the produce that the produce buyer has purchased, the proceeds from the sale of the produce, and all of the assets acquired with those proceeds from the date the produce buyer first accepted a load of produce until the date that all of produce buyer's produce suppliers have been paid in full. The assets of a produce buyer are thus *presumed* to be assets of the PACA trust, unless the party challenging the scope of the trust can show that the trust had been extinguished or that the disputed asset was not acquired with produce funds. *Id See also In re Fresh Approach, Inc.*, 51 B.R. 412, 422 (Bankr. N.D. Tex. 1985) (the PACA trust "is imbued with an unusual 'floating' characteristic, i.e., it applies to all of Debtor's produce related inventory and proceeds thereof, regardless of whether [one produce seller] or another produce supplier was the source of such inventory"); *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.,* 986 F.2d 1010, 1013-14 (6th Cir. 1993*)* (all of a produce buyer's assets are presumed PACA trust assets). *Accord* Restatement (Second) of Trusts, § 202 (a trustee is entitled to follow trust property into its product). *See also* 1984 U.S.C.C.A.N. at 409 ("Under this provision, there is no necessity to specifically identify all of the trust assets through each step of the asset accrual and disposal process. Since commingling is contemplated, all trust assets would be subject to the claims of unpaid seller-suppliers and agents to the extent of the amount owed them.").

24. A critical element of the PACA trust, and the rights of the PACA trust beneficiaries, is that the trust must be continuous, such that a produce seller later in time can look to assets acquired prior its sales for recovery. If this were not the case, the last entities to sell produce to a shuttered or bankrupt produce company would go unpaid.

25. Accordingly, the following courts are among many which have held that the PACA trust extends to other assets which were acquired from a commingled account and earlier in time: *Chiquita Fresh N. Am., LLC v. Long Island Banana Corp*., 2016 U.S. Dist. LEXIS 88494, at *41 (E.D.N.Y. July 7, 2016) (real property proceeds subject to the PACA trust); *Consumers Produce Co. v. Fredericktown Produce Co.,* Civil Action No. 14-314, 2015 U.S. Dist. LEXIS 19869 (W.D. Pa. Feb. 19, 2015) (proceeds of an insurance policy paid for prior to the produce sales at issue were subject to the PACA trust); *Sam Wang Produce, Inc. v. EE Mart FC, LLC*, 1010 U.S. Dist. LEXIS 13608 (E.D.Va., Feb. 16, 2010) (use of PACA trust funds to pay insurance premiums entitled parties to proceeds from insurance policy); *Movsovitz & Sons of Fla., Inc. v. Doral Bank*, 2010 U.S. Dist. LEXIS 48612 (D.P.R. May 17, 2010 (proceeds from the sale of real property paid for with proceeds from sale of produce impressed with PACA trust); *A&J Produce Corp. v. Bronx Overall Econ. Dev. Corp*., 542 F.3d 54 (2nd Cir. 2008) (commercial real property paid for proceeds from the sale of produce impressed with PACA trust); *Atlantic Coast Produce, Inc., v. McDonald Farms, Inc.*, 2005 U.S. Dist. LEXIS 14993**12-13 (W.D. Va. 2005) ("If the buyer fails to prove [particular assets] did not derive from produce proceeds, a PACA beneficiary may recover any of the buyer's assets, up to the amount owed, ahead of other creditors."); *American Fruit & Vegetable Co., Inc. v. Ithaca Produce, Inc.*, 848 F.Supp.2d 375 (W.D.N.Y. 2011) (residential real property subject to PACA trust); *Hereford Haven v. Stevens*, 1999 U.S. Dist. LEXIS 3116 (N.D. Tex. Mar. 12, 1999) (business property, vehicles, and all business equipment are PACA trust assets because paid for with commingled PACA trust funds); *In re Atlantic Tropical Market Corp*., 118 B.R. at 142 ("[A]ny assets purchased while the fund is in existence will be assumed to be purchased with trust fund assets and will therefore become part of the trust fund assets."); *Tony Vitrano Co. v. National Produce Co*., 815 F. Supp. 23 (D.D.C. 1993) (proceeds from sale of real property, paid

for with PACA trust funds, are PACA trust assets); *In re Al Nagelberg & Co., Inc.,* 84 B.R. 19, 21 (S.D.N.Y. Bankr. 1988) (payments to co-op impressed with the PACA trust).

**D. Claimant is Entitled to Recover Interest and Attorneys' Fees under the PACA Trust Provision**

26. The Trust Provision provides that the PACA trust assets shall be held by the receiver of the produce in trust for the benefit of the unpaid beneficiary until full payment of the "*sums owing in connection with such transactions* has been received." 7 U.S.C § 499e(c)(2) (emphasis added).

27. If there is an enforceable agreement between the parties, then attorneys' fees and pre-judgment interest should be awarded as "sums owing in connection with" the trust transactions. *See Iscavo Avocados USA, L.L.C. v. Pryor*, 953 F.3d 316, 319 (5th Cir. 2020); *Nickey Gregory Co. LLC v. Agricap, LLC,* 597 F.3d 591, 597 (4th Cir. 2010); *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 709 (2d Cir. 2007); *Pacific Int'l Mkt'g,v. A&B Produce, Inc.* 462F.3d 279, 285-86 (3d Cir. 2006); *Country Best v. Christopher Ranch, LLC.*, 361 F.3d 629, 632 (11th Cir. 2004)); *Middle Mt. Land & Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220 (9th Cir. 2002);); *Allens, Inc. v. D&E Farms, Inc. (In re Veg Liquidation, Inc.)*, 516 B.R. 545 (Bankr. W.D. Ark. 2014); *J.C. Produce, Inc. v. Paragon Steakhouse Rests., Inc.*, 70 F.Supp.2d 1119, 1123 (E.D. Cal. 1999); *E. Armata, Inc. v. Platinum Funding*, 887 F. Supp. 590, 594-95 (E.D.N.Y. 1995).

28. The total principal amount owed to Claimant is $162,334.93, plus interest, attorneys' fees, and costs, which continue to accrue.

29. Claimant's total estimated claim is $216,523.00 (plus attorneys' fees and costs to be determined), which includes the principal, interest through June 27, 2026, in the amount of $54,188.07, and estimated attorneys' fees and costs in the amount of $10,000.00. Supporting documents, including a statement of account, invoice copies, and a copy of Claimant's PACA

license are attached. A Statement of Account reflecting the accrual of interest and estimated fees and costs is submitted herewith as Exhibit 2.

**RESERVATION OF RIGHTS**

In asserting its Claim, Claimant does not waive, but rather expressly reserves all of its rights and remedies, including, without limitation, those it may have against any other entity or person or pursuant to applicable law.

As to the Debtor, Claimant does not waive, but rather expressly reserves, all of its rights and remedies in connection with its Claim, including, without limitation, the following: (i) to fix, increase, amend and/or supplement the Claim, the addendum thereto, and/or any supporting documentation (ii) to assert that the Claim, or any portion thereof, is secured, including, without limitation, by a right of setoff, recoupment, or otherwise, (iii) to assert that the Claim, or any portion thereof, is an administrative expense of the Debtor's estate, and (iv) to seek other relief from the Court, as Claimant in its sole discretion deem appropriate.

Claimant does not waive any rights, claims, actions, defenses, setoffs, or recoupments to which Claimant is or may be entitled to under any agreements, in equity, or under any applicable law or otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments Claimant expressly hereby asserts and preserves in these bankruptcy cases.