UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

INTERTRADE HOLDINGS INC.,

Debtor.
_______________________________/

Case No. 26-15399-CAP

Chapter 11

**TRUIST BANK'S OPPOSITION TO WORLD WIDE FROZEN FOODS, LLC'S MOTION TO MODIFY SECOND INTERIM CASH COLLATERAL ORDER TO CARVE OUT PACA TRUST ASSETS, AND OBJECTION TO CONTINUED AUTHORIZATION OF CASH COLLATERAL USE [ECF 83]**

Secured creditor, Truist Bank ("***Truist***"), by and through its undersigned counsel, hereby opposes World Wide Frozen Foods, LLC's ("***WWFF***") *Motion to Modify Second Interim Cash Collateral Order to Carve Out PACA Trust Assets, and Objection to Continued Authorization of Cash Collateral Use* [ECF 83] (the "***Motion***"), and in support thereof respectfully states as follows:

## PRELIMINARY STATEMENT

Truist is the primary secured creditor of the Debtor, Intertrade Holdings Inc. (the "***Debtor***" or "***Intertrade***"), holding approximately $3.6 million in secured claims.[1] *See* Proofs of Claim Nos. 4, 5, 6, and 8.

WWFF's Motion asks this Court to make sweeping modifications to the *Second Interim Order on Debtor's Expedited Motion for Authority to Use Cash Collateral and Setting Continued Interim Hearing on September 15, 2026, at 1:30 P.M.* [ECF 59] (the "***Second Interim Order***") based on bare allegations of Perishable Agricultural Commodities Act ("***PACA***") trust beneficiary

[1] Truist asserts its claims are secured to the extent of the value of the Debtor's bankruptcy estate property subject to the multiple security agreements executed in Truist's favor, the first of which is dated December 4, 2019, and all of which are attached as exhibits to Truist's Stay Relief Motion [ECF 18] and granted Truist a security interest in certain personal property of the Debtor described more specifically therein ("***Collateral***"). Truist asserts it holds an unsecured claim in the amount its claims exceed the value of the Collateral. Truist reserves any and all rights to obtain a valuation of the Collateral, bifurcate its claims as secured and unsecured, and, to the extent the Stay Relief Motion is granted, seek and claim any applicable deficiency judgments.

status unsupported by any documentary evidence. WWFF has not attached a single invoice to its Motion or to its Proof of Claim No. 11. WWFF has not demonstrated that it preserved its statutory trust rights, that the transactions at issue involved qualifying perishable agricultural commodities, or that any identifiable trust corpus exists. Yet WWFF demands that this Court retroactively strip Truist's replacement lien, halt Truist's adequate protection payments, compel segregation and accounting within five business days, and order payment of $226,523.00 to WWFF within fourteen days, all without an evidentiary hearing.

As set forth below, WWFF's Motion should be denied in its entirety, or, in the alternative, the Court should enter only a limited interim order requiring the Debtor to provide a full accounting and reserving a reasonable amount pending an evidentiary hearing at which WWFF must meet its burden of proof under 11 U.S.C. § 363(p).

## RELEVANT BACKGROUND

On April 28, 2026, the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code, sections 101 *et seq*. ("***Bankruptcy Code***"), thereby initiating the above-captioned case. The Debtor operates as both a food broker, earning commissions, and a food wholesaler, purchasing and reselling products at a markup, from its facility in Pembroke Pines, Florida. ECF Nos. 12, 13. The Debtor's total scheduled assets are approximately $1,201,851.75 [ECF 28, p. 6], while its total liabilities are approximately $4,408,643.91 [ECF 63, p. 1].

On May 13, 2026, this Court entered a first interim cash collateral order. ECF 30. On July 14, 2026, this Court entered the Second Interim Order, authorizing the Debtor's use of cash collateral through September 30, 2026. Paragraph 2 of the Second Interim Order grants Truist a replacement lien on "all cash generated from Intertrade's business operations and assets

encumbered by Truist's security interest." ECF 59. Paragraph 9.A requires the Debtor to make monthly adequate protection payments of $7,500 to Truist. *Id*.

On July 7, 2026, WWFF filed Proof of Claim No. 11, asserting an unsecured claim in the amount of $226,523.00. The attachment to WWFF's proof of claim alleges WWFF is a licensed wholesale producer under PACA and purports to attach a copy of WWFF's PACA license, but no such attachment has been filed. WWFF further alleges in its proof of claim attachment that its claim arises from unpaid invoices from December 1, 2021, through November 21, 2025, payment of which should be made from a PACA trust that grants WWFF a super priority interest. WWFF purports to attach such invoices to its proof of claim but, again, no such attachments have been filed. Rather, only a summary "Statement of Account" was attached to WWFF's proof of claim.

On September 8, 2026, WWFF filed its Motion, seeking to carve out alleged PACA trust assets from cash collateral and Truist's replacement lien. Notably, the Debtor's schedules list WWFF's claim at only $68,858.35, subject to setoff, a discrepancy of over $157,000 from the amount WWFF claims. ECF 63, p. 4; Claim No. 11-1.

## ARGUMENT

### I. WWFF Has Not Met Its Burden of Proof under Section 363(p).

Section 363(p)(2) of the Bankruptcy Code provides that "[i]n any hearing under this section … the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p)(2). WWFF is the entity asserting a PACA trust interest in the Debtor's cash collateral, and it, therefore, bears the burden of establishing that interest. *In re Cherry Growers, Inc.*, 576 B.R. 569, 574-75 (Bankr. W.D. Mich. 2017) (holding that for cash collateral, the PACA trust claimant must establish both the amount of its claim and that it preserved its rights as a PACA trust beneficiary).

"[T]o recover from a PACA trust, an alleged trust beneficiary must demonstrate by a preponderance of the evidence that: (i) the goods sold were perishable agricultural commodities; (ii) the purchaser … was a commission merchant, a dealer, or broker; (iii) the transaction occurred in interstate commerce; (iv) full payment on the transaction has not been received by the supplier, seller or agent; (v) the seller or supplier preserved its trust rights by giving written notice to the purchaser; and (vi) the payment terms did not exceed the maximum amount prescribed by PACA." *In re Spiech Farms, LLC*, 592 B.R. 152, 162 (Bankr. W.D. Mich. 2018); *see In re Symons Frozen Foods Inc.*, 425 B.R. 589, 594 (Bankr. W.D. Wash. 2010) ("A PACA claimant must establish the following three elements in order to become a valid PACA trust beneficiary: (1) the produce in question must be 'perishable agricultural commodities'; (2) the commodities must have been received by a commission merchant, a dealer, or broker; and (3) the claimant must have provided written notice of its intent to preserve its rights under PACA within 30 days after payment became due.").

WWFF's Motion is conspicuously deficient. It recites statutory language and case law in the abstract but attaches no invoices, contracts, delivery receipts, or other documentary evidence to either the Motion or to its proof of claim. The Court cannot verify whether WWFF's invoices contain the requisite statutory trust language under 7 U.S.C. § 499e(c)(4), whether payment terms exceeded thirty days, or whether the invoices identify each transaction with the specificity required by 7 C.F.R. § 46.46(f)(1) to entitle WWFF super priority status as a PACA trust claimant. WWFF must prove each of these elements for each invoice across its claimed nearly four-year period of transactions from December 2021 through November 2025. *See* 11 U.S.C. § 363(p). WWFF's failure to provide even a single invoice renders the Motion premature and unsupported.

## II. WWFF Has Not Established the Scope of Any PACA Trust.

Even assuming *arguendo* that WWFF could demonstrate PACA trust beneficiary status for some transactions, WWFF has not established the scope of any PACA trust corpus. The PACA trust covers qualifying produce, derivative inventory, and receivables or proceeds from covered perishable agricultural commodities. 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b). It does not automatically encompass all cash in a mixed business.

The Debtor operates both as a food broker earning commissions and as a wholesaler generating sales revenue. The Debtor's cash collateral budget maintains separate line items for commissions received and sales revenue. ECF 13, Ex. A; ECF 59, Ex. A. WWFF has made no effort to distinguish which of the Debtor's funds derive from qualifying PACA transactions as opposed to non-PACA business activities. *In re Cherry Growers*, 579 B.R. at 573-74 ("[W]hen the PACA trustee is in the business of selling other commodities in addition to perishable produce, and commingles the proceeds from all business activities, the case is more complicated and the ramifications are greater" (internal quotations omitted)); *In re Zois*, 201 B.R. 501, 509 (Bankr. N.D. Ill. 1996) ("[T]he PACA statutory trust only consists of a buyer's produce-related assets"); *In re United Fruit & Produce Co., Inc.*, 242 B.R. 295, 301-02 (Bankr. W.D. Penn. 1999) ("The corpus of the trust consists of the produce, inventories of food or other products derived from the produce and any receivables or proceeds from their sale. It does not include vehicles and equipment." (internal citations and alterations omitted)).

WWFF's overarching request to carve out all PACA trust assets from Truist's replacement lien is inappropriate absent a detailed accounting and evidentiary classification of the Debtor's assets and revenue streams to identify which of the Debtor's assets are subject to the PACA trust.

## III. WWFF Has Not Demonstrated Compliance with PACA Notice Requirements.

Generally, courts strictly enforce PACA's statutory notice requirements, and a creditor who fails to comply is relegated to general unsecured status. *In re John DeFrancesco & Sons, Inc.*, 114 B.R. 335, 338 (Bankr. D. Mass. 1990) (PACA trust claim failed because supplier did not strictly comply with statutory requirements); *In re Northern Michigan Fruit Co., Inc.*, 433 B.R. 671, 678-79 (W.D. Mich. 2010) (creditor failed to preserve PACA trust rights where its notice did not include a statement of intent to preserve trust benefits and did not identify the transaction with required specificity; claim relegated to general unsecured status); *In re Ebro Foods, Inc.*, 499 B.R. 759, 763-64 (N.D. Ill. 2011) (PACA trust rights lost where invoices stated PACA payment terms (ten days) while purchase orders specified thirty-day terms; "[t]o preserve its PACA trust, a seller must satisfy the statute's strict eligibility requirements"); *In re Symons Frozen Foods Inc.*, 425 B.R. 589, 594-96 (Bankr. W.D. Wash. 2010) (PACA claim denied because contracts stipulated payment beyond thirty days after receipt, rather than strictly complying with the 30-day payment window).

Even under a "substantial compliance" standard, WWFF's Motion fails. *In In re Choez*, the court recognized that substantial compliance may suffice in some circumstances, but the claimant there nonetheless failed to establish PACA trust status. 594 B.R. 142, 159 (Bankr. E.D.N.Y. 2018) (holding that "while each and all of the notice requirements must be satisfied in substance, a modest variation in the required information, such as using an initial for a portion of a party's name, will not annul a notice that otherwise meets the requirements of the statute"). Here, WWFF has provided no invoices whatsoever for the Court to evaluate under either a strict or substantial compliance standard. This Court cannot determine whether WWFF's invoices contain proper statutory trust language, whether payment terms exceed thirty days, or whether the invoices

identify transactions with the specificity required by 7 C.F.R. § 46.46(f)(1). Additionally, WWFF has not provided a copy of its license establishing it was entitled to provide notice pursuant to the invoice method as a PACA licensed wholesale produce dealer during the dates the invoices were delivered.

Moreover, WWFF's own allegations raise serious questions about its PACA eligibility. WWFF claims it sold produce to the Debtor from December 2021 through November 2025 (a period of nearly four years) without receiving a single payment. PACA is "intended to protect sellers selling on a short term cash basis by requiring the buyer to meet its obligation promptly." *In re John DeFrancesco & Sons*, 114 B.R. at 337. A supplier that continues to extend credit for nearly four years without receiving any payment whatsoever has engaged in a course of dealing fundamentally inconsistent with the short-term protections PACA was designed to provide. This extreme course of dealing, far exceeding the mere acceptance of late payments, may constitute a waiver of PACA beneficiary status and further undermines WWFF's entitlement to the extraordinary relief it seeks.

**IV. Truist's Security Interest Is Not Voided by PACA.**

WWFF's Motion proceeds on the flawed premise that PACA categorically displaces Truist's security interest. It does not. *In re N. Merberg & Sons, Inc.*, 166 B.R. 567, 571 (Bankr. S.D. N.Y. 1994) ("The secured creditor's loss of its status, however, is only relative to trust beneficiaries. PACA does not otherwise invalidate or void security arrangements, and does not confer rights on any other creditors – or trustees – to void such arrangements." (internal quotations and citations omitted)); *In re Cherry Growers,* 576 B.R. at 576-77 (rejecting argument that PACA trust corpus is categorically outside the bankruptcy estate in a way that disables chapter 11 administration, noting that section 541(d) excludes the PACA claimant's equitable interest while

the estate may concurrently hold legal or other interests in the same property and holding "[t]hough the case law defines PACA proceeds broadly, the Bankruptcy Code defines property of the bankruptcy estate even more broadly").

Notably, WWFF is the only PACA creditor that has appeared in this case. No other creditor has filed a proof of claim asserting PACA beneficiary status. WWFF's claimed amount of approximately $226,523 is nominal compared to Truist's $3.6 million in secured claims. Even if WWFF ultimately establishes a valid PACA trust claim, Truist's lien remains fully enforceable against any residual PACA trust corpus and against all non-PACA assets of the estate.

## V. Truist Is Entitled to Continued Adequate Protection Payments.

Sections 361 and 363(e) of the Bankruptcy Code require adequate protection for a secured creditor's interest in property used as cash collateral. The Second Interim Order provides Truist with a replacement lien, financial reporting obligations, and monthly adequate protection payments of $7,500. ECF 59. WWFF's Motion seeks to halt these payments and retroactively strip Truist's protections absent any demonstrated PACA entitlement.

The court in *In re Cherry Growers* recognized that PACA interests can be protected within a cash collateral regime, rather than by halting operations altogether. 576 B.R. at 576-78 (authorizing the debtor-in-possession to use estate property because the estate's value exceeded the PACA claim, providing adequate protection). Here, the Debtor's scheduled assets of approximately $1.2 million and the structure of the Second Interim Order similarly provide adequate protection for any PACA interest that WWFF may ultimately prove.

The adequate protection payments of $7,500 per month are credited against Truist's claim, reducing the outstanding obligation rather than providing any windfall. *See In re United Fruit & Produce Co.*, 242 B.R. at 302 ("PACA trust assets are available for uses other than to pay PACA

suppliers…. Trust assets may be used to pay other creditors. It is necessary to balance the public's interest in preserving the stability of commercial transactions with the interests of the PACA trust beneficiaries" (internal citations omitted)). WWFF's objection does not eliminate Truist's right to adequate protection. It merely requires the Court to balance competing interests on a properly developed record.

**VI. PACA and Bankruptcy Interests Can Coexist within the Existing Cash Collateral Framework.**

WWFF's request for immediate, retroactive, and comprehensive relief fundamentally misconceives the relationship between PACA and bankruptcy. *In re Cherry Growers*, 576 B.R. at 576, 578 ("[T]o say that the subject matter of a PACA trust is outside the bankruptcy estate in a way that cripples a reorganization overstates the PACA effect," and holding section 363's definition and use of cash collateral "is broad enough to accommodate and adequately protect the interests of PACA claim holders within the collective proceeding under title 11, notwithstanding their preferred status as beneficiaries of a statutory trust prescribed under applicable non-bankruptcy law").

The appropriate remedy is not the immediate diversion of funds to WWFF, but the preservation of the status quo through a structured accounting and reserve mechanism while the Court adjudicates PACA issues on a full evidentiary record.

**VII. The Proper Procedure Requires an Accounting and Evidentiary Hearing, Not Retroactive Relief.**

WWFF's proposed order would: (a) modify the First and Second Interim Cash Collateral Orders nunc pro tunc; (b) exclude all alleged PACA assets from Truist's replacement lien; (c) bar adequate protection payments to Truist from PACA assets; (d) require segregation and accounting within five business days; and (e) require full payment to WWFF of $226,523 within fourteen

days. This relief is grossly disproportionate at the interim stage. *In re Cherry Growers*, 576 B.R. at 574 ("[A] cash collateral hearing is not a proceeding to resolve, as a final matter, competing property interests"). WWFF cannot use a motion to modify a cash collateral order as a vehicle to obtain final adjudication of its PACA rights without the procedural protections of a full evidentiary hearing.

The claim amount discrepancy alone warrants evidentiary scrutiny. WWFF asserts a total claim of $226,523.00, but the Debtor's schedules disclose WWFF's claim at only $68,858.35, subject to setoff, a discrepancy exceeding $157,000. Before any funds are redirected, the Court should require a full accounting and hear testimony regarding the actual amounts owed, as well as evidence supporting WWFF's alleged status as a PACA trust beneficiary.

The Court should preserve the status quo or impose narrowly targeted conditions pending an evidentiary determination at which WWFF must meet its burden under section 363(p). Specifically, Truist proposes: (a) adequate protection payments continue from non-PACA funds or, alternatively, subject to a reserve equal to the maximum PACA exposure WWFF can preliminarily substantiate; (b) the Debtor be ordered to provide a detailed accounting of all receipts, receivables, inventory, commissions, and disbursements, identifying PACA and non-PACA sources; and (c) WWFF's claims be adjudicated at a properly noticed evidentiary hearing.

Truist reserves all rights with respect to any plan of reorganization or liquidation, including but not limited to section 506 secured claim valuation rights, lien retention through confirmation, rights to deferred cash payments, allocation of sale proceeds, indubitable equivalent treatment, and potential section 1111(b) election rights.

**CONCLUSION**

For the foregoing reasons, Truist Bank respectfully requests that this Court deny WWFF's Motion in its entirety. In the alternative, Truist requests that the Court enter only a limited interim order requiring the Debtor to: (a) provide a full accounting of all receipts, receivables, inventory, commissions, and disbursements, identifying PACA and non-PACA sources; and (b) reserve an amount equal to the maximum PACA claim that WWFF can preliminarily substantiate, pending a full evidentiary hearing.

Dated: September 14, 2026.

Respectfully submitted,

***SHUMAKER, LOOP & KENDRICK, LLP***

/s/ *Jay B. Verona*

Jay B. Verona, Esq.
Florida Bar No. 352616
Primary e-mail: jverona@shumaker.com
Secondary e-mail: mhartz@shumaker.com
Elizabeth R. Brusa, Esq.
Florida Bar No. 125655
Primary e-mail: ebrusa@shumaker.com
Secondary e-mail: mkulczycke@shumaker.com
101 E. Kennedy Blvd., Suite 2800
Tampa, Florida 33602
Phone (813) 229-7600
Fax (813) 229-1660
*Counsel for Truist*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 14, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using the Court's CM/ECF system, which will send a Notice of Electronic Filing and copy to all parties requesting such service, including counsel for the Debtor, counsel for WWFF, and counsel for the U.S. Trustee, and was served by U.S. Mail on the following:

Intertrade Holdings Inc.
2114 N. Flamingo Rd., Suite 142
Pembroke Pines, FL 33028
*Debtor*

*/s/ Jay B. Verona*
Attorney